**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | | |
|---|---|---|---|
| THOMAS WALDEN, ET ALS | : | | |
| VS. | : | C.A. NO.: | 04-304S |
| CITY OF PROVIDENCE, ET ALS | : | | |
| JOHN C. CHMURA, ET ALS | : | | |
| VS. | : | C.A. NO.: | 04-553S |
| CITY OF PROVIDENCE, ET ALS | : | | |

**OBJECTION**

Plaintiffs hereby object to Defendant Manuel Vieira's Motion for Summary Judgment. The bases for this objection are detailed in the attached memorandum and statement of disputed material facts.

PLAINTIFFS
By their Attorneys,

Mark A. Fay, Esquire, #4208
Murphy & Fay, LLP
127 Dorrance Street, 2nd Floor
Providence, Rhode Island 02903
(401) 490-3200
(401) 490-3207 FAX

**CERTIFICATION**

I, the undersigned, hereby certify that I have this 31 day of May, 2006 mailed a copy of the foregoing, first class mail, postage prepaid to:

Dean G. Robinson, Esquire
670 Willett Avenue
East Providence, RI 02903

George L. Santopietro, Esquire
226 South Main Street
Providence, RI 02903

Kevin F. McHugh, Esquire
Michael A. Calise, Esquire
275 Westminster Street
Providence, RI 02903

Susan Marcotte Carlin, Esquire
Famiglietti & Carlin, LTD
The Lincoln Center, Suite 205
132 Old River Road
Lincoln, RI 02865

Kendra Lima

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-553S |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' OBJECTION TO MANUEL
VIEIRA'S SUMMARY-JUDGMENT MOTION

INTRODUCTION

Defendant Manuel Vieira moves for summary judgment on all six counts of plaintiffs' amended complaint. Although Vieira's memorandum consists of five separate argument sections, a closer examination of them shows that each ultimately rests on a variation of one of three evidentiary contentions. Those three contentions are: (1) there is no evidence that Vieira intended to intercept plaintiffs' calls; (2) the interception of plaintiffs' calls was within the ordinary course of business of the Providence police department; and (3) plaintiffs' knew or should have known that their calls were being recorded, and thus plaintiffs had no legitimate expectation of privacy or had impliedly consented to the interceptions. As shown in plaintiffs' Statement of Material Facts In Dispute and as discussed below, there is a genuine issue of material fact with respect to each contention.

First, Anthony Desmarais, one of the technicians in the communications department, testified at his deposition that Vieira, the head of the department, directed him to have all calls coming into and going out from the Providence Public Safety Complex [PPSC] recorded. Second, Vieira acknowledged at his deposition that "[y]ou just don't record lines unless they're emergency lines," that recording all calls would be in violation of the city's policies and procedures, and that it would not be in the ordinary course of business of the communications department to record all calls. For those reasons, Vieira claimed that if he had known the system was recording all calls he would have "shut it down," and, in fact, the system was immediately removed once its existence became public. Third, Vieira admitted that he never obtained the verbal or written consent of any of the plaintiffs that their phone conversations be recorded and the department's chief of operations testified at her deposition that at no time did anyone approach her and indicate that they were aware that all calls were being recorded.

Based on this and other evidence, as elaborated below, there are genuine issues of material fact requiring that Vieira's motion for summary judgment be denied in its entirety.

## BACKGROUND AND MATERIAL FACTS

In early February 2003, it became known to certain city of Providence officials that a telephone recording system known as the Total Recall system had been installed in the PPSC when it was constructed the previous year. Both the police and fire departments for the city operate out of the new PPSC. This revelation caused an immediate uproar because the recording system was automatically recording almost every phone call coming in and out of that building, including personal calls. The system was immediately removed, but by that time it had intercepted and recorded approximately 755,000 phone calls.

On February 10, 2003, Police Chief Esserman ordered Assistant Chief Andrew Rosenzweig to investigate the origins of the telephone recording system, and soon thereafter the State Police took over the investigation. The State Police report and the statements taken by the State Police were subpoenaed by plaintiffs and comprise, along with depositions taken during discovery, the evidentiary basis upon which this Court will rule on the motion now before it. This evidence, viewed in the light most favorable to plaintiffs, the non-moving parties, shows the following.

The Total Recall system was a digital, web-based, call-logging system that recorded telephone conversations. State Police Forensics Report at 1; Appendix [A.] 1.[1] The Total Recall computer server interfaced with the PPSC telephone network. *Id.* The system recorded during its operation approximately 755,000 calls made on approximately 500 different telephone stations.[2] *Id.* Manuel Vieira, director of the communications department, instructed Anthony Desmarais, then a radio engineer in the department, to prepare the RFP [request for proposals] for the phone system for the PPSC. Deposition of Anthony Desmarais [Desmarais depo.] at 30-31; A. 4-5. Vieira instructed Desmarais that he wanted everything recorded on the system, and thus the RFP required a recording system with the capability of recording 500 stations, which were essentially all the stations in the PPSC. *Id.* at 31, 36-37, 39; A. 5, 7-9. Vieira never told Desmarais that he wanted only emergency lines recorded; Desmarais was certain that Vieira instructed him that he wanted all stations recorded. *Id.* at 40-41; A. 10-11. Approximately two weeks after the system was installed, during July 2002, Vieira instructed Desmarais to remove a few stations from

---

1. Plaintiffs' appendix is attached to their Statement of Disputed Facts.

2. "Stations" is apparently the proper term to describe what might commonly be referred to as telephone lines within the building. Desmarais depo. at 35; A. 6.

the recording system, including Vieira's, the deputy director's, Vieira's secretary's, and the one in the communications conference room. *Id.* at 61-62; A. 16-17.

During the investigation by Assistant Police Chief Rosenzweig, Vieira told him that Desmarais and another department employee, Frank Parfume, would tell him about lines that were recorded and should be taken off the recording system. Deposition of Andrew Rosenzweig [Rosezweig depo.] at 46-47; A. 28-29. Moreover, Vieira statements to Rosenzweig made it clear that Vieira intended the system to record essentially all incoming and outgoing calls at the PPSC and that he knew prior to January 2003 that the system was doing that. Rosenzweig depo. at 25-27, 100; *see also* Moise State Police statement Q. 28-32; Parente State Police statement Q. 25-31; A. 25-27, 33, 47-50. According to Vieira, the recording of all lines in the PPSC was in violation of the city's policies and procedures, and was not in the ordinary course of business of the communications department. Deposition of Manuel Vieira [Vieira depo.] at 149, 155-56; A. 39, 41-42. In fact, Vieira testified that "[y]ou just don't record lines unless they're emergency lines" and he claimed that if he had known about the system he would have "shut it down." *Id.* at 85, 156; A. 36, 42. And that is what happened, at the direction of the Chief of Police, when the system's existence came to light. Desmarais depo. at 63-65; A. 18-20.

While the Total Recall system was operating, there was no warning or beeping on the recorded stations to let individuals know their phone calls were being recorded. Deposition of Mary Lennon [Lennon depo.] at 84; A. 46. At no time did anyone ever indicate to Mary Lennon, the chief of operations of the communications department, that they were aware that the phone lines were being recorded by the Total Recall system. *Id.* at 73; A. 44. In fact, Lennon denied any knowledge whether any employees working at the PPSC knew that phone

calls were being recorded. *Id.* at 83; A. 45. While Desmarais had stated that a lot of people knew that phone calls were being recorded, when he was presented with a list of plaintiffs' names and asked if he knew if any of them were aware of the system and its capabilities he responded that he didn't know any of the plaintiffs. Desmarais depo. at 105-06; A. 21-22. Finally, Vieira admitted that he never obtained the verbal or written consent of any of the plaintiffs that their phone conversations be recorded. Vieira Depo. at 115-16; A. 37-38.

## ARGUMENT

A grant of summary judgment is appropriate only when the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "It is a defendant's burden, in moving for summary judgment, to establish that all material facts are undisputed, and that no finder of fact could reasonably find a genuine dispute of material fact and resolve that dispute in the plaintiff's favor." *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 23 (1st Cir. 1997). In ruling on the motion, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995). A contested fact is "material" if it has the potential to change the outcome of the suit and it is "genuine" if the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party. *Rojas-Ithier* v. *Espanola*, 394 F.3d 40, 42-43 (1st Cir 2005).

### I. There are genuine material issues whether Vieira deprived plaintiffs of their civil rights or conducted an unconstitutional search or seizure.

Vieira's first argument is that he is entitled to summary judgment on Counts I and II of plaintiffs' amended complaint. These counts assert that Vieira violated plaintiffs' rights

under the Fourth Amendment of the United States Constitution (Count I) and Article I, Section 6, of the Rhode Island Constitution (Count II).

A. There is a genuine issue of material fact regarding Vieira's official and individual responsibility for the interception and recording of all calls to and from the PPSC.

In his first argument, Vieira alleges that not one witness has testified that Vieira knew the phone lines for inbound and outgoing calls, except for emergency or central desk lines, were being recorded. Vieira Mem. at 9. The evidence in the record, however, demonstrates that whether Vieira knew the Total Recall system was recording essentially all phone calls coming into or going out from the PPSC is a genuine issue of material fact.

Andrew Rosenzweig, who conducted an inquiry as Assistant Chief of police, testified at his deposition that during that inquiry Vieira indicated that he knew the Total Recall system was in place in the PPSC. Rosenzweig depo. at 25; A. 25. Based on his interview of Vieira, Rosenzweig was "comfortable" that Vieira "was aware of what that system was all about." *Id.* at 27; *see also id.* at 100 ("he was aware that calls were being recorded").

Further, Anthony Desmarais, a radio engineer employed by the communications department, testified at his deposition that Vieira directed him to prepare the RFP for the telephone system and told him that he wanted everything recorded on the system. Desmarais depo. at 36-37; A. 7-8. Desmarais was certain that Vieira said that he wanted all stations recorded and that Vieira never said that he wanted only emergency lines recorded. *Id.* at 40-41; A. 10-11. Further, shortly after the system began operating, Vieira instructed Desmarais to remove certain stations from the recording system, thus indicating that Vieira knew that calls other than emergency calls were being recorded. *Id.* at 61-62; A. 16-17.

Similarly, another communications department technician, Greg Haroian, told the State Police that the direction to remove lines came from Vieira. Haroian State Police statement Q. 55-57; A. 51. Likewise, Stephen Moise, an inspector in the department of communications, reported to the State Police that in June 2002 he "knew 100-percent of the phone lines within the Public Safety Complex * * * were recorded" and that others in the communications department who knew included Vieira, Joseph Richardson (the deputy director), and Mary Lennon (the chief of operations). Moise State Police statement Q. 28-29; A. 47-48. Likewise, Vieira's administrative assistant, Cynthia Parente, told the State Police that Vieira had told her that all of the lines in the police station were going to be recorded. Parente State Police statement Q. 27; A. 49. In fact, she got upset that he was taping her conversations and she asked him to take her line off. *Id.* Q. 28-31; A. 49-50.

Viewing all of that evidence in the light most favorable to the plaintiffs, the only conclusions that can be drawn are that Vieira, as director of the communications department, instructed Desmarais to install a recording system that would record all incoming and outgoing calls, and that Vieira knew in July of 2002 that the system was installed and recording all calls as he had directed, except for lines that he directed to be removed. Thus, plaintiffs have shown that Vieira, both in his official capacity and in his individual capacity, was directly responsible for the interception and recording of plaintiffs' communications. Plaintiffs have not simply shown that there was something that Vieira "could have done" to prevent the interception and recording, but have shown that the recording was done at his direction and with his knowledge. That, in fact, was the conclusion of the State Police investigation:

> Anthony Desmarais * * * was directed by Manual [*sic*] Vieira, prior to making any decisions on the Total Recall System.

> * * * In conversations with Robert Nelson, retired Commissioner Partington, Colonel Esserman, and Andy Rosenzweig, Manuel Vieira avoided any direct responsibility; however, memos and statements that were reviewed indicated that Manuel Vieira was directly responsible for the purchase and installation of the recording device.

State Police Case Summary at 42; A. 2.

Accordingly, there is no merit to Vieira's assertion that the record is "bereft of any evidence linking Vieira to any alleged injuries." Vieira Mem. at 11. Rather, applying summary-judgment standards, this Court must conclude that there is a genuine issue of material fact regarding Vieira's official and individual responsibility for the interception and recording of all calls to and from the PPSC.

B. <u>Plaintiffs may maintain their first two causes of action against Vieira in both his individual and official capacities</u>.

Vieira claims that "there is absolutely no evidence whatsoever that Vieira acted outside the scope of his position as Director of Communications." Vieira Mem. at 7. However, as shown in the immediately preceding section there is evidence that Vieira was directly responsible for the interception and recording of all calls to and from the PPSC. Whether in doing so he was acting outside the scope of his position is a genuine issue of material fact.

Vieira himself testified that "[y]ou just don't record lines unless they're emergency lines." Vieira depo. at 85; A. 36. Further, he testified that the recording of all lines in the PPSC was in violation of the city's policies and procedures, and was not in the ordinary course of business of the communications department. *Id.* at 149, 155-56; A. 39, 41-42. Thus, he claimed that if he had known about the recording he would have "shut it down." *Id.* at 156; A. 42. If, as Vieira testified, the recording was in violation of official city policy

and was not conducted in the ordinary course of the department's business, then a jury could conclude that in directing the recording Vieira was acting outside the scope of his position.

Vieira also claims that "an official acting in his official capacity is not a 'person' under § 1983." Vieira Mem. at 7. Vieira cites *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989), for that proposition. But all that *Will* held was "that neither *a state* nor *its* officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71, 109 S.Ct. at 2312 (emphasis added). Both a municipality and its officials acting in their official capacities are "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Figueroa-Garay v. Municipality of Rio Grande*, 364 F.Supp.2d 117, 128 (D.P.R. 2005) ("municipalities and their officers are 'persons' within the meaning of Section 1983").

Vieira also asserts that plaintiffs are barred from pursuing a § 1983 action because they are also seeking damages provided for under Title III. Vieira Mem. at 8-9. While that contention might have merit if plaintiffs' claim under § 1983 were for a violation of their federal statutory rights under Title III, their claim under § 1983 is for a violation of their constitutional rights under the federal and state constitutions. *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808 (D.N.J. 1993). In *PBA*, the court rejected the same argument that plaintiffs make here, stating:

> The fundamental flaw in defendant's argument is that the doctrine * * * pertains only to claims brought under § 1983 to enforce rights created by congressional statutes. [Citation omitted.] Here, however, plaintiffs' § 1983 claim relates to rights which exist under the Constitution itself. Defendants' argument * * * is simply inapt.

832 F.Supp. at 825.

Accordingly, plaintiffs may maintain their first two causes of action against Vieira in both his individual and official capacities.

B. Vieira is not entitled to qualified immunity for his decision and direction that all calls to and from the PPSC be recorded.

Vieira also asserts the defense of qualified immunity. Qualified immunity only protects public officials from lawsuits brought against them in their individual capacity. *Hill v. DeKalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1184 n.16 (11th Cir. 1994). Thus, the qualified immunity defense has no bearing on the suit against Vieira in his official capacity.

A ruling in a defendant's favor who pleads the affirmative defense of qualified immunity "is inappropriate if a genuine issue of material fact exists as to whether the defendant committed acts that allegedly violated clearly established rights." *Blake v. Wright*, 179 F.3d 1003, 1008 (6th Cir. 1999); *see also Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002) ("pre-trial resolution [of a claim of qualified immunity] sometimes will be impossible because of a dispute as to material facts"). As shown in subsection I.A. above, there is a genuine issue of material fact whether Vieira directed the department's technicians to set up the system to record all incoming and outgoing calls and knew that they had done so. Thus, Vieira can sustain his qualified immunity defense only if the defense remains viable *assuming* that he personally directed that all lines be recorded and knew that they were being recorded.

Vieira engages in a long dissertation about the elements of a qualified immunity and/or supervisory immunity defense, but provides scant argument regarding the application of those elements to the facts of this case. For example, Vieira commences his argument with the assertion that plaintiffs must demonstrate that the facts show that his conduct

violated a constitutional right of the plaintiffs and asserts, conclusorily, that plaintiffs have not done so. Vieira Mem. at 14. Plaintiffs alleged, however, that the use of the recording system violated their Fourth Amendment rights. Amended Compl. ¶¶ 55-56.

It is recognized that the unauthorized and secretive recording of telephone conversations may violate the Fourth Amendment. *In re State Police Litigation*, 888 F.Supp. 1235 (D. Conn. 1995). There, the court denied summary judgment with regard to § 1983 claims premised on Fourth Amendment violations by the recording of phone calls at a state police barracks. 888 F.Supp. at 1256. The court found both that there was evidence that the plaintiffs had a subjective expectation that their telephone calls were private, and that the determination whether that subjective expectation was reasonable depended "on proof of the absence of notice, a question of fact precluding summary judgment." *Id.*; *see also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. at 825-29 (denying summary judgment on § 1983 claims based on constitutional violations, including the Fourth Amendment). The court observed that the "surreptitious recording of unprivileged but private calls * * * involves an invasion of privacy that far outweighs defendants' proffered justifications" for the recordings. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979). Here, neither Vieira nor any other city official has proffered any justification for the recording of all incoming and outgoing calls at the PPSC; indeed Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Vieira Depo. at 85; A. 36. And, the recording was surreptitious as there was no indication by a beeping tone, initial message, or other means that the call was being recorded. Thus, Vieira fails to establish that there was no Fourth Amendment violation.

After another multi-page dissertation on the "clearly established" prong of the qualified immunity defense, Vieira turns the specifics of this case and asserts that the law is

not clearly established that callers were entitled to a reasonable expectation of privacy. Vieira Mem. at 16. Although asserting that the law regarding the monitoring of phone lines "was sufficiently unclear at the time of the alleged violations that a 'reasonable' person in Vieira's position would not have known that he was violating 'clearly established' rights," Vieira cites no case law in support of that proposition. "One tried and true way of determining whether [a] right was clearly established * * * is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." *Suboh v. Dist. Attorney's Office*, 298 F.3d 81, 93 (1st Cir. 2002).

Here, case law existing at the time Vieira directed the interception of plaintiffs' calls gave him fair warning that his conduct violated the plaintiffs' constitutional rights. In *Amati v. The City of Woodstock*, 1997 U.S. Dist. LEXIS 14281 (N.D. Ill. 1997), the court stated that the "alleged conduct of surreptitiously recording of telephone conversations without listening is a violation of * * * the Fourth Amendment." 1997 U.S. Dist. LEXIS 14281 at *6. Further, the court stated that "the law, as it existed at the time of defendants' conduct, clearly established that recording alone was sufficient to violate * * * the Fourth Amendment." *Id.* at n.4. Thus, the court concluded that "it appears the law was clearly established as of the time defendants engaged in the alleged conduct, thereby precluding summary judgment." *Id.* Likewise, in *In re State Police Litigation*, 888 F.Supp. 1235, the court held that "[t]he right of persons to keep private conversations confidential, in short, was 'clearly established' prior to [1989] such that a reasonable defendant would have understood that the recording of such conversations was unlawful." 888 F.Supp. at 1261.

Next, Vieira asks whether it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in this context. Vieira Mem. at

16. However, as Vieira recognizes, qualified immunity protects "supervisory officials from suit when they could not reasonably anticipate liability." Vieira Mem. at 13 (quoting *Young v. City of Providence*, 396 F.3d 125, 132 (1st Cir.2005)). Thus, the inquiry must be whether the supervisor "should reasonably have understood that his conduct jeopardized [the plaintiff's clearly established constitutional] rights." *Id.* at 14. Here, the claim against Vieira is not premised upon unanticipated acts of subordinates, but is based upon his decision that there should be a system that recorded all calls and his directions to Desmarais to include such a system in the RFP. When the violations of plaintiffs' rights occurred as a direct result of his own instructions being carried out, it is plain that Vieira should have understood that his conduct jeopardized plaintiffs' rights.

Last, Vieira's "deliberate indifference" argument is equally unavailing. As Vieira recognizes, deliberate indifference requires that a supervisor disregard a known or obvious consequence of his action. Vieira Mem. at 18. Again, a known or obvious consequence of Vieira's direction to Desmarais that he prepare an RFP for a recording system with the capability of recording all calls and his direction that he wanted all calls recorded is that Desmarais would carry out those directions and all calls would be recorded, resulting in the violation of plaintiffs' rights.

At bottom, Vieira's qualified immunity claims rest on his proposition that he did not direct that all calls be recorded and that he did not know that all calls were being recorded. Vieira proceeds as if the recording happened by a rogue or incompetent subordinate who acted on his own or who misunderstood Vieira's directions. However, as outlined in subsection I.A. above, there is evidence that Vieira bears direct responsibility for the recording of all calls, that it occurred at his direction and command. Accordingly, Vieira is not entitled to summary judgment on Counts 1 or 2 of plaintiffs' amended complaint.

II. There is a genuine material issue whether Vieira did engage in the interception of wire, oral or electronic communications.

Vieira next asserts that the record is "completely devoid of any evidence which establishes that Vieira * * * willfully or intentionally" intercepted a wire, oral or electronic communication, and thus claims to be entitled to summary judgment on Count III of plaintiffs' complaint. Vieira Mem. at 19-20. Of course, the record need not "establish" that Vieira so acted; there need only be evidence creating a genuine issue of material fact whether he so acted. The record is replete with such evidence. That evidence is cited and discussed in detail in section I.A. of this memorandum, and will not be unnecessarily repeated here. Suffice it to say that evidence shows that there is simply no merit to Vieira's contention that there is no evidence that he willfully or intentionally intercepted protected communications. Accordingly, he is not entitled to summary judgment.

Turning from evidentiary claims to legal ones, Vieira next asserts that telephone calls that are recorded but not listened to are not "aurally acquired" within the meaning of Title III. Vieira Mem. at 20 (citing *Arias v. Mutual Cent. Alarm Serv.*, 202 F.3d 553, 558 (2d Cir. 2000)). Controlling First Circuit precedent holds that recording alone, without any evidence that the calls were ever listened to, constitutes unlawful interception. In *United States v. Lewis*, 406 F.3d 11 (1st Cir. 2005), the court of appeals held that a correctional officer "acquired the contents of a phone conversation when he recorded it." 406 F.3d at 17. The court rejected Lewis's contention that "'acquisition of the contents' of the call did not occur until [the officer] actually listened to the recording." *Id.* at 17 n.5 (noting that *dictum* in *United States v. Lanoue*, 71 F.3d 966, 981 (1st Cir. 1995), did "not foreclose the possibility that a conversation is intercepted when it is recorded"). Other courts have likewise held that the recording of a telephone conversation alone constitutes an "aural

acquisition" of that conversation within the meaning of the statute. *E.g., Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir. 1994) (cited in *United States v. Lewis*, 406 F.3d at 17 n.5); *Ali v. Douglas Cable Communications*, 929 F.Supp. 1362, 1381 (D. Kan. 1996); *In re State Police Litigation*, 888 F. Supp. 1235, 1262 (D. Conn. 1995); *George v. Carusone*, 849 F.Supp. 159, 163 (D. Conn. 1994); *see, generally*, 1 CLIFFORD S. FISHMAN & ANNE T. MCKENNA, WIRETAPPING AND EAVESDROPPING § 4:33, at 4-49 (2d ed. 1995) ("better view is that to record a conversation constitutes an interception regardless of whether anyone subsequently listens to it").

Next, Vieira relies on two statutory safe-harbors. First, in order for a person to "intercept" a communication under the act, it must occur through "the use of any electronic, mechanical, or other device." 28 U.S.C. § 2510(4) (defining "intercept"). Excluded from the definition of an "electronic, mechanical, or other device" is any equipment "being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." 28 U.S.C. § 2510(5)(a)(ii). Vieira claims that he is entitled to summary judgment under this exclusion. Vieira Mem. at 21-25.

Vieira does not appear to make any claim that he or the communications department is a "provider of wire or electronic communication service." Rather, he appears to contend only that the Total Recall system was used "by an investigative or law officer in the ordinary course of his duties." *See, e.g.,* Vieira Mem. at 21 ("Police and fire departments commonly employ such recording systems * * *."). The problem for Vieira with this tack is that the recording system was plainly used and controlled by the communications department, not the police or fire departments. Vieira has submitted no evidence that any official in the police or

fire departments controlled or had responsibility for the operation of the recording system. Likewise, Vieira has submitted no evidence that it was the ordinary course of business of the police or fire departments to record all incoming and outgoing calls to and from their departments. Indeed, he submits no evidence that the use of the system to record all lines was approved by any official in the police or fire department in the ordinary course of business. Vieira has likewise not submitted any evidence that any police or fire department personnel had a password for access to the Total Recall system. Rather, it was operated solely and exclusively by the communications department, which controlled access to the recordings.

Moreover, there is no question that neither Vieira nor the communications department comes within the definition of "[i]nvestigative or law enforcement officer": "any officer of * * * a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter." Thus, the Total Recall system, as used by Vieira and the communications department, is not excluded from the definition of an "electronic, mechanical, or other device," and so its use to record calls constitutes an "interception" as that term is defined.

Even if Vieira could establish that the system was used by investigative or law enforcement officers rather than by the communications department, the evidence establishes that it was not used in the ordinary course of business in this instance. "The determination of what is or is not comprehended in the phrase 'ordinary course of business' is necessarily fact-specific, involving consideration of all the circumstances of the conduct or transaction at issue." *Accusoft Corp. v. Palo*, 237 F.3d 31, 46 (1st Cir. 2001); *see, e.g., Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) (reviewing grant of summary judgment on claim under ECPA and stating that the court had to determine if there was material issue of

fact whether plaintiff was acting within the ordinary course of business). Here, Vieira has not submitted any evidence that the use of the Total Recall system to record virtually all incoming and outgoing calls was in the ordinary course of business for the Providence communications department, the Providence police department or the Providence fire department. He has provided no evidence that the use of the system to record all calls was approved by anyone within the Providence police or fire departments. Apart from relying on case law, Vieira's motion is simply devoid of any evidence which would permit this Court to engage in the necessary fact-specific inquiry and conclude that the recording had occurred in the ordinary course of business.

Vieira seeks to rely on *Arias v. Mutual Cent. Alarm Serv.*, 202 F.3d 553, 558 (2d Cir. 2000). *See* Vieira Mem. at 22. In *Arias*, however, the Court observed that there "is no dispute that the recording in question is standard practice within the central station alarm industry, is recommended by Mutual's underwriters and the relevant trade associations, and may be required by authorities in certain instances." 202 F.3d at 559. Vieira has provided no such evidence here.

Vieira also relies on *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999). Vieira's Mem. at 22-24. However, the court's opinion was upon an appeal from a jury verdict in favor of the defendants. The court affirmed the judgment entered on the jury's verdict. Given that procedural context, the Court's opinion cannot be construed as a holding that defendants were entitled to judgment as a matter of law on the "ordinary course of business" exclusion or any other matter that had been submitted to the jury. While the Court stated that it was routine, standard, and ordinary for the police to record all calls to and from the police, that may simply reflect what the evidence in that case showed. To the extent that it purports to be a statement of law, it is plainly *dicta*. Significantly, the district court denied

the defendants summary judgment on the "ordinary course of business" exclusion. *Amati v. City of Woodstock*, 1997 U.S. Dist. LEXIS 14281 (N.D. Ill. 1997). In any event, even if *Amati* did establish as a matter of law that it is within the ordinary course of business to record all calls to and from a police station, that would not provide any exclusion for the recording of all calls to and from the fire department's facilities within the PPSC.

Vieira's reliance on *Jandak v. Village of Brookfield*, 520 F.Supp. 815 (D.C. Ill. 1981), is similarly misplaced. *Jandak*, too, was determined based on the specific evidence in the record regarding the police department's phone lines, the purpose of the recording, the degree of notice provided, and that there was a non-recorded line available for use. Eight of the nine recorded lines had beeping devices to notify the users of those lines of the recording. Only the ninth line, used for investigative purposes, did not have a beeping device. 520 F.Supp. at 818. The court noted that when courts have to determine what types of eavesdropping can be done in the ordinary course of law enforcement duties, the cases "turn narrowly on their facts." *Id.* at 823. The court found that in the case before it the exclusion applied because the evidence showed that use of the equipment was "to improve police emergency and investigative services" and that the police officer who placed the call "should have known that calls on the line he used were monitored." *Id.* at 824-25. The court thus made a narrow, fact-specific holding: "the routine, nonsurreptitious, recording of a police investigative line which results in the recording of a conversation of an officer misusing the line for personal purposes, when the officer should have known that the line was monitored, was in the ordinary course of business." *Id.* at 825. Those facts do not apply to the approximately 755,000 calls recorded by the Total Recall system. And, as with

*Amati*, *Jandak* has no relevance to the recording of the phone stations used by the fire department.

When the facts of this case are examined there can be no conclusion as a matter of law that the recording of those 755,000 calls was in the ordinary course of business of a law enforcement officer. It plainly was not a routine, ordinary practice given that no such system was in place prior to the Total Recall system and that the Total Recall system was ripped out and not replaced once it was discovered. Moreover, Vieira was asked questions about whether the system was necessary for or used in the ordinary course of business. Vieira claimed that he would not have allowed the recording system to be installed and operated to record all lines because "[y]ou just don't record lines unless they're emergency lines." Vieira Depo. at 85; A. 36. Further, he testified that recording all lines would "be in violation of the city's policies and procedures." *Id.* at 149, 155-56; A. 39, 41-42. And, most specifically, Vieira agreed that "if the system had been installed and was recording all these lines, it would not be put in and used in the ordinary course of business of the communications department of the City of Providence." *Id.* at 156; A. 42. In light of these admissions, Vieira cannot credibly maintain on this motion that the recording of all calls was in the ordinary course of business.

Accordingly, Vieira is not entitled to summary judgment under the "ordinary course of business" exclusion contained in Title III.

Vieira also relies on the statute's "consent" exception. Vieira Mem. at 25-27. Vieira bears the burden of establishing the plaintiffs' consent. *In re Pharmatrak, Inc. Privacy Litigation*, 329 F.3d 9, 19 (1st Cir. 2003). Here, again, Vieira's effort is defeated by his own testimony. The consent necessary to vitiate liability may be either actual or implied.

*Id.* Implied consent, as Vieira recognizes, is not constructive consent but consent in fact. *Id.*; *United States v. Lanoue*, 71 F.3d 966, 981 (1st Cir. 1995). In *United States v. Lanoue*, the court explained:

> Deficient notice will almost always defeat a claim of implied consent. * * * [I]mplied consent * * * might be implied in spite of deficient notice, but only in a rare case where the court can conclude with assurance from the surrounding circumstances that the party knowingly agreed to the surveillance.

71 F.3d at 981; *see also Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998) ("Without actual notice, consent can only be implied when the surrounding circumstances convincingly show that the party knew about and consented to the interception."). Here, Vieira offers no evidence of actual consent or actual notice. In fact, during his deposition Vieira testified he never obtained the verbal or written consent of any of the plaintiffs that their phone conversations be recorded. Vieira depo. at 115-16; A. 37-38. Likewise, Mary Lennon, the chief of operations of the communications department, testified during her deposition that at no time did anyone approach her and indicate that they were aware that the phone lines were being recorded by the Total Recall system. Lennon depo. at 73; A. 44. Lennon also denied any knowledge "as to whether any of the employees or individuals working at the Public Safety Complex were given knowledge that the recording system * * * had been put in and phone calls were being recorded." *Id.* at 83; A. 45. Further, she was not aware of any kind of warning or beeping to let individuals know their phone calls were being recorded. *Id.* at 84; A. 46. Moreover, although Desmarais had claimed that a lot of people knew about the recording, when he reviewed the list of plaintiffs in this action he had to admit that he did not know any of them and, thus, did not know whether or not they knew of the recording. Desmarais depo. at 105-06; A. 21-22.

All that Vieira can offer in one brief paragraph is that the phone system was purchased after a public bidding process and that "many representatives from various departments within the Public Safety Complex attended meetings and training sessions during which the recording system, and more particularly, its use and capabilities were openly discussed." Vieira Mem. at 26. There is nothing in Vieira's memorandum or Statement of Undisputed Facts that elaborates on those meetings, that demonstrates which, if any, plaintiffs attended, or establishes what specific uses and capabilities were disclosed. Even if it had been disclosed that the system to be purchased had recording capabilities, that would not constitute actual notice that *all* stations were going to be recorded. *See Berry v. Funk*, 146 F.3d at 1011 ("The government may be able to establish that Berry was aware that the Operations Center had the *capacity* to monitor calls[;] [b]ut appellees have introduced no evidence that * * * he * * * was told that these specific conversations would be monitored."); *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) ("Knowledge of the capability of monitoring alone cannot be considered implied consent."). Since there was recording of emergency calls at the prior location, it would not have been noteworthy that there would be a recording system at the new PPSC that could continue the existing practice.

Moreover, it is patently ridiculous for Vieira to claim that the plaintiffs had notice amounting to implied consent to recording of all calls when, in the same breath, he denies that he had any notice that the system was recording all calls. As the court observed in *In re State Police Litigation*, *supra*, 888 F.Supp. at 1256, "[i]f those in charge * * * can claim no subjective knowledge of the recording of outgoing calls, it must be expected that plaintiffs do likewise." Further, the fact that Fire Chief Dutra was not aware of the recording of all calls

and that it was his inquiries in January 2003 that led to the discovery of the recording system is evidence that the rank and file were not aware of the recording either. Vieira would have this Court find from the scanty evidence and argument he presents that there is no genuine issue whether each plaintiff had sufficient notice or knowledge as to amount to knowing consent to the interceptions, and at the same time suggest there is a genuine issue whether he, whose job it was to know, had no knowledge that the system was recording more than emergency calls. Vieira depo. at 153 (acknowledging that it was his "job to know * * * [w]hat was going on in regard to recording of phone conversation[s]"); A. 40.

Relatedly, Vieira asserts that there is no evidence that plaintiffs had an expectation that their conversations were free from interception. This assertion is without merit. The evidence indicates that prior to the Total Recall system only emergency lines were recorded. Moreover, Vieira testified that "[y]ou just don't record lines unless they're emergency lines," that the recording of all lines would "be in violation of the city's policies and procedures," and that recording all calls would not be "in the ordinary course of business." Vieira depo. at 85, 149, 155-56; A. 36, 39, 41-42. Further, there is no evidence that plaintiffs had actual notice of the recording. As the court stated in *Ali v. Douglas Cable Communications*, 929 F.Supp. at 1382:

> Without uncontroverted proof that the plaintiffs knew their personal calls would be recorded before any such calls were actually recorded, the court cannot say as a matter of law that the plaintiffs' actual or subjective expectation of privacy in the personal calls made at the work place was unreasonable under the circumstances.

Accordingly, Vieira is not entitled to summary judgment on Count 3 of plaintiffs' amended complaint.

III. There is evidence that Vieira did engage in the unauthorized interception of oral communications in violation of R.I. GEN. LAWS § 11-35-21.

Vieira next argues that he should be awarded summary judgment on Count 4 of plaintiffs' amended complaint, under which Vieira is liable if the jury determines that he "willfully intercepted * * * any wire, electronic or oral communication." First, Vieira asserts that the "State Police concluded that there was no evidence to support the filing of criminal charges." Vieira Mem. at 28. Second, Vieira alleges that there is no evidence that Vieira engaged in the willful or intentional interception of plaintiffs' phone conversations. *Id.* Last, Vieira points out that he did not have a password or administrative access to the system. *Id.*

Vieira misrepresents the State Police's conclusion. The State Police Case Summary states in relevant part:

> There has been no evidence to support that the installation and use of the recording device went beyond the Director of Communications, Manuel Vieira. In statements made by Manuel Vieira to others, he attempted to distance himself from knowledge and understanding of the recording of telephone lines. * * * Manuel Vieira avoided any direct responsibility; however, memos and statements that were reviewed indicated *Manuel Vieira was directly responsible for the purchase and installation of the recording device.*
>
> Based upon the above facts and statements, this investigation will be forwarded to the Attorney Generals Office for review and determination if the actions of certain individuals are warranted for criminal liability * * *.

State Police Case Summary at p. 42 (emphasis added); A. 2.

In accord with the State Police's conclusion regarding Vieira's direct responsibility for the installation of the recording system, plaintiffs have produced evidence that Vieira directed that all lines be recorded. That evidence is set out and discussed in detail in section I.A. of this memorandum and will not be needlessly reiterated here.

Finally, whether Vieira had his own password or administrative access to the system is irrelevant to whether he willfully or intentionally intercepted the calls. He directed that the calls be intercepted and recorded. Since it is unnecessary that he listen to or disclose the intercepted calls in order to be liable under the act, it is irrelevant whether he had access to the system or whether he would have had to get one of his subordinates to get him a password or access the system for him. There can be no doubt that Vieira, as head of the department, could easily have obtained a password or access to the system if he wanted.

Accordingly, Vieira has failed to establish that he is entitled to summary judgment on Count 4 of plaintiffs' amended complaint.

IV. There is evidence that Vieira violated plaintiffs' right to privacy.

Vieira next argues that he is entitled to summary judgment on Count V of plaintiffs' amended complaint, which alleges that he violated R.I. GEN. LAWS § 9-1-28.1. Once again Vieira argues that plaintiffs had no expectation of privacy in their phone conversations and that any subjective expectation of privacy was not objectively reasonable. Vieira Mem. at 29. Both of those arguments should be rejected for the reasons already discussed in the preceding sections. In addition, Vieira's reliance on *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492 (1987), is misplaced since the intrusions here complained of were not by a supervisor. None of the plaintiffs were employed in the communications department. The communications department is a separate entity from the police and fire departments. Rosenzweig depo. at 116; A. 34. Vieira produces no evidence that any of the unlawful interceptions of plaintiffs' communications were done at the request of anyone who was a supervisor of any of the plaintiffs.

Vieira acknowledges that whether an employee has an objectively reasonable expectation of privacy must be determined on a case-by-case basis, that is on the facts of the particular case. Vieira Mem. at 30 (citing *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 1998)). Here, Vieira relies on vague references to meetings and training seminars and shared information between employees and their supervisors. *Id.* at 29-30. The gross lack of detail and the absence of citation to record evidence leaves Vieira well short of satisfying his burden to establish "that no finder of fact could reasonably find a genuine dispute of material fact and resolve that dispute in the plaintiff's favor." *Rodruguez-Suris v. Montesinos*, 123 F.3d at 23. Here, there is plainly sufficient evidence from which a jury could find that plaintiffs had an objectively reasonable expectation of privacy. That evidence includes Vieira's testimony that "[y]ou just don't record lines unless they're emergency lines," that the recording of all lines would "be in violation of the city's policies and procedures," and that recording all calls would not be "in the ordinary course of business of the communications department." Vieira depo. at 85, 149, 155-56; A. 36, 39, 41-42.

Finally, Vieira's reliance on plaintiffs' answers to interrogatories, in which they stated that they have no personal knowledge that defendants or anyone who is not a party to this action listened to the intercepted phone calls, is unavailing. Vieira Mem. at 30-31. Vieira produces no authority that the calls had to be listened to or disclosed as a precondition to liability for invasion of privacy. The statutorily created right of privacy consists of four elements, and only two of the torts under the statute explicitly require disclosure. R.I. GEN. LAWS § 9-1-28.1. § 9-1-28.1(a)(3) protects against unreasonable publicity given to private facts and § 9-1-28.1(a)(4) protects against publicity that places one in a false light. Although § 9-1-28.1(a)(1)(ii) provides that a person who intrudes upon the seclusion of another need not benefit from the disclosure of information obtained by the intrusion, the statute does not

explicitly require disclosure. To require disclosure as an essential element of the tort of intrusion would meld that tort with the tort of unreasonable publicity given to private facts and controvert the legislative purpose of protecting against intrusion as a wholly separate offense. *See Ali v. Douglas Cable Communications*, 929 F.Supp. at 1382 (holding that in an action for intrusion upon seclusion "liability * * * does not require publication of a plaintiff's private affairs."). Thus, as with the federal wiretap act, the act of recording alone should be sufficient because it is at that moment that the intrusion occurs. *Id.* ("Other jurisdictions have recognized that the improper interception of employees' phone calls may constitute a tortious invasion of privacy."). Whether the intruder upon plaintiffs' privacy later chooses to listen to or disclose to others the recording should be irrelevant to whether there was an unlawful intrusion. The mere knowledge that one's privacy has been intruded upon is sufficient to cause emotional damage. There is simply no reason to construe the privacy statute more narrowly than the wiretap statutes and Vieira cites no authority suggesting or requiring that this Court do so.

Accordingly, Vieira fails to establish that he is entitled to summary judgment on Count V of plaintiffs' amended complaint.

V. There is evidence that Vieira violated R.I. GEN. LAWS § 12-5.1-1.

Vieira's last argument is that he should be entitled to summary judgment on Count VI of plaintiffs' amended complaint on the basis that there is no evidence that plaintiffs are "aggrieved persons" within the meaning of R.I. GEN. LAWS § 12-5.1-1(1) and that there is no evidence that the calls intercepted fall within the definition of "oral communication" set forth at § 12-5.1-1(10). Both of these arguments are essentially rehashes of arguments Vieira made with respect to other counts discussed above.

The basis of Vieira's assertion that plaintiffs are not within the definition of "aggrieved persons" is not at all clear. An aggrieved person includes "an individual who was a party to any intercepted wire, electronic or oral communication." Vieira produces no evidence that all or even one of the plaintiffs was not a party to any of the 755,000 intercepted communications. While Vieira's argument regarding "oral communications" is clearer, it fails on the merits. Once again, Vieira argues that the intercepted calls do not constitute oral communications because, according to Vieira, plaintiffs "were *probably* aware that their calls were being recorded." Vieira Mem. at 32 (emphasis added). "Probably" is patently insufficient for purposes of summary judgment. *Rodruguez-Suris v. Montesinos*, 123 F.3d at 23 (stating that it is movant's burden "to establish that all material facts are undisputed"). Further, Vieira's assertion that there was no effort to conceal or misrepresent the "capabilities of the system" is equally off the mark. Vieira Mem. at 32. The relevant issue is not the capabilities of the system, whether it *could* be programmed to record all lines, but whether it *was* programmed to do that. Vieira does not establish, as discussed above, that plaintiffs actually knew that the system was programmed to record all calls. Neither does he establish that they should have known that the system was programmed to do that when, as Vieira testified, the recording of all lines would have violated the policies of the city.

Accordingly, Vieira fails to establish that he is entitled to summary judgment on Count VI of plaintiffs' amended complaint.

## CONCLUSION

As shown above, the essential premises of Vieira's motion for summary judgment are simply not supported by the record. Vieira has not established that there is no genuine issue

regarding whether he intended to intercept plaintiffs' calls. He likewise has not established that there is no genuine issue whether the interception of plaintiffs' calls was within the ordinary course of business of the city. And, he has not established that there is no genuine issue whether plaintiffs' knew or should have known that their calls were being recorded. Thus, Vieira has not satisfied his burden to establish that all material facts are undisputed. Plaintiffs have produced evidence, including deposition transcripts and statements to the State Police, that establish the existence of genuine issues of material fact on all of those issues. In many cases, it is the testimony of Vieira himself that creates those issues.

Vieira had it right when he said, "You just don't record lines unless they're emergency lines." In ignoring what he knew to be true and directing the recording of all lines, resulting in the capture of approximately 755,000 phone calls, Vieira violated plaintiffs rights as alleged in their amended complaint. Accordingly, Vieira's motion for summary judgment should be denied in its entirety.

By their attorneys,

**Murphy & Fay, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903
Tel: (401) 490-3200
Fax: (401) 490-3207

Mark A. Fay # 4208

**Certification**

On May 31, 2006 a true copy of the foregoing was served on all counsel of record, listed below, by mail.

Kendra Lima

**Dean G. Robinson, Esq.**
670 Willett Avenue
Riverside RI 02915

**Carolyn A. Mannis, Esq.**
170 Westminster Street, Suite 800
Providence RI 02903

Susan Marcotte Carlin, Esq.
**Famiglietti & Carlin, Ltd.**
205 The Lincoln Center
132 Old River Road
Lincoln RI 02865

**George J. West, Esq.**
1500 One Financial Plaza
Providence RI 02903

Kevin F. McHugh, Esq.
Assistant City Solicitor
**City of Providence**
275 Westminster Street
Providence RI 02903

George L. Santopietro, Esq.
**Coia & Lepore, Ltd.**
226 South Main Street
Providence RI 02903