**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THOMAS WALDEN, ET ALS | : | |
| VS. | : | C.A. NO.: 04-304S |
| CITY OF PROVIDENCE, ET ALS | : | |
| JOHN C. CHMURA, ET ALS | : | |
| VS. | : | C.A. NO.: 04-553S |
| CITY OF PROVIDENCE, ET ALS | : | |

## OBJECTION

Plaintiffs hereby object to Defendant Mary Lennon's Motion for Summary Judgment. The bases for this objection are detailed in the attached memorandum and statement of disputed material facts.

PLAINTIFFS
By their Attorneys,

Mark A. Fay, Esquire, #4208
Murphy & Fay, LLP
127 Dorrance Street, 2nd Floor
Providence, Rhode Island 02903
(401) 490-3200
(401) 490-3207 FAX

**CERTIFICATION**

I, the undersigned, hereby certify that I have this 31 day of May, 2006 mailed a copy of the foregoing, first class mail, postage prepaid to:

Dean G. Robinson, Esquire
670 Willett Avenue
East Providence, RI 02903

George L. Santopietro, Esquire
226 South Main Street
Providence, RI 02903

Kevin F. McHugh, Esquire
Michael A. Calise, Esquire
275 Westminster Street
Providence, RI 02903

Susan Marcotte Carlin, Esquire
Famiglietti & Carlin, LTD
The Lincoln Center, Suite 205
132 Old River Road
Lincoln, RI 02865

Kimdra Lima

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-553S |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO MARY LENNON'S SUMMARY-JUDGMENT MOTION

## INTRODUCTION

Mary Lennon moves this Court to grant her summary judgment, asserting that the undisputed facts show that she had nothing to do with the retrieval of recorded conversations from "the Total Recall system" that was installed in the Providence Public Safety Complex [PPSC]. However, Lennon's own deposition testimony shows that she learned that the Total Recall system was recording more than just the emergency lines—that it was recording most telephone calls going in and out of the PPSC. In fact, Lennon caused the interception of more phone calls by ordering that more lines be added to the Total Recall system. Her testimony also shows that she had filled out formal requests for specific conversations to be retrieved from the Total Recall system, and had personally retrieved a recorded conversation from the Total Recall system at the request of Councilman Patrick Butler. This evidence requires that Lennon's motion for summary judgment be denied.

communications department.[1] Lennon depo. at 13; Appendix [A.] 7.[2]

2. Lennon learned in July 2002 that the Total Recall system was being installed and that some lines in the communications department's facility on West Exchange Street were also being recorded. Lennon depo. at 66-67; A. 20-21.

3. In July 2002, Lennon received an email informing her that certain phone stations at the communications department facility had been purged from the recording system and that those stations were no longer recording inbound or outbound calls. Lennon depo. exh. 3; Lennon depo. at 58-61; A. 15-18, 27.

4. Lennon directed Greg Haroian, a technician in the communications department, to add additional telephone lines to the Total Recall system. Haroian State Police statement Q. 43-53; A. 28-29.

5. Lennon received training for the Total Recall system in November 2002, during which she learned that the system recorded more than just emergency lines, that it also recorded calls on non-emergency lines within the PPSC. Lennon depo. at 43, 45, 63; A. 8, 9, 19.

6. After her training in November 2002, and before her resignation in February 2003, Lennon became aware that most phone lines at the PPSC were being recorded. Lennon depo. at 68-69; A. 22-23.

7. After becoming aware that most of the lines at the PPSC were being recorded, Lennon never discussed with the city's law department or with anyone else whether it was

---

1. Lennon had started working for the City as a part-time crossing guard around 1997. Lennon depo. at 11. She then worked for approximately nine months as an office assistant at the Retirement Office. *Id.* Thereafter, she obtained the position of office manager for the Commissioner of Public Safety, until she became Chief of Operations of the communications department in 1999. *Id.* 12-13.

2. Plaintiffs' appendix is attached to their Statement of Disputed Facts.

appropriate or legal. Lennon depo. at 74-76; A. 24-26.

8. Lennon knew that essentially all telephone lines were recorded. Moise State Police statement Q. 28-32; A. 30-31.

9. Lennon personally filled out two to three forms requesting the retrieval of recordings from the Total Recall system. Lennon depo. at 46-47; A. 10-11. Moreover, Lennon used an administrative password to personally retrieve a recorded conversation from the Total Recall system, at the request of Councilman Patrick Butler. *Id.* at 53, 56-57; A. 12, 13-14.

This evidence shows that, prior to the time of Lennon's resignation, she was aware of the function and the capabilities of the Total Recall system, she had directed that additional lines be recorded by the system, and that she had actively participated in the retrieval and disclosure of recorded messages from this system. To the extent that Lennon's statement of "undisputed facts" conflicts with the evidence cited above, Lennon's assertions are disputed.

## STANDARD OF REVIEW

This Court's standard of review when ruling on a motion for summary judgment is well settled. When ruling on a summary-judgment motion, "the court must view 'the facts in the light most favorable to the non-moving party, drawing all inferences in that party's favor.'" *Poulis-Minott v. Smith*, 388 F.3d 354, 361 (1st Cir. 2004), citing *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995).

> Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably for the nonmovant. By like token, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the

> point in favor of the nonmoving party." [Citations omitted.] "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'"

*Rojas-Ithier* v. *Espanola*, 394 F.3d 40, 42-43 (1st Cir 2005). Here, the evidence adduced thus far is sufficiently open-ended to permit a rational factfinder to resolve genuine issues of fact in favor of either side.

## ARGUMENT

I. Lennon's role in intercepting and disclosing oral communications recorded by the Total Recall system makes her liable to the plaintiffs under 28 U.S.C. § 2520 and R.I. GEN. LAWS §§ 11-35-21(a) and 9-1-2.

Two of the five counts in plaintiffs' complaint assert that Lennon has violated the state and the federal wiretap statutes, and that plaintiffs may recover civil damages for the violation of these statutes. In Rhode Island, any person:

> who willfully intercepts, attempts to intercept, or procures any other person to intercept or attempt to intercept, any wire, electronic, or oral communication * * * shall be imprisoned for not more than five (5) years.

R.I. GEN. LAWS § 11-35-21(a) (emphasis added). Under R.I. GEN. LAWS § 9-1-2, victims of this crime may bring a civil suit against the violator for damages.

Under 28 U.S.C. § 2520, the plaintiffs also have a cause of action for the unlawful interception, *disclosure* or use of their telephone communications from or to the PPSC.

> To make out a cause of action, a plaintiff must establish that the defendant violated 18 U.S.C.A. § 2511. Thus, plaintiff must prove that defendant
>
> 1. "intentionally" and unlawfully "intercepted" a "wire communication," "oral communication," or "electronic communication" of the plaintiff, i.e., obtained the "contents" of such communication by means of "any electronic, mechanical or other device", or
>
> 2. "intentionally" disclosed or used the "contents" of such communication, knowing or having reason to know that the communication had been intercepted unlawfully; or

3. endeavored or procured any other person to do either of the above.

1 CLIFFORD S. FISHMAN & ANNE T. MCKENNA, WIRETAPPING AND EAVESDROPPING § 4:33, at 4-46 (2d ed. 1995) (emphasis added).[3]

The State Police records show that Lennon directed technician Greg Haroian to *add* lines to the Total Recall system to be recorded. Haroian statement to State Police Q. 43-53; A. 28-29. Altogether, Haroian was directed to add 50 or more lines to the Total Recall system by Lennon, Deputy Director Richardson, and radio engineer Anthony Desmarais. *Id.* A jury could conclude from Lennon's position as Chief of Operations, and from the evidence of her authority to direct the recording of additional phone stations, that she possessed decision-making authority with regard to the interception and recording of phone stations. Because of her position of authority, her knowledge of and active participation in the recording of phone stations, and her failure to ask city lawyers or her supervisor whether the recording was legal or appropriate, it is reasonable to conclude that she intentionally intercepted telephone calls. Accordingly, this case presents genuine issues of material fact, arising from the evidence cited above, whether Lennon intentionally intercepted calls in violation of 28 U.S.C. § 2520 and R.I. GEN. LAWS §§ 11-35-21(a) and 9-1-2.

Lennon has also conceded that she completed the forms that were necessary for the retrieval and disclosure of certain telephone conversations from the Total Recall system. Moreover, she stated that, at the request of Councilman Patrick Butler, she had personally accessed the Total Recall system and retrieved a recorded conversation. Lennon has failed to present any evidence to show that the conversations she retrieved, or caused to be retrieved,

---

3. "'Procure' is generally understood to mean actively bringing about, causing or instigating something to be done." *Flowers v. Tandy Corp.*, 773 F.2d 585, 590 (4th Cir. 1985), citing BLACK'S LAW DICTIONARY 1087 (5th ed. 1979).

were not plaintiffs' private conversations. *Rodruguez-Suris v. Montesinos*, 123 F.3d 10, 23 (1st Cir. 1997) ("It is a defendant's burden, in moving for summary judgment, to establish that all material facts are undisputed, and that no finder of fact could reasonably find a genuine dispute of material fact and resolve that dispute in the plaintiff's favor."). Accordingly, this case presents genuine issues of material fact, arising from the evidence cited above, whether Lennon intentionally disclosed the contents of recorded conversations of plaintiffs and procured others to do the same in violation of 28 U.S.C. § 2520 and R.I. GEN. LAWS §§ 11-35-21(a) and 9-1-2.[4]

The evidence cited herein shows that Lennon knew that essentially all the telephone lines in the PPSC were being recorded, that she directed the recording of additional lines, and that she disclosed and procured others to disclose some of these recorded conversations. This evidence, viewed in the light most favorable to the nonmoving parties—the plaintiffs—creates a genuine issue of material fact. The factual dispute is genuine because it is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). Certainly, a jury might decide to disbelieve Lennon's self-serving denials of involvement—denials that are contradicted by her own deposition testimony. Likewise, a jury might well decide that Haroian and Moise are more reliable than Lennon and choose to

4. This same evidence supports the plaintiffs' other counts against Lennon. Because Lennon acted under color of the law—in following departmental procedure when ordering that more lines be added to the system and when retrieving intercepted conversations—her actions support plaintiffs' § 1983 claims for the violation of their state and federal constitutional right to be secure against unreasonable search and seizures. Complaint Counts I & II. Lennon's "interception," "disclosure," and "procurement" activities also form the basis for plaintiffs' claims for the violation of their right to privacy under R.I. GEN. LAWS § 9-1-28.1(b) and the violation of the state's other prohibition of wiretapping under R.I. GEN. LAWS § 12-5.1-13. Complaint Counts V & VII.

believe what they have to say, as reflected in their statements to the State Police. Thus, a rational factfinder could resolve in plaintiffs' favor the issue whether Lennon intentionally intercepted and/or disclosed and procured others to disclose some of the private conversations recorded by the Total Recall system. Lennon's interception, disclosure, and procurement activities are plainly material because the dispute over them "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

Accordingly, viewing the evidence in the light most favorable to the plaintiffs, this Court should deny Lennon's motion for summary judgment in its entirety.

## II. VIEWING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFFS, THERE IS EVIDENCE SUPPORTING THE PLAINTIFFS' CLAIMS THAT LENNON ABROGATED THEIR RIGHTS BOTH IN HER OFFICIAL CAPACITY AND INDIVIDUALLY.

Lennon denies liability under plaintiffs' claims in either her official capacity or her individual capacity. It is well-settled that a suit against an official in her official capacity is not an action against the official, but rather is a suit against the official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 878 (1985)). Lennon, as Chief of Operations of the communications department, directed that additional lines be recorded, and disclosed and procured others to disclose private conversations recorded by the Total Recall system. The claims against her, in her official capacity, are therefore viable claims.

Likewise, the claims against Lennon in her individual capacity are also valid. In order for plaintiffs to establish Lennon's liability in her individual they need only show that she "acted personally in the deprivation of the plaintiffs' rights." *Kabir v. F.W. Green*, 2003

WL 24054700, p.7 (E.D. Va. 2003) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir 1977)). Here, Lennon acted personally when she directed that additional lines be recorded, when she completed the forms necessary for access to recorded calls, and when she accessed the Total Recall system and retrieved a recorded conversation to be disclosed to Councilman Butler. *See generally. Cady v. IMC Mortgage Co.*, 862 A.2d 202 (R.I. 2004) (suit brought against private employer under state and federal wiretapping statutes). Lennon has not proven that none of the plaintiffs' private conversations were made on the lines that she directed to be recorded, and/or that they were not parties to the calls that she approved access to. Accordingly, she is not entitled to summary judgment.

## CONCLUSION

The evidence, viewed in the light most favorable to plaintiffs, shows that Lennon, while Chief of Operations of the communications department, took an active part in the interception and disclosure of recorded conversations from "the Total Recall system." This Court should therefore deny and dismiss Lennon's motion for summary judgment because there exists a genuine issue of material fact whether she violated the plaintiffs' constitutional, state statutory, and federal statutory rights when she directed that additional lines be recorded and when she approved disclosure of recordings of telephone conversations taken from the Total Recall system.

By their attorneys,

**Murphy & Fay, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903
Tel: (401) 490-3200
Fax: (401) 490-3207

Mark A. Fay # 4208

**CERTIFICATION**

On May 31, 2006 a true copy of the foregoing was served on all counsel of record, listed below, by mail.

Kindra Lima

**Dean G. Robinson, Esq.**
670 Willett Avenue
Riverside RI 02915

**Carolyn A. Mannis, Esq.**
170 Westminster Street, Suite 800
Providence RI 02903

Susan Marcotte Carlin, Esq.
**Famiglietti & Carlin, Ltd.**
205 The Lincoln Center
132 Old River Road
Lincoln RI 02865

**George J. West, Esq.**
1500 One Financial Plaza
Providence RI 02903

Kevin F. McHugh, Esq.
Assistant City Solicitor
**City of Providence**
275 Westminster Street
Providence RI 02903

George L. Santopietro, Esq.
**Coia & Lepore, Ltd.**
226 South Main Street
Providence RI 02903