**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

**THOMAS WALDEN, et als.**

**VS.** **C.A. NO.: 2004-304 S**

**CITY OF PROVIDENCE, et. als.**

***CONSOLIDATED WITH***

**JOHN C. CHMURA, et als.**

**VS.** **C.A. NO.: 04-553S**

**CITY OF PROVIDENCE ,et als.**

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, URBANO PRIGNANO, JR.**

INTRODUCTION

Defendant, Urbano Prignano, Jr. ("Col. Prignano") filed a motion for summary judgment on or about April 6, 2006. Following the filing, Plaintiffs requested further time to conduct discovery before responding to the motion.[1] That request was granted and subsequently, Plaintiffs took three additional depositions.[2]

[1] At about the same time, Defendant Mary Lennon and Defendant Manual Vieira also filed motions for summary judgment.

[2] Plaintiffs had also noticed a fourth deposition, but, apparently for health reasons, the deposition of the current Chief of the Providence Police Department, Col. Dean Esserman, to date has not been convened.

In responding to Col Prignano's motion for summary judgment, Plaintiffs cited only the deposition of the former Assistant Chief of Police, Andrew Rosenzweig. They did so in support of their argument that there exists but one factual dispute relating to Colonel Prignano which would defeat his motion for summary judgment. That factual dispute purports to be whether Col. Prignano participated in some way in the "procurement" of the "Total Recall System". Plaintiffs' position in this regard is unsound as the "dispute" if it exists is not genuine nor does it involve a material issue.

PLAINTIFFS' HAVE NOT PRESENTED A SINGLE *MATERIAL* FACT ABOUT WHICH THERE IS ANY *EVIDENCE* OF A GENUINE DISPUTE

The Plaintiffs' untenable position is that Col. Prignano should be held liable for *any* alleged misuse of a telephone recording system[3] which may have occurred in a Public Safety Complex that he never stepped foot in as an employee of the City of Providence--much less as Chief--because years before, he participated in discussions about the "procurement" of a telephone/recording system. According to Plaintiffs, that position is based on former Chief Rosenzweig's incomplete "preliminary inquiry",[4] which indicates that while he was Chief, Col. Prignano *may* have had conversations about his desire that the proposed, but not then existing, new Public Safety Complex be equipped with a state of the art telephone system with a "recording" capacity. (*See* Statement of Material Facts in Dispute in Support of Plaintiffs' Objection to Urbano Prignano's Summary-Judgment

---

[3] Defendant Urbano Prignano, Jr. does not concede any misuse of the telephone recording system which has been referred to as the "Total Recall System" by anyone.

[4] Former Assistant Chief Andrew Rosenzweig acknowledged, if not insisted, at his deposition that the "investigation" he conducted was no more than a "preliminary inquiry" that he did not have enough time to complete. [Rosenzweig Deposition at 16--17; 118--119 (Attachment A).]

Motion at p. 2.) Even two years after the filing of the original lawsuit, this is the sum and substance of all the "evidence" that Plaintiffs have been able to garner in a not surprisingly futile attempt to identify some "evidence" that might be "open-ended" enough to create a genuine issues of fact relating to Col. Prignano.

What material fact could these alleged conversations call into question? Even if the "conversations" were deemed to be an initial part of the procurement process eventually leading to the purchase of the "Total Recall System", there is no evidence that Col. Prignano intended that the capabilities of the system be used in an unlawful manner.

Furthermore, the Plaintiffs use of the word procurement in the context of participating in the process leading to the purchase of a telephone recording system does not correspond to the terms "procures" or "procured" used in the state and federal statutes creating liability for an illegal intercept of an oral communication. (*See* 28 U.S.C. Sec. 2520; 18 U.S.C. Secs. 2511 and R.I. Gen. Laws Secs. 11-35-21(a) and 9-1-2. ) The plain meaning of the root word "procure" in those statutes relates to the *procurement of a person to violate wiretap statutes*--not the procurement of a system that could be used in such a way so as to do so. There simply is no evidence that Col. Prignano "procured" or attempted to "procure" anyone to effectuate any illegal wire interception. At best for Plaintiffs, and stretching the implication beyond its tinsel strength, the conversations in question may tend to show that Col. Prignano had some input at a pre-requisitioning stage as to features he would like to have available in the new telephone/recording system.

Moreover, the "evidence" Plaintiffs rely on to forward the preposterous conclusion--that Col. Prignano participated in the procurement of a telephone recording system that was not operational for approximately one and one-half years after his

retirement--is not admissible evidence. That is because such "eveidence" as testified to by former Assistant Chief Rosenzweig is pure hearsay.

Plaintiffs' footnoted argument that the "evidence" provided by former Assistant Chief Rosenzweig at his deposition or by means of a memorandum produced sometime during the course of his "preliminary" "incomplete" "inquiry" would be admissible under Fed. R. Evid. 801(d)(2)(A) and/or (E) as an admission by a party-opponent is unsound. The "statements" in question do not qualify as "non-hearsay" admissions under either Rule 801(d)(2)(A) (party's own statement) or 801(d)(2)(E) (statement of co-conspirator).

Former Assistant Rosenzweig acknowledged that he had never met or spoken to Col. Prignano until the date of his deposition on May 9, 2006. [Deposition of Rosenzweig at 109 (Attachment A).] Thus it would be impossible for Col. Prignano to have "admitted" anything to former Assistant Chief Rosenzweig. No "admission" attributed to Col. Prignano by former Assistant Chief Rosenzweig based on another party's report can be the "party's own statement" under Rule 801(d)(2)(A). Such statements are classic hearsay and not admissible.

Likewise, "admissions" made by a co-conspirator during the course and in furtherance of a conspiracy can not alone be used to establish the conspiracy and/or the participation of the party against whom the statement if offered. Rule 801(d)(2)(E). Plaintiffs have offered no preliminary evidence of the existence of a "conspiracy" between Col. Prignano and the former Director of Communications which would enable the statements in question which were purportedly made to former Assistant Chief Rosenzweig by the former Director of Communications to be considered "admissions" by

a co-conspirator. Absent a conspiracy, there are no co-conspirators to make admissions for other co-conspirators.

More significantly, the alleged statements hardly rise to the level of allowing a finding that Col. Prignano was conspiring to or have someone else do anything unlawful or that he had anything to "admit". Who can fault a Police Chief for wanting a quality telephone system with many capabilities--"all the bells and whistles." There is no question that the recording of many types of telephone calls, such as emergency calls, is a regular and expected occurrence in a police or fire station. In fact, former Assistant Chief Rosenzweig himself acknowledged that he is of the opinion that "the system would have been fine if employees were notified and other people were notified their calls may be reached." [Rosenzweig Deposition at 64-65 (Attachment A).]

Furthermore, who better to relay and discuss concerns and wishes about a future telephone system than to the Director of Communications, who contrary to Plaintiffs assertions, did not report to the Chief of Police and consequently could not be "directed" to do anything by Col. Prignano. [Rosenzweig Deposition at 116 (Attachment A).] Former Assistant Chief Rosenzweig acknowledged that his understanding is that any conversations he recalled having been told about between Col. Prignano and the Director of Communications occurred while the "Colonel was the Colonel". [Rosenzweig Deposition at 126 (Attachment A).] The Plaintiffs do not dispute that the Colonel had not been Colonel for about one and one-half years before the "Total Recall System" was up and running. (*See* Statement of Material Facts in Dispute in Support of Plaintiffs' Objection to Urbano Prignano's Summary-Judgment Motion at 1 (accepting, among other things, that Col. Prignano retired on January 31, 2001 and that the "Total Recall System"

was activated in July or August of 2002).) Conversations of this nature between two department heads planning a new complex hardly rise to the level of an "admission" against interest.

Above all, the evidence, even when viewed in the light most favorable to the Plaintiffs[5], is that Col. Prignano was no longer in control of the Providence Police Department at the time of the events that are material to this law suit. At the time of the requisitioning process, the bidding process, the installation, the operation and/or the maintenance of the "Total Recall System" Col. Prignano simply was not there. There is no genuine issue of a material fact relating to Col. Prignano.

CONCLUSION

For these reasons and those set forth in Defendant's statement of undisputed facts and previous memorandum, Judgment should enter in favor of Defendant Urbano Prignano, Jr. against all Plaintiffs, and both cases should be dismissed with prejudice as against Col. Prignano.

[5] Given the standard applicable to motions for summary judgment, there is no question but that Col. Prignano's credibility is not an issue on his motion for summary judgment. Nevertheless, Plaintiffs' memorandum unnecessarily quotes a line from a recent decision of a Rhode Island Superior Court commenting on Col. Prignano's reputation for honesty. (See Memorandum in Support of Plaintiffs' Objection to Urbano Prignano's Summary Judgment Motion at 6.) Plaintiffs' memorandum tends to treats the quote as a judicial finding of fact. In context and under the circumstances and travel of that case, the reference speaks to the patent unfairness of the respondent's inability to cross-examine Col. Prignano's prior recorded testimony especially after the representative of the proponent of the testimony himself impugned Col. Prignano's reputation. Reference to this quote in this matter, suggests that the underlying reason that Col. Prignano remains a Defendant is to bring some sort of emotional advantage to Plaintiffs' case based on recent negative publicity. This is unfortunate.

Defendant,
Urbano Prignano, Jr.
By his Attorneys,
**FAMIGLIETTI & CARLIN, LTD.**

Stephen R. Famiglietti, Esq.
RI Bar No. 1305

Susan M. Carlin, Esq.
RI Bar No. 2648

132Old River Road, Suite 205
Lincoln, Rhode Island 02865
(401) 335-4550
(401) 335-4515 Fax

Dated: June 28, 2006

## CERTIFICATION

I hereby certify that copies of the within were forwarded by first class mail to Mark A. Fay, Esq., Murphy & Fay, LLP, 127 Dorrance Street, 2nd Floor, Providence, Rhode Island 02903; Carolyn A. Mannis, Esq., 170 Westminster Street, Suite 800, Providence, Rhode Island 02903; Dean G. Robinson, Esq., 670 Willett Avenue, East Providence, Rhode Island 02915; George L. Santopietro, Esq., Coia & Lepore, Ltd., 226 South Main Street, Providence, Rhode Island 02903; Kevin McHugh, Esq., and Michael Calise, Esq. Assistant City Solicitors, Law Department, City of Providence, 400 Westminster Street, Providence, Rhode Island 02903 on the 28th day of June, 2006.