UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-553S |

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF PLAINTIFFS' OBJECTION TO URBANO
PRIGNANO, JR.'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This supplemental memorandum responds to the supplemental memorandum of law submitted by Urbano Prignano in support of his motion for summary judgment and addresses the questions set forth in the Order of this Court dated July 27, 2006.

## ARGUMENT

A. Prignano is not entitled to summary judgment on the basis of qualified immunity.

Prignano begins his claim to entitlement to summary judgment on the basis of qualified immunity by laying out the three-pronged inquiry set forth in *Young v. City of Providence*, 396 F.Supp.2d 125, 131 (D.R.I. 2005). However, he ignores his initial burden: to show that the acts with which he is charged of committing in violation of plaintiffs' rights were committed by him within the scope of his authority. *See Akins v. Fulton County*, 420 F.3d 1293, 1299 (11th Cir. 2005) ("To benefit from qualified immunity, a government official must make a threshold showing that his actions were undertaken pursuant to performance of his duties within the scope of his authority.").

Prignano offers no argument on this essential predicate to his defense,[1] nor does he offer any evidence showing that the actions with which he is charged ) directing Vieira to create a practice of recording all calls to and from the planned new Providence Public Safety Center [PPSC] ) was within the scope of his authority. Absent any such evidence or argument by Prignano, his claim of qualified immunity fails. *Conner v. Tate*, 130 F.Supp.2d 1370, 1378 (N.D. Ga. 2001) (holding that defendants were not entitled to the defense of qualified immunity where they did not establish that their actions were in the performance of their duties and within the scope of their authority).

Even if Prignano had produced some evidence on that point, there is other evidence in the record from which a jury could conclude that he was not acting within the scope of his authority when he directed Vieira to create the practice of recording all calls. The communications department is separate from the police department, with each department reporting to the Commissioner of Public Safety. Deposition of Andrew Rosenzweig at 116; Supplemental Appendix [Supp. App.] at 2.[2] Thus, there appears to be no actual or apparent authority for Prignano to direct Vieira or the communications department to do anything. Moreover, Vieira testified "[y]ou just don't record lines unless they're emergency lines" and that the recording of all lines at the PPSC would be in violation of the city's policies and procedures. Vieira depo. at 85, 155-56; Supp. App. 4, 5-6. If a jury were to credit those aspects of Vieira's testimony, then that jury might conclude that Prignano was not acting within the scope of his authority when he directed Vieira to create a system that recorded all lines at the PPSC. Hence, even if Prignano had offered any evidence to show that he was acting within the scope of his authority, it would at most have created a genuine issue of material fact, requiring the denial of his motion for summary judgment.

Even if Prignano had succeeded in getting his qualified-immunity defense out of the starting gate ) which he did not ) it would not have crossed the finish line. First, Prignano argues that the constitutional right that plaintiffs claim were violated were not clearly established. Prignano Mem.

---

1. Later, in a different section of his memorandum, Prignano asserts that his actions fall short of being outside the scope of his authority. Prignano Mem. at 9. However, he offers neither supporting argument or any evidence for that bald assertion.

2. Plaintiff's 6-page Supplemental Appendix is attached to this memorandum, and the pages are numbered in the lower right corner for ease of reference.

at 4. "One tried and true way of determining whether [a] right was clearly established * * * is to ask whether existing case law gave the defendants fair warning that their conduct violated the plaintiff's constitutional rights." *Suboh v. Dist. Attorney's Office*, 298 F.3d 81, 93 (1st Cir. 2002).

Here, case law existing at the time Prignano directed Vieira to create a practice of recording all calls gave him fair warning that his conduct violated the plaintiffs' constitutional rights. In *Amati v. The City of Woodstock*, 1997 U.S. Dist. LEXIS 14281 (N.D. Ill. 1997), the court stated that the "alleged conduct of surreptitiously recording of telephone conversations without listening is a violation of * * * the Fourth Amendment." 1997 U.S. Dist. LEXIS 14281 at *6. Further, the court stated that "the law, as it existed at the time of defendants' conduct, clearly established that recording alone was sufficient to violate * * * the Fourth Amendment." *Id.* at n.4. Thus, the court concluded that "it appears the law was clearly established as of the time defendants engaged in the alleged conduct, thereby precluding summary judgment." *Id.* Likewise, in *In re State Police Litigation*, 888 F.Supp. 1235, the court held that "[t]he right of persons to keep private conversations confidential, in short, was `clearly established' prior to [1989] such that a reasonable defendant would have understood that the recording of such conversations was unlawful." 888 F.Supp. at 1261; *see also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 825-29 (D.N.J. 1993) (denying summary judgment on § 1983 claims based on constitutional violations, including the Fourth Amendment). The court in *In re State Police Litigation* observed that the "surreptitious recording of unprivileged but private calls * * * involves an invasion of privacy that far outweighs defendants' proffered justifications" for the recordings. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979)).

Here, Prignano has not proffered any justification for the recording of lines that were not either emergency lines or lines used by the police for complaints. Even if he had produced such evidence it would be disputed by other evidence since Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Further, it is undisputed that the recording was surreptitious: there was no indication by a beeping tone, initial message, or other means that the call was being recorded. Finally, there is no evidence that (or, at most, there is a genuine issue of material fact whether) plaintiffs had actual notice or knowledge of the recording. Thus, as there is neither any

justification for the recording nor any evidence of consent, the surreptitious recording of plaintiffs' calls violated their clearly established Fourth Amendment rights.

Prignano next points to the assertion in the City's memorandum in support of its motion for summary judgment that the recording of the calls was not a violation of plaintiffs' rights because the system was allegedly being used in the ordinary course of duties of a law enforcement officer. Prignano Mem. at 5. For the reasons stated in plaintiff's memorandum in opposition to the City's motion, the City's argument lacks merit. Plaintiffs' Mem. in Opp. at 16-22. Moreover, that Prignano's co-defendant can conjure an argument that it did not violate plaintiffs' rights is hardly a convincing demonstration that plaintiffs' rights were not clearly established.

Prignano next points out, as he did in his opening memorandum, that he had retired prior to the construction of the PPSC and the Total Recall system being acquired and activated. Prignano offers no authority for the implied proposition that the time lag between his directing Vieira to create the practice and Vieira's bringing the practice into existence negates Prignano's responsibility for having instigated it. Having the set the wheels in motion, Prignano remained responsible unless the time lag became so attenuated that Prignano could not longer have reasonably foreseen the result that he directed. The building of the PPSC had been long discussed, well before Prignano's tenure as chief ended. Further, the time period over which the building came to fruition was neither unexpectedly nor unreasonably long. Thus, it would not be unreasonable to impose liability upon Prignano for having directed Vieira to create the unconstitutional practice. *See Nye & Nissen v. United States*, 336 U.S. 613, 618, 69 S.Ct. 766, 769 (1949) (stating that the theory that one "who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly" is "well engrained in the law"); RESTATEMENT (SECOND) OF TORTS § 876(b) (1977) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he * * * knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other * * *.").

Last, Prignano asserts that even if he did act as the plaintiffs charge, those actions were not objectively unreasonable. Prignano Mem. at 6. With essentially no analysis, Prignano simply asserts that the evidence fails to show that he was deliberately indifferent. The applicable test here is

whether "a reasonable officer, similarly situated, would understand that his or her conduct violated that clearly established right." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 7 (1st Cir. 2005). The deliberate-indifference standard applies when the supervisor's participation in the unconstitutional is not direct, but rather indirect conduct amounting to condonation or tacit authorization. *Id*. at 14 (citing *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). "Absent direct participation, a supervisor may only be held liable where * * * `the [supervisor's] action or inaction * * * could be characterized as * * * deliberate indifference.'" *Id*. (quoting *Hagerty v. Somerset County*, 55 F.3d 1367, 1379-80 (1st Cir. 1995)). Here, plainly, Prignano's conduct is direct: he directed the creation of the unconstitutional recording system.

In any event, the stricter supervisory liability standards have no applicability here because neither Vieira nor any employee of the communications department is Prignano's "subordinate." As noted above, the police and communications departments are separate departments, each reporting to the Commissioner of Public Safety.

Even if the "deliberate indifference" standard applied, it would be satisfied if there is evidence that the defendant "disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997). Certainly, a known or obvious consequence of Prignano's direction to Vieira to create the practice of recording all calls is that Vieira would carry out that direction and all calls would be recorded, resulting in the violation of plaintiffs' rights.

Certainly, it should be concluded that a reasonable officer, similarly situated to Prignano, would understand that his conduct violated the clearly established rights of plaintiffs. Plaintiffs have a clear Fourth Amendment right not to have recorded without their consent personal calls which they reasonably expect to be private. Thus, a chief of police may reasonably be expected to understand that a direction to create a practice whereby all calls to and from the PPSC are recorded without any notice or warning to the callers would violate that right.

Accordingly, Prignano fails to establish his affirmative defense of qualified immunity.

B. Plaintiffs' complaint sufficiently pleads a § 1983 claim against Prignano in his official capacity.

A § 1983 claim against a municipal official in his or her official capacity is, in essence, a claim against the municipality. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 885 (1985) ("a judgment against a public servant `in his official capacity' imposes liability on the entity that he represents"); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 705 (1st Cir. 1993) ("An official capacity suit is, in reality, a suit against the government entity, not against the governmental actor."). A complaint against a municipal official in his or her official capacity must therefore allege not only that the official violated plaintiff's statutory or constitutional rights but also show a basis for imposing liability on the municipality. Something more than the employment relationship between the official and the municipality must be shown since a municipality cannot be held liable for an employee's acts solely on the basis of *respondeat superior*. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor"). Rather, a municipality bears liability for an employee's acts "when execution of a [municipality]'s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694, 98 S.Ct. at 2037-38. Thus, the plaintiff's injury must result from "either an officially sanctioned policy or from a custom or practice that is `so well-settled and widespread that the policymaking officials * * * can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 65 (1st Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." That statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define any disputed facts and issues and to dispose of unmeritorious claims." *Id*. The Supreme Court has specifically rejected a "heightened pleading standard" for § 1983 claims. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 1163 (1993). Moreover, the Court noted in *Swierkiewicz v. Sorema, N.A.*, that in light of the notice pleading standard of Rule 8(a) and Rule 8(f)'s requirement that "[a]ll pleadings shall be so construed as to do substantial

justice," a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. 534 U.S. at 514, 122 S.Ct. at 998.

A policy for which municipal liability may attach is a deliberate choice to follow a course of action made from among various alternatives by city policymakers. *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01 (1986) (Brennan, J., plurality). A "policy" need not be written; a pattern or a series of incidents of unconstitutional conduct may be sufficient to show an unwritten municipal policy. *See Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Further, a single act of a sufficiently high-ranking policy-maker may be sufficient to establish a municipality's policy or custom. *Pembaur v. Cincinnati*, 475 U.S. at 480-81, 106 S.Ct. at 1298-99. "Alternatively, conduct may be held to constitute a custom or practice, even though it was never officially approved by the municipality, if it `is so widespread as to have the force of law' * * * or it is `so well-settled and widespread that the policy making officials of the municipality can be said to have actual or constructive knowledge of yet did nothing to end the practice.'" *Casey v. Newport School Committee*, 13 F.Supp.2d 242, 245 (D.R.I. 1998) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997), and *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

Here, plaintiffs' complaint[3] alleges the following:

1. The City moved into the new Providence Public Safety Complex [PPSC] in or around September 2002. Second Amd. Compl. ¶ 49.

2. The City maintained the telephone lines at the PPSC. *Id.* ¶ 50.

3. Some time prior to February 13, 2003, the Defendants (which includes Vieira in his official capacity) installed and maintained at the PPSC, and operated, a telephone system called the "Total Recall" system. *Id.* ¶¶ 45-46.

4. Prior to February 13, 2003, the Total Recall system taped all extensions at the PPSC except 19 identified extensions. *Id.* ¶ 51.

5. At various times prior to February 13, 2003, plaintiffs made telephone calls to or from, or received telephone calls at, the PPSC, but had no knowledge that their calls were recorded by the Total Recall System and did not consent to having their calls recorded. *Id.* ¶ 52-54.

3. In this memorandum, plaintiffs' "complaint" refers to the second amended complaint.

Finally, plaintiffs allege in Count I that the Defendants' actions, including, but not limited to, using, installing, and maintaining the Total Recall system violated plaintiff's Fourth Amendment rights.

These allegations are sufficient to give Prignano and the City fair notice of what the plaintiff's § 1983 claim is and the grounds upon which it rests. Admittedly, the complaint does not use the words "policy," "custom," or "practice," but that is not fatal because the allegations permit the inference of a policy, custom, or practice. *See Jackson v. Marion Count*, 66 F.3d 151 (7th Cir. 1995) (holding that district court erred in dismissing complaint on ground that there was no explicit allegation of a custom or policy; complaint that "charges the municipality * * * with having engaged in improper conduct directly * * * [which] made the county complicit with the officers" adequately states claim); *Burton v. Sheahan*, 68 F.Supp.2d 974, 982-83 (N.D.Ill. 1999) (holding that plaintiff need not explicitly plead the existence of an official custom or policy; "it is sufficient to allege facts from which th[e] court could reasonably conclude that [plaintiff] is entitled to prove facts which, if true, would establish that someone with final policymaking authority * * * made a decision which in turn caused the complained-of deprivation");[4] *see also Roma Constr. Co. v. aRusso*, 96 F.3d 566, 576 (1st Cir. 1996) (reversing dismissal of § 1983 claim where "plaintiffs could indeed prove a set of facts from which a trier of facts could infer an unconstitutional policy or custom"); *Bair v. City of Atlantic City*, 100 F.Supp.2d 262, 268 (D.N.J. 2000) (denying motion to dismiss and stating that whether supervisors were policymaking officials was a detail that could be developed through discovery).

Here, plaintiffs do not allege a one-time occurrence. Rather, they allege that the Total Recall system taped all but 19 telephone extensions at the PPSC after the City moved in until February 13, 2003. Further, they allege that the defendants, including the former and current mayors, the former and current police chiefs, and the communications director, maintained, operated, and used the system. They also allege that the defendants did not obtain their consent to the taping. Plainly, it can be inferred from these allegations that the taping of plaintiffs' calls without their consent was

---

4. The court held that the allegation that the defendant was the Sheriff of Cook County was sufficient for the Court to conclude that plaintiff was entitled to prove a set of facts that would, if true, establish that defendant was a person with final policymaking authority. 68 F.Supp.2d at 981-82.

pursuant to a policy, custom, or practice of the city. On a motion to dismiss, plaintiffs are entitled to all reasonable inferences that may be drawn from the facts alleged. *See Toledo v. Sanchez,* 454 F.3d 24, 30 (1st Cir. 2006) Moreover, the additional facts developed through discovery and supporting plaintiffs' claims, such as that approximately 755,000 calls were recorded over about eight months, that Vieira, as communications director and in response to statements of Prignano, directed a department technician to have all calls recorded, that the RFP that was issued and the bid that was accepted by the City specified a capability of recording 500 stations, and that Vieira and/or Prignano qualify as policymakers, are all facts that are consistent with what is alleged.

Accordingly, plaintiffs' complaint adequately pleads a § 1983 claim against the City and Prignano in her official capacity. The four cases relied upon by Prignano[5] to support his claim that plaintiffs' pleading is insufficient are inapposite. In *Fedor v. Kudrak*, 421 F.Supp.2d 473 (D. Conn. 2006), the court granted the defendant town summary judgment on plaintiff's § 1983 claim. While the plaintiff had alleged "that the town had a policy * * *, he [did] not provide[] th[e] Court with substantial evidence that demonstrates the existence of such a policy." 421 F.Supp.2d at 482. Further, the event out of which the claim arose ) the failure of defendant police officer to act on a complaint by plaintiff against his wife ) was a one-time event. The court, quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), stated: "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." 421 F.Supp.2d at 482. In fact, plaintiff did not even argue that the defendant officer's conduct represented a municipal policy or that he was a policymaker. *Id*. Here, in contrast, plaintiffs complain not about the taping of one call or one individual, but the taping of all calls by anyone calling to or from the PPSC over a period of approximately eight months. Such a wide-ranging and regularly conducted activity permits an inference of policy, custom, or practice. While that plainly distinguishes *Fedor*, the case is in any

5. Prignano's memorandum cites directly only the first two cases discussed below. However, he refers to the memoranda of the City and Lennon as support for his position, and those two memoranda cite two additional cases, which are thus also discussed below.

event wholly inapposite because it involved a failure to submit sufficient evidence on a motion for summary judgment rather than a dismissal for a pleading deficiency.

Similarly, in *Zahra v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995), plaintiff's § 1983 claim was not dismissed on the ground that it was insufficiently pleaded, but on the ground that there was insufficient proof at trial. Moreover, while the court stated in *dicta* that an allegation of a custom or policy is insufficient in the absence of facts tending to support, at least circumstantially, such an inference, it did not hold that an explicit allegation of a custom or policy was required. Here, as discussed above, the plaintiffs did plead sufficient facts to support an inference of custom or policy.

In *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 36 (2d Cir. 1996), the *pro se* plaintiff erroneously named the correctional facility as the defendant rather than the individual correctional officers who had allegedly failed to protect him from other detainees. The court reversed the dismissal of his complaint, remanding so that plaintiff might move to amend to name the individuals. The issue on appeal was not whether plaintiff had adequately pleaded a custom or policy to render the correctional facility liable, since it appears that plaintiff had no intention or grounds to make such an allegation, but was whether he should be allowed to amend his complaint to name as the proper defendants the individual officers allegedly responsible. Thus, *Soto* was not about the proper pleading of a *Monell* claim.

Finally, in *Garrett v. Clarke*, 147 F.3d 745, 747 ((8th Cir. 1998), the court affirmed the dismissal of plaintiff's § 1983 claim against the defendant city because his complaint merely named the city as a defendant without identifying any policy, custom, or practice. The opinion fails to describe the allegations of the complaint or whether there were any facts from which a policy, custom, or practice might have been inferred even if not explicitly pleaded. The opinion does not state that the failure to explicitly allege a policy, custom, or practice is fatal. Moreover, *Garrett*, like *Fedor* above, concerned a one-time event ) an allegedly illegal search ) rather than, as here, a wide-ranging and regularly conducted activity that permits an inference of policy, custom, or practice.

In sum, the allegations of the complaint give Prignano and the City fair notice of what the plaintiffs' § 1983 claim is and the grounds upon which it rests, and it cannot be said that no relief can

be granted under any set of facts that could be proved consistent with the allegations. Accordingly, plaintiffs have adequately pleaded their § 1983 claim against the City and Prignano in his official capacity.[6]

C. There is authority for concluding that Prignano's activities amounted to a constitutional violation for which he is individually liable, regardless of whether a *Monell* claim has been adequately asserted against the City.

The Court's July 27 order asks, "[i]f a Monell claim is not adequately asserted, what authority is there for concluding that the actions of Urbano Prignano, Jr. * * * amounted to a constitutional violation?" Plaintiffs understand this question to be: what authority is there for concluding that the actions of Prignano amounted to a constitutional violation for which he is liable in his individual capacity? Further, plaintiffs do not believe that the answer is at all dependent on whether a *Monell* claim is adequately pleaded since a municipal official may be liable in both his individual and official capacities (i.e., the official is individually liable and the municipality is liable under *Monell*).

Without repeating the review of the evidence set forth in plaintiffs' opening memorandum in opposition to Prignano's motion for summary judgment, there is, in sum, evidence that Vieira created the unconstitutional practice of recording all calls to and from the PPSC at the direction of Prignano and that Prignano had knowledge of and responsibility for the installation of the recording system. Plaintiffs' Mem. at 2-4. Prignano characterizes his action as merely "a wish," and disassociates himself from how the system was later "misused." Prignano Mem. at 8. However, a jury could reject these self-serving characterizations and conclude that Prignano's direction to Vieira was more than a wish and that the system was installed and used exactly as intended.

As explained in Section A above, the recording of plaintiffs' calls without their consent violated their clearly established Fourth Amendment rights. And, as also explained above, Prignano's direction to Vieira to create that recording practice is a sufficient act on which to impose liability. Prignano, having commanded and procured the unconstitutional recording of plaintiffs calls

---

6. While Prignano contests in his summary judgment motion whether there is evidence that he installed, maintained, or operated the Total Recall system, as alleged by plaintiffs, that evidentiary question is irrelevant to whether plaintiffs have adequately pleaded their § 1983 claim.

is as responsible for the violation as if he had committed the recording directly. *Nye & Nissen v. United States*, 336 U.S. at 618, 69 S.Ct. at 769; *see also* 18 U.S.C. § 2511 (1)(a) (making it unlawful to "procure[] any other person" to intercept a communication in violation of the act).

Accordingly, there is both evidence and case law for concluding that Prignano's activities amounted to a constitutional violation for which he is individually liable.

D. Whether Prignano was acting within the scope of his authority presents a genuine issue of material fact, precluding summary judgment.

The third issue the Court asked to be addressed is "[w]hat evidence is there that any of the individual Defendants acted outside the scope of their authority?" Plaintiffs presume that the Court raises this question in regard to the affirmative defense of qualified immunity: "In a federal civil rights suit, a government official is entitled to qualified immunity for discretionary acts undertaken within the scope of his authority." *Collins v. Marina-Martinez*, 894 F.2d 474, 476 (1st Cir. 1990); *see also Knight v. Mills*, 836 F.2d 659, 665 (1st Cir. 1987).

Prignano's asserts that the statements he allegedly made to Vieira falls short of being an action outside the scope of his authority. Prignano Mem. at 9. As noted above, Prignano provides neither legal nor evidentiary support for this proposition. Moreover, as also pointed out above, there is evidence from which a jury could conclude that Prignano was not acting within the scope of his authority when he directed Vieira to create the practice of recording all calls. *See* text *supra* at 2-3.

Accordingly, there is a genuine issue of material fact whether Prignano was acting within the scope of her authority.

E. Plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against Prignano.

Prignano next makes two arguments: (1) that plaintiffs cannot pursue their § 1983 claim for violation of their constitutional rights, but are limited to pursuing their other statutory claims,[7] and (2) that plaintiffs cannot pursue both their claim under the federal wiretap act and their claim under the state wiretap act. Both arguments should be rejected.

1. Plaintiffs may pursue both their § 1983 claim and their other statutory claims.

Prignano argues that plaintiffs cannot pursue their § 1983 claim and also their other statutory claims. None of the three cases he cites supports his argument. *Ashwander v. Tennessee Valley*

7. This memorandum follows the Court's practice of using the term "the statutory claims" to refer to plaintiffs' claims under 18 U.S.C. § 2511, R.I. GEN. LAWS § 9-1-28.1(a)(1), R.I. GEN. LAWS § 11-35-21, and R.I. GEN. LAWS § 12-5.1-1.

*Authority*, 297 U.S. 288, 347 (1936), stands for the general principle that courts should avoid constitutional questions when there is some other basis upon which a matter may be resolved. That case, however, neither on the issues before it nor in *dicta*, said anything that would preclude a plaintiff from *bringing* a constitutional claim on the ground that eventually the case might be disposed of on some other basis.

*Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353 (1997), also offers no support for Prignano's argument because that case involved a § 1983 claim based on a violation of a statutory right, not a violation based on a constitutional right. The Court simply held that where a statute creating a federal right provides a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983, then enforcement of the statutory right may not be had through a § 1983 claim. 520 U.S. at 341, 346-49, 117 S.Ct. at 1360, 1362-63 (holding that enforcement scheme "not comprehensive enough to close the door on § 1983 liability).

Finally, *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001), does not support Prignano's argument because the court did not hold that a plaintiff could not simultaneously pursue both a § 1983 claim and a claim under the federal wiretap act. *Adams* was an appeal by the plaintiff from a grant of summary judgment to defendants on his claims under the federal wiretap act and § 1983. *See* 250 F.3d at 989 (Krupansky, J. dissenting) (relating claims made and district court disposition). The court held that the district court erred in granting summary judgment to defendants under the federal wiretap act and, without addressing the constitutional issues raised by the § 1983 claim, reversed the grant of summary judgment on both claims. The court chose not to resolve the constitutional issues presented by the § 1983 claim since it had reversed on the wiretap claim and plaintiffs case would go forward regardless of whether it upheld or reversed the grant of summary judgment on the § 1983 (constitutional) claim. Thus, it applied the rule that courts should avoid the unnecessary adjudication of constitutional issues. It therefore concluded: "[W]e do not reach any question of interpretation under the Fourth Amendment. All such constitutional issues are pretermitted."[8] 250 F.3d at 986. If the court had intended to hold that plaintiff was precluded from

8. "Pretermit" means "to disregard intentionally or allow to pass unnoticed or unmentioned." (continued...)

simultaneously pursuing his wiretap claim and his § 1983 claim, it would not have reversed the grant of summary judgment on the § 1983 claim once it reversed and remanded on the wiretap claim. Accordingly, *Adams* did not hold, and this Court should not hold, that plaintiffs are precluded from pursuing both their § 1983 claims and their statutory claims.[9]

None of the cases cited by Prignano, nor, apparently, any other case, holds that a constitutional claim under § 1983 is precluded by the assertion of a claim under the federal wiretap act. However, at least two courts have expressly stated that a plaintiff may assert both a claim based on the federal wiretap act and a § 1983 claim based on the Fourth Amendment. In *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808 (D.N.J. 1993), the court rejected an argument that the federal wiretap act precluded a claim under § 1983 alleging a constitutional violation:

> The fundamental flaw in defendant's argument is that the doctrine * * * pertains only to claims brought under § 1983 to enforce rights created by congressional statutes. [Citation omitted.] Here, however, plaintiffs' § 1983 claim relates to rights which exist under the Constitution itself. Defendants' argument * * * is simply inapt.

832 F.Supp. at 825. In *Kinoy v. Mitchell*, 331 F.Supp. 379 (S.D.N.Y. 1971), the district court stated: "If defendants have in fact conducted unauthorized or illegal electronic surveillance in violation of plaintiffs' rights under the fourth amendment, a cause of action exists both under 18 U.S.C. § 2520 and under the fourth amendment." 331 F.Supp. at 382. Moreover, there are many cases in which plaintiffs have asserted claims under both the federal wiretap act and § 1983 with no suggestion by the court of any impropriety in doing so. *See, e.g.*, *Wright v. Florida*, 495 F.2d 1086, 1087 (5th Cir. 1974) (holding that "there are two causes of action which plaintiff should have been allowed to prove at a hearing on the merits": a § 1983 claim alleging a violation of the Fourth Amendment and a claim under 18 U.S.C. § 2520).

Accordingly, this Court should reject Prignano's argument that plaintiffs may not pursue their § 1983 claim alleging a violation of the Fourth Amendment and their other statutory claims.

---

8. (...continued)
THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

9. Even if this Court were to read *Adams* as Prignano does, it offers no authority for precluding plaintiffs from simultaneously pursuing their state law claims and their federal constitutional claim under § 1983.

2. Plaintiffs may pursue both their federal and state wiretap claims.

Prignano's claim that plaintiffs cannot simultaneously pursue both their claims under the federal wiretap act and their claims under the state wiretap act rests on one case: *Whitaker v. Garcetti*, 291 F.Supp.2d 1132 (C.D. Cal. 2003). There, the district court did state that California's wiretap act was applicable rather than the federal act:

> Because the Defendants are local rather than federal officials and municipalities, and because the two wiretapping statutes regulate the same sphere of conduct, the operative directive in our case is the California Wiretapping Statute and not the Federal Wiretapping Statute, unless of course, the federal statute preempts that of the state. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n*, 461 U.S. 190, 212-13, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18, 10 L. Ed. 2d 248 (1963).

291 F.Supp.2d at 1141. *Whitaker* deserves no weight because the court's ruling was not appealed, no other court has cited *Whitaker* for that proposition, there appears to be no other case reaching the same conclusion, and, most importantly, an analysis of the opinion reveals no persuasive logic to its conclusion. Its "logic" seems to be that since the federal wiretap act does not preempt the state wiretap act, the state wiretap act, *and only the state wiretap act*, applies.[10] While the conclusion that the state wiretap act applied and had not been preempted was proper, the conclusion that *only* the state wiretap act applied ) a "reverse preemption" in effect ) has no basis in any accepted legal doctrine and is unsupported by the two cases *Whitaker* cited: *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n* and *Florida Lime & Avocado Growers, Inc. v. Paul*.

10. Although the court stated that "Defendants were only bound by California's Wiretapping Statute," it explained in a footnote that this did not mean "that Defendants can freely violate the federal statute." 291 F.Supp.2d at 1142 and 1142 n.18. The court attempted to make sense of the apparent contradiction that defendants were not bound by the federal statute and yet were not free to violate it by asserting that "[v]iolations of the California statute would necessarily imply violations of the federal version, due to the latter's less stringent standards." That assertion is patently nonsensical. If the federal act is less stringent than the state act, then a violation of *the federal act* would necessarily imply a violation of *the more stringent state act*. However, a violation of the state act might *not* imply a violation of the less stringent federal act. If the federal act is "less stringent" (or, equivalently, the state statute is "more stringent"), then certain activities prohibited by the state act must be allowed by the federal act. In the case of such an activity, then, the violation of the state statute does not necessarily imply a violation of the federal statute.

*Pacific Gas & Electric* concerned federal pre-emption of the field of nuclear safety. The Court did not hold that a state statute applied to the exclusion of a federal statute, only that the state statute at issue was outside the scope of federal pre-emption. Likewise, *Florida Lime & Avocado Growers* concerned whether a California statute regulating the minimum oil content of avocados sold in the state was preempted by a federal marketing order. The court concluded that the state statute was valid under the Supremacy Clause because it was not impossible to comply with both the federal marketing order, which set minimum standards, and the state statute. As in *Pacific Gas & Electric*, the court did not hold that the state statute applied to the exclusion of the federal mandate. Accordingly, there is nothing in either *Pacific Gas & Electric* or *Florida Lime & Avocado Growers* which supports the district court's view in *Whitaker v. Garcetti* that the defendants were bound only by California's wiretapping statute.

Not only is *Whitaker* completely unpersuasive, its conclusion is inconsistent with practice in the First Circuit. In *Williams v. Poulos*, 11 F.3d 271 (1st Cir. 1993), the court affirmed a judgment that the defendants had violated both the federal and Maine anti-wiretap statutes. There was no suggestion in the district court or in the court of appeals that plaintiff was precluded from proceeding under both statutes.[11]

Accordingly, plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against Prignano, including their claims under both the federal and state wiretap acts.

F. Prignano may be held liable the statutory claims asserted against him.

Prignano begins this section of his memorandum with, essentially, a repeat of his earlier argument that he may not be held liable for a "wish" that the best recording system available be obtained for the PPSC. As shown above, though, Prignano did more than "wish." According to statements by Vieira, it was Prignano who told him to create the practice of recording all lines at the

11. There may be an issue whether plaintiffs can recover damages under both acts for the same conduct, but that is a separate (and, at this stage, moot) issue from whether the plaintiffs may allege and prove violations of both acts.

PPSC. As noted above, direction to do an act, when followed, is enough to impose liability. *Nye & Nissen v. United States*, 336 U.S. at 618, 69 S.Ct. at 769

Prignano's final argument is that all of the conduct ascribed to him occurred while he was acting within the course and scope of his employment and that therefore he cannot be held liable for any injuries caused thereby. Prignano Mem. at 11. Prignano fails to assert any authority for that proposition. The lack of citation to any authority is understandable since the proposition is antithetical to accepted principles of agency law.

It is well established under general principles of agency law that an employee may be held individually liable to a third party for actions taken in the course of employment where the employee breaches a duty owed to the third party independent of the agency relationship. *See* RESTATEMENT (THIRD) OF AGENCY §§ 7.01[12] and 7.02[13] (2006).

All of the individual defendants, including Prignano, were employees, i.e., agents, of the city of Providence at the time that they committed the acts which give rise to the claims against them in their individual capacities. An agent of a disclosed principal (e.g., a city employee) may be held individually liable to a third party "for acts within the scope of a duty that is otherwise independent of the agency relationship." *Kennett v. Marquis*, 798 A.2d 416, 419 (2002). Thus, in *Forte Brothers, Inc. v. National Amusements, Inc.*, 525 A.2d 1301 (R.I. 1987), Justice Kelleher noted the "well-settled general principle that holds that a person who acts as an acknowledged agent for a disclosed principal is independently liable for his own acts of negligence, despite the fact that these acts are committed in course and scope of the agency and in furtherance of the disclosed principal's business." 525 A.2d at 1304 (Kelleher, J., concurring); *see also Gray v. Wood*, 75 R.I. 123, 130, 64

---

12. § 7.01 ("Agent's Liability to Third Party") provides in full:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.

13. § 7.02 ("Duty to Principal; Duty to Third Party") provides in full:

> An agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.

A.2d 191, 194 (1949) ("we recognize the right to sue a public officer for a personal act of misfeasance committed peculiarly against another even though it occurred in the discharge of his public functions").

Here, each of the statutes relied upon by plaintiffs establishes a duty that is independent of the agency relationship. *See* RESTATEMENT (THIRD) OF AGENCY § 7.01, comment *c* (2006).[14] That is, the individual defendants owed to plaintiffs a duty ) a statutory duty ) not to wiretap unlawfully their telephone calls and not to invade their privacy. Their duty not to violate those statutes was independent of the defendants' status as employees/agents of the city. This is not a case where the employee's only duties arose out of the employment relationship. *See, e.g.*, *Kennett v. Marquis*, 798 A.2d at 419 (granting summary judgment to agent where no evidence that agent "violated an independent duty by misrepresenting material information"); *Alterio v. Biltmore Constr. Corp.*, 119 R.I. 307, 377 A.2d 237 (1977) (vacating judgment against president of corporation where plaintiff's claim against corporation was for breach of contract).

Accordingly, Prignano (and the other individual defendants) may be held liable on the statutory claims asserted against them in their individual capacities even if they acted only in the course of their employment with the City.

## CONCLUSION

For the reasons set forth above and in plaintiffs' opening memorandum, Prignano's motion for summary judgment should be denied in its entirety.

By their attorneys,

**MURPHY & FAY, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903

14. § 7.01 comment *c* ("*Constitutions, statutes, regulations, and ordinances*."), provides in relevant part:

> When an agent's conduct violates a * * * statute * * *, the agent is subject to liability although the agent acted at the principal's direction or to further the principal's interests, unless the imposition of liability is inconsistent with the * * * statute * * *.

Tel : (401) 490-3200
Fax: (401) 490-3207

/s/ *Mark A. Fay*
Mark A. Fay # 4208
*mark@murphyandfay.com*

## CERTIFICATIONS

On October 23, 2006, I caused a true copy of the foregoing document to be filed electronically; it is available for viewing and downloading from the ECF system. Counsel for all parties to the action, listed below, have been served electronically through the ECF system.

/s/ *Mark A. Fay*

**Michael A. Calise, Esq.**

**Susan M. Carlin, Esq.**

**Thomas J. Cronin, Esq.**

**Stephen R. Famiglietti, Esq.**

**Kevin J. McAllister, Esq.**

**Kevin F. McHugh, Esq.**

**Dean G. Robinson, Esq.**

**George L. Santopietro, Esq.**

**George J. West, Esq.**

**Richard B. Woolley, Esq.**

# SUPPLEMENTAL APPENDIX


| Item | Page |
|---|---|
| Deposition of Andrew Rosenzweig | 1-2 |
| Deposition of Manuel Vieira | 3-6 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS WALDEN, et als.
vs. C.A. No. 2004-304S
URBANO PRIGNANO, JR., et als.

THOMAS C. CHMURA, et als.
vs. C.A. No. 2004-553S
URBANO PRIGNANO, JR., et als.

DEPOSITION OF ANDREW ROSENZWEIG, a Witness in the above-entitled case, taken on behalf of the Plaintiffs, before Linda L. Guglielmo, RPR-RMR, a Notary Public in and for the State of Rhode Island, at the offices of the Murphy & Fay, LLP, 127 Dorrance Street, Providence, Rhode Island on May 9, 2006 at 3:00 P.M.

ALSO PRESENT: Manuel Vieira, Urbano Prignano

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920
(401) 946-5500

Q. And the public -- head of the public safety department, so to speak, in Providence, who would that have been?

THE WITNESS: While I was employed?

MS. CARLIN: Yes.

A. Well, it was Mayor Cicilline, he acted as the public safety commissioner in the absence of a public safety commissioner.

Q. So the title would be the title of public safety commissioner?

A. Yes.

Q. Who were the people that were directly responsible to him or the next rung below him?

A. Colonel Esserman in the Providence PD and Chief Rattigan, fire department and emergency services.

Q. That was all part of the fire department?

A. No, I think they were separate.

Q. What about Communications, how did that fall into the line of command?

A. Communications was a separate entity. They also reported to public safety.

Q. All right. Did Communications report to the Chief of Police?

A. No.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS WALDEN, et als.

vs. C.A. No. 2004-304S

URBANO PRIGNANO, JR., et als.

---

THOMAS C. CHMURA, et als.

vs. C.A. No. 2004-553S

URBANO PRIGNANO, JR., et als.

DEPOSITION OF MANUEL VIEIRA, a Defendant in the above-entitled case, taken on behalf of the Plaintiffs, before Linda L. Guglielmo, RPR-RMR, a Notary Public in and for the State of Rhode Island, at the offices of the Providence City Solicitor, 275 Westminster Street, Providence, Rhode Island on March 23, 2006 at 2:00 P.M.

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920
(401) 946-5500

A. Just what I read in the newspaper articles.
Q. What did you read in the newspaper articles?
A. They were all recorded in and out, something to that effect.
Q. You deny you had any knowledge about that?
A. I had no knowledge of that, no, sir.
Q. Let me ask you this, as director of the communications department, if you had known that the Total Recall system as installed was going to be recording all those lines, recording over 754,000 phone calls within the Public Safety Complex, would you have allowed it to be installed and operating?
MR. SANTOPIETRO: Objection.
MR. McHUGH: Objection.
MR. ROBINSON: Objection.
MR. CRONIN: Objection.
MR. CALISE: Objection.
MR. WEST: Objection.
MS. CARLIN: Objection. Calls for speculation.
A. Of course now.
Q. Why not?
A. You just don't record lines unless they're emergency lines. I've been in the business for

don't know.

Q. Do you know who ordered the removal of the Total Recall system?

A. From what I understand, it was Esserman.

Q. Do you know why the Total Recall system was removed?

A. I have no idea. I don't know what he had in his mind or why he removed it.

Q. Based upon your testimony, from your knowledge of your position of being director of communications for ten years, you've already testified that if in fact the Total Recall system was installed that was recording all these lines, it shouldn't have been, correct?

MR. SANTOPIETRO: Form.

A. It shouldn't have been.

Q. It would have been, if it was installed and recording all these lines, it was in violation of the policies, procedures and regulations that you were aware of, correct?

MR. SANTOPIETRO: Objection.

MR. McHUGH: Objection.

MR. ROBINSON: Objection.

MR. WEST: Objection.

MS. CARLIN: Objection.

A. Yes.

Q. Isn't it also true that if the system had been installed and was recording all these lines, it would not be put in and used in the ordinary course of business of the communications department or the City of Providence?

MR. SANTOPIETRO: Objection.

MR. McHUGH: Objection.

MR. ROBINSON: Objection.

MR. WEST: Objection.

MS. CARLIN: Objection. Calls for a legal conclusion.

A. I would agree with that.

Q. If you had known the Total Recall system was recording all those lines and assessing those 750,000 phone conversations in the computer banks while you were director of communications, would you have shut the system down?

MR. SANTOPIETRO: Objection.

MR. McHUGH: Objection.

MR. ROBINSON: Objection.

MR. WEST: Objection.

MS. CARLIN: Objection. Speculation.

A. I would have seeked legal advice and I would have shut it down, yes.