UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | : | Case No. 04-553S |

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF PLAINTIFFS' OBJECTION TO MANUEL
VIEIRA'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This supplemental memorandum responds to the supplemental memorandum of law submitted by Manuel Vieira in support of his motion for summary judgment and addresses the questions set forth in the Order of this Court dated July 27, 2006.

## ARGUMENT

A. Plaintiffs' complaint sufficiently pleads a § 1983 claim against Vieira in his official capacity.

A § 1983 claim against a municipal official in his or her official capacity is, in essence, a claim against the municipality. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 885 (1985) ("a judgment against a public servant `in his official capacity' imposes liability on the entity that he represents"); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 705 (1st Cir. 1993) ("An official capacity suit is, in reality, a suit against the government entity, not against the governmental actor."). A complaint against a municipal official in his or her official capacity must therefore allege not only that the official violated plaintiff's statutory or constitutional rights but also show a basis for imposing liability on the municipality. Something more than the employment relationship between the official and the municipality must be shown since a municipality cannot be held liable for an

employee's acts solely on the basis of *respondeat superior*. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor"). Rather, a municipality bears liability for an employee's acts "when execution of a [municipality]'s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694, 98 S.Ct. at 2037-38. Thus, the plaintiff's injury must result from "either an officially sanctioned policy or from a custom or practice that is `so well-settled and widespread that the policymaking officials * * * can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 65 (1st Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." That statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define any disputed facts and issues and to dispose of unmeritorious claims." *Id.* The Supreme Court has specifically rejected a "heightened pleading standard" for § 1983 claims. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 1163 (1993). Moreover, the Court noted in *Swierkiewicz v. Sorema, N.A.*, that in light of the notice pleading standard of Rule 8(a) and Rule 8(f)'s requirement that "[a]ll pleadings shall be so construed as to do substantial justice," a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. 534 U.S. at 514, 122 S.Ct. at 998.

A policy for which municipal liability may attach is a deliberate choice to follow a course of action made from among various alternatives by city policymakers. *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01 (1986) (Brennan, J., plurality). A "policy" need not be written; a pattern or a series of incidents of unconstitutional conduct may be sufficient to show an unwritten municipal policy. *See Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Further, a single act of a sufficiently high-ranking policy-maker may be sufficient to establish a municipality's policy or custom. *Pembaur v. Cincinnati*, 475 U.S. at 480-81, 106 S.Ct. at 1298-99.

"Alternatively, conduct may be held to constitute a custom or practice, even though it was never officially approved by the municipality, if it `is so widespread as to have the force of law' * * * or it is `so well-settled and widespread that the policy making officials of the municipality can be said to have actual or constructive knowledge of yet did nothing to end the practice.'" *Casey v. Newport School Committee*, 13 F.Supp.2d 242, 245 (D.R.I. 1998) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997), and *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

Here, plaintiffs' complaint[1] alleges the following:

1. The City moved into the new Providence Public Safety Complex [PPSC] in or around September 2002. Second Amd. Compl. ¶ 49.

2. The City maintained the telephone lines at the PPSC. *Id.* ¶ 50.

3. Some time prior to February 13, 2003, the Defendants (which includes Vieira in his official capacity) installed and maintained at the PPSC, and operated, a telephone system called the "Total Recall" system. *Id.* ¶¶ 45-46.

4. Prior to February 13, 2003, the Total Recall system taped all extensions at the PPSC except 19 identified extensions. *Id.* ¶ 51.

5. At various times prior to February 13, 2003, plaintiffs made telephone calls to or from, or received telephone calls at, the PPSC, but had no knowledge that their calls were recorded by the Total Recall System and did not consent to having their calls recorded. *Id.* ¶ 52-54.

Finally, plaintiffs allege in Count I that the Defendants' actions, including, but not limited to, using, installing, and maintaining the Total Recall system violated plaintiff's Fourth Amendment rights.

These allegations are sufficient to give Vieira and the City fair notice of what the plaintiff's § 1983 claim is and the grounds upon which it rests. Admittedly, the complaint does not use the words "policy," "custom," or "practice," but that is not fatal because the allegations permit the inference of a policy, custom, or practice. *See Jackson v. Marion Count*, 66 F.3d 151 (7th Cir. 1995) (holding that district court erred in dismissing complaint on ground that there was no explicit allegation of a custom or policy; complaint that "charges the municipality * * * with having engaged in improper conduct directly * * * [which] made the county complicit with the officers" adequately states claim); *Burton v. Sheahan*, 68 F.Supp.2d 974, 982-83 (N.D.Ill. 1999) (holding that plaintiff

1. In this memorandum, plaintiffs' "complaint" refers to the second amended complaint.

need not explicitly plead the existence of an official custom or policy; "it is sufficient to allege facts from which th[e] court could reasonably conclude that [plaintiff] is entitled to prove facts which, if true, would establish that someone with final policymaking authority * * * made a decision which in turn caused the complained-of deprivation");[2] *see also Roma Constr. Co. v. aRusso*, 96 F.3d 566, 576 (1st Cir. 1996) (reversing dismissal of § 1983 claim where "plaintiffs could indeed prove a set of facts from which a trier of facts could infer an unconstitutional policy or custom"); *Bair v. City of Atlantic City*, 100 F.Supp.2d 262, 268 (D.N.J. 2000) (denying motion to dismiss and stating that whether supervisors were policymaking officials was a detail that could be developed through discovery).

Here, plaintiffs do not allege a one-time occurrence. Rather, they allege that the Total Recall system taped all but 19 telephone extensions at the PPSC after the City moved into the PPSC until February 13, 2003. Further, they allege that the defendants, including the former and current mayors, the former and current police chiefs, and the communications director, maintained, operated, and used the system. They also allege that the defendants did not obtain their consent to the taping. Plainly, it can be inferred from these allegations that the taping of plaintiffs' calls without their consent was pursuant to a policy, custom, or practice of the city. On a motion to dismiss, plaintiffs are entitled to all reasonable inferences that may be drawn from the facts alleged. *See Toledo v. Sanchez*, 454 F.3d 24, 30 (1st Cir. 2006) Moreover, the additional facts developed through discovery and supporting plaintiffs' claims, such as that approximately 755,000 calls were recorded over about eight months, that Vieira, as communications director and in response to statements of Prignano, directed a department technician to have all calls recorded, that the RFP that was issued and the bid that was accepted by the City specified a capability of recording 500 stations, and that Vieira and/or Prignano qualify as policymakers, are all facts that are consistent with what is alleged.

Accordingly, plaintiffs' complaint adequately pleads a § 1983 claim against the City and Vieira in his official capacity. The two cases relied upon by Vieira to support his claim that

---

2. The court held that the allegation that the defendant was the Sheriff of Cook County was sufficient for the Court to conclude that plaintiff was entitled to prove a set of facts that would, if true, establish that defendant was a person with final policymaking authority. 68 F.Supp.2d at 981-82.

plaintiffs' pleading is insufficient are inapposite. In *Fedor v. Kudrak*, 421 F.Supp.2d 473 (D. Conn. 2006), the court granted the defendant town summary judgment on plaintiff's § 1983 claim. While the plaintiff had alleged "that the town had a policy * * *, he [did] not provide[] th[e] Court with substantial evidence that demonstrates the existence of such a policy." 421 F.Supp.2d at 482. Further, the event out of which the claim arose ) the failure of defendant police officer to act on a complaint by plaintiff against his wife ) was a one-time event. The court, quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), stated: "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." 421 F.Supp.2d at 482. In fact, plaintiff did not even argue that the defendant officer's conduct represented a municipal policy or that he was a policymaker. *Id*. Here, in contrast, plaintiffs complain not about the taping of one call or one individual, but the taping of all calls by anyone calling to or from the PPSC over a period of approximately eight months. Such a wide-ranging and regularly conducted activity permits an inference of policy, custom, or practice. While that plainly distinguishes *Fedor*, the case is in any event wholly inapposite because it involved a failure to submit sufficient evidence on a motion for summary judgment rather than a dismissal for a pleading deficiency.

Similarly, in *Zahra v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995), plaintiff's § 1983 claim was not dismissed on the ground that it was insufficiently pleaded, but on the ground that there was insufficient proof at trial. Moreover, while the court stated in *dicta* that an allegation of a custom or policy is insufficient in the absence of facts tending to support, at least circumstantially, such an inference, it did not hold that an explicit allegation of a custom or policy was required. Here, as discussed above, the plaintiffs did plead sufficient facts to support an inference of custom or policy.

In sum, the allegations of the complaint give Vieira and the City fair notice of what the plaintiffs' § 1983 claim is and the grounds upon which it rests, and it cannot be said that no relief can be granted under any set of facts that could be proved consistent with the allegations. Accordingly,

plaintiffs have adequately pleaded their § 1983 claim against the City and Vieira in his official capacity.[3]

B. There is authority for concluding that Vieira's activities amounted to a constitutional violation for which he is individually liable, regardless of whether a *Monell* claim has been adequately asserted against the City.

The Court's July 27 order asks, "[i]f a Monell claim is not adequately asserted, what authority is there for concluding that the actions of * * * Manuel Vieira * * * amounted to a constitutional violation?" Plaintiffs understand this question to be: what authority is there for concluding that the actions of Vieira amounted to a constitutional violation for which he is liable in his individual capacity? Further, plaintiffs do not believe that the answer is at all dependent on whether a *Monell* claim is adequately pleaded since a municipal official may be liable in both his individual and official capacities (i.e., the official is individually liable and the municipality is liable under *Monell*).

Without repeating the detailed review of the evidence set forth in plaintiffs' opening memorandum in opposition to Vieira's motion for summary judgment, there is, in sum, evidence that: (1) Vieira, as Director of the communications department instructed Desmarais, a department technician, to prepare an RFP for a system that would record all lines; (2) the RFP Desmarais prepared included a 500-station recording system; (3) the system was installed and operated at Vieira's direction so as to record essentially all calls to and from the PPSC; (4) Vieira knew in July of 2002 that the system was installed and recording all calls as he had directed, except for lines that he directed to be removed; (5) no line contained a warning tone or message alerting callers that the line was being recorded; (6) Vieira never sought the consent of any of the plaintiffs with regard to the recording of their calls; and (8) Vieira acknowledged after the existence of the system became public in February 2002 that "[y]ou just don't record lines unless they're emergency lines."

Case law recognizes that unauthorized and secretive recording of telephone conversations may violate the Fourth Amendment. *See, e.g., In re State Police Litigation*, 888 F.Supp. 1235 (D.

---

3. While Vieira contests in his summary judgment motion whether there is evidence that he installed, maintained, or operated the Total Recall system, as alleged by plaintiffs, that evidentiary question is irrelevant to whether plaintiffs have adequately pleaded their § 1983 claim.

Conn. 1995). There, the court denied summary judgment with regard to § 1983 claims premised on Fourth Amendment violations by the recording of phone calls at a state police barracks. 888 F.Supp. at 1256. The court found both that there was evidence that the plaintiffs had a subjective expectation that their telephone calls were private, and that the determination whether that subjective expectation was reasonable depended "on proof of the absence of notice, a question of fact precluding summary judgment." *Id.*; *see also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 825-29 (D.N.J. 1993) (denying summary judgment on § 1983 claims based on constitutional violations, including the Fourth Amendment). The court observed that the "surreptitious recording of unprivileged but private calls * * * involves an invasion of privacy that far outweighs defendants' proffered justifications" for the recordings. *Id*. (citing *Bell v. Wolfish,* 441 U.S. 520, 558, 99 S.Ct. 1861 (1979)). Here, Vieira has not proffered any justification for the recording of lines that are not either emergency lines or lines used by the police for complaints. While there may have been a legitimate justification for recording emergency and police-complaint lines, that justification would not permit the wholesale recording of every line in the PPSC. *See Abraham v. County of Greenville*, 237 F.3d 386, 390 (4th Cir. 2001) (holding that the "law enforcement" exception in federal wiretap act does not permit "law enforcement agencies [to] record all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officers' duties," otherwise the exception would swallow the rule). Indeed, as noted above, Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Further, it is undisputed that the recording was surreptitious: there was no indication by a beeping tone, initial message, or other means that the call was being recorded. Finally, there is no evidence that (or, at most, there is a genuine issue of material fact whether) plaintiffs had actual notice or knowledge of the recording.

While Vieira may not have personally installed or programmed the Total Recall system, his direct participation in the acquisition of the system and his directions to Desmarais that it record all lines is more than sufficient to hold him liable for the violations that ensued. *See Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766 (1949) (stating that the theory that one "who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly" is "well engrained in the law"); RESTATEMENT (SECOND) OF TORTS §

876(b) (1977) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he * * * knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other * * *.").

Accordingly, there is both evidence and case law for concluding that Vieira's activities amounted to a constitutional violation for which he is individually liable.

C. Whether Vieira was acting within the scope of his authority presents a genuine issue of material fact, precluding summary judgment.

The third issue the Court asked to be addressed is "[w]hat evidence is there that any of the individual Defendants acted outside the scope of their authority?" Plaintiffs presume that the Court raises this question in regard to the affirmative defense of qualified immunity: "In a federal civil rights suit, a government official is entitled to qualified immunity for discretionary acts undertaken within the scope of his authority." *Collins v. Marina-Martinez*, 894 F.2d 474, 476 (1st Cir. 1990); *see also Knight v. Mills*, 836 F.2d 659, 665 (1st Cir. 1987).[4]

Vieira's supplemental memorandum addressing the Court's July 27 order asserts, as also advanced in his initial memorandum, that "there is no evidence that he acted outside the scope of his position." In addition, Vieira asserts, irrelevantly, that "a suit against an official in his official capacity is not an action against the official, but rather is a suit against the official's office." Then, citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, (1989), Vieira asserts that an official acting in his official capacity is not a "person" under § 1983. As pointed out in plaintiff's initial memorandum, while a *state* official sued for monetary damages in his official capacity is not a "person," a *municipal* official sued in his official capacity is a "person." Plaintiff's Mem. at 9 (citing *Monell*). In addition to repeating his misconception of *Will*, Vieira also seems not to recognize the difference between whether an official *acted* within his official capacity (i.e., acting

4. "To benefit from qualified immunity, a government official must make a threshold showing that his actions were undertaken pursuant to performance of his duties within the scope of his authority." *Akins v. Fulton County*, 420 F.3d 1293, 1299 (11th Cir. 2005). Thus, it is Vieira's burden to "prove that he acted within the scope of his discretionary authority when the challenged conduct occurred." *Conner v. Tate*, 130 F.Supp.2d 1370, 1378 (N.D. Ga. 2001) (holding that defendants were not entitled to the defense of qualified immunity where they did not establish that their actions were in the performance of their duties and within the scope of their authority).

within the scope of his authority) and whether the official has been *sued* in his official (or individual) capacity. An official may be sued in his individual capacity, his official capacity, or both, for actions taken by the official within the scope of his authority. Vieira seems to assume, wrongly, that he can be sued in his individual capacity only for actions that are outside the scope of his authority. Vieira cites no authority for that proposition, and it has been squarely rejected by the Supreme Court.[5] In *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358 (1991), the Court rejected the proposition that the defendant could "not be held personally liable under § 1983 * * * because she `acted' in her official capacity." 502 U.S. at 26, 112 S.Ct. at 362. The Court stated that it found defendant's contention that "state officials may not be held liable in their personal capacity for actions they take in their official capacity" to be "both unpersuasive as an interpretation of § 1983 and foreclosed by our prior decisions." *Id*. at 27, 112 S.Ct. at 363.

In any event, the factual determination whether Vieira was acting within the scope of his authority cannot be determined on summary judgment from the evidence in the record. Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Vieira depo. at 85; A. 36. Further, he testified that the recording of all lines in the PPSC would be in violation of the city's policies and procedures, and would not be in the ordinary course of business of the communications department. *Id*. at 149, 155-56; A. 39, 41-42. If a jury were to credit those aspects of Vieira's testimony) that the recording was in violation of official city policy and was not conducted in the ordinary course of the department's business) then the jury could conclude that in directing the recording Vieira was not acting within the scope of his authority.

Accordingly, there is a genuine issue of material fact whether Vieira was acting within the scope of his authority.

D. <u>Plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against Vieira</u>.

---

5. A finding that Vieira acted outside the scope of his authority might be sufficient to defeat the claim against him in his official capacity, since an act outside the scope of his authority would not likely be pursuant to or constitute a policy, custom, or practice of the municipality. In any event, Vieira asserts that there is no evidence that he acted outside the scope of his authority.

Vieira next makes two arguments: (1) that plaintiffs cannot pursue their § 1983 claim for violation of their constitutional rights, but are limited to pursuing their other statutory claims,[6] and (2) that plaintiffs cannot pursue both their claim under the federal wiretap act and their claim under the state wiretap act. Both arguments should be rejected.

1. Plaintiffs may pursue both their § 1983 claim and their other statutory claims.

Vieira argues that plaintiffs cannot pursue their § 1983 claim and also their other statutory claims. The only authority he cites for this contention is *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001). No other court has cited the opinion in *Adams* for the proposition upon which Vieira relies. In fact, a closer reading of the *Adams* opinion than Vieira gives it reveals that the court did not hold that a plaintiff could not simultaneously pursue both a § 1983 claim and a claim under the federal wiretap act.

*Adams* was an appeal by the plaintiff from a grant of summary judgment to defendants on his claims under the federal wiretap act and § 1983. *See* 250 F.3d at 989 (Krupansky, J. dissenting) (relating claims made and district court disposition). The court held that the district court erred in granting summary judgment to defendants under the federal wiretap act and, without addressing the constitutional issues raised by the § 1983 claim, reversed the grant of summary judgment on both claims. The court chose not to resolve the constitutional issues presented by the § 1983 claim since it had reversed on the wiretap claim and plaintiffs case would go forward regardless of whether it upheld or reversed the grant of summary judgment on the § 1983 (constitutional) claim. Thus, it applied the rule that courts should avoid the unnecessary adjudication of constitutional issues. It therefore concluded: "[W]e do not reach any question of interpretation under the Fourth Amendment. All such constitutional issues are pretermitted."[7] 250 F.3d at 986. If the court had intended to hold that plaintiff was precluded from simultaneously pursuing his wiretap claim and his § 1983 claim,

6. This memorandum follows the Court's practice of using the term "the statutory claims" to refer to plaintiffs' claims under 18 U.S.C. § 2511, R.I. GEN. LAWS § 9-1-28.1(a)(1), R.I. GEN. LAWS § 11-35-21, and R.I. GEN. LAWS § 12-5.1-1.

7. "Pretermit" means "to disregard intentionally or allow to pass unnoticed or unmentioned." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

it would not have reversed the grant of summary judgment on the § 1983 claim once it reversed and remanded on the wiretap claim. Accordingly, *Adams* did not hold, and this Court should not hold, that plaintiffs are precluded from pursuing both their § 1983 claims and their statutory claims.[8]

Neither *Adams* nor, apparently, any other case holds that a constitutional claim under § 1983 is precluded by the assertion of a claim under the federal wiretap act. However, at least two courts have expressly stated that a plaintiff may assert both a claim based on the federal wiretap act and a § 1983 claim based on the Fourth Amendment. In *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808 (D.N.J. 1993), the court rejected an argument that the federal wiretap act precluded a claim under § 1983 alleging a constitutional violation:

> The fundamental flaw in defendant's argument is that the doctrine * * * pertains only to claims brought under § 1983 to enforce rights created by congressional statutes. [Citation omitted.] Here, however, plaintiffs' § 1983 claim relates to rights which exist under the Constitution itself. Defendants' argument * * * is simply inapt.

832 F.Supp. at 825. In *Kinoy v. Mitchell*, 331 F.Supp. 379 (S.D.N.Y. 1971), the district court stated: "If defendants have in fact conducted unauthorized or illegal electronic surveillance in violation of plaintiffs' rights under the fourth amendment, a cause of action exists both under 18 U.S.C. § 2520 and under the fourth amendment." 331 F.Supp. at 382. Moreover, there are many cases in which plaintiffs have asserted claims under both the federal wiretap act and § 1983 with no suggestion by the court of any impropriety in doing so. *See, e.g., Wright v. Florida*, 495 F.2d 1086, 1087 (5th Cir. 1974) (holding that "there are two causes of action which plaintiff should have been allowed to prove at a hearing on the merits": a § 1983 claim alleging a violation of the Fourth Amendment and a claim under 18 U.S.C. § 2520).

Accordingly, this Court should reject Vieira's argument that plaintiffs may not pursue their § 1983 claim alleging a violation of the Fourth Amendment and their other statutory claims.

2. <u>Plaintiffs may pursue both their federal and state wiretap claims</u>.

---

8. Even if this Court were to read *Adams* as Vieira does, it offers no authority for precluding plaintiffs from simultaneously pursuing their state law claims and their federal constitutional claim under § 1983.

Vieira's claim that plaintiffs cannot simultaneously pursue both their claims under the federal wiretap act and their claims under the state wiretap act rests on one case: *Whitaker v. Garcetti*, 291 F.Supp.2d 1132 (C.D. Cal. 2003). There, the district court did state that California's wiretap act was applicable rather than the federal act:

> Because the Defendants are local rather than federal officials and municipalities, and because the two wiretapping statutes regulate the same sphere of conduct, the operative directive in our case is the California Wiretapping Statute and not the Federal Wiretapping Statute, unless of course, the federal statute preempts that of the state. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n*, 461 U.S. 190, 212-13, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18, 10 L. Ed. 2d 248 (1963).

291 F.Supp.2d at 1141. *Whitaker* deserves no weight because the court's ruling was not appealed, no other court has cited *Whitaker* for that proposition, there appears to be no other case reaching the same conclusion, and, most importantly, an analysis of the opinion reveals no persuasive logic to its conclusion. Its "logic" seems to be that since the federal wiretap act does not preempt the state wiretap act, the state wiretap act, *and only the state wiretap act*, applies.[9] While the conclusion that the state wiretap act applied and had not been preempted was proper, the conclusion that *only* the state wiretap act applied ) a "reverse preemption" in effect ) has no basis in any accepted legal doctrine and is unsupported by the two cases *Whitaker* cited: *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n* and *Florida Lime & Avocado Growers, Inc. v. Paul*.

*Pacific Gas & Electric* concerned federal pre-emption of the field of nuclear safety. The Court did not hold that a state statute applied to the exclusion of a federal statute, only that the state statute at issue was outside the scope of federal pre-emption. Likewise, *Florida Lime & Avocado*

---

9. Although the court stated that "Defendants were only bound by California's Wiretapping Statute," it explained in a footnote that this did not mean "that Defendants can freely violate the federal statute." 291 F.Supp.2d at 1142 and 1142 n.18. The court attempted to make sense of the apparent contradiction that defendants were not bound by the federal statute and yet were not free to violate it by asserting that "[v]iolations of the California statute would necessarily imply violations of the federal version, due to the latter's less stringent standards." That assertion is patently nonsensical. If the federal act is less stringent than the state act, then a violation of *the federal act* would necessarily imply a violation of *the more stringent state act*. However, a violation of the state act might *not* imply a violation of the less stringent federal act. If the federal act is "less stringent" (or, equivalently, the state statute is "more stringent"), then certain activities prohibited by the state act must be allowed by the federal act. In the case of such an activity, then, the violation of the state statute does not necessarily imply a violation of the federal statute.

*Growers* concerned whether a California statute regulating the minimum oil content of avocados sold in the state was preempted by a federal marketing order. The court concluded that the state statute was valid under the Supremacy Clause because it was not impossible to comply with both the federal marketing order, which set minimum standards, and the state statute. As in *Pacific Gas & Electric*, the court did not hold that the state statute applied to the exclusion of the federal mandate. Accordingly, there is nothing in either *Pacific Gas & Electric* or *Florida Lime & Avocado Growers* which supports the district court's view in *Whitaker v. Garcetti* that the defendants were bound only by California's wiretapping statute.

Not only is *Whitaker* completely unpersuasive, its conclusion is inconsistent with practice in the First Circuit. In *Williams v. Poulos*, 11 F.3d 271 (1st Cir. 1993), the court affirmed a judgment that the defendants had violated both the federal and Maine anti-wiretap statutes. There was no suggestion in the district court or in the court of appeals that plaintiff was precluded from proceeding under both statutes.[10]

Accordingly, plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against Vieira, including their claims under both the federal and state wiretap acts.

E. <u>A municipality may be liable for violations of the statutory claims asserted in this case</u>.

Vieira did not respond to this issue in his supplemental memorandum on the ground that it was not applicable to him. For that reason plaintiffs do not respond to that issue here, but do so in their response to the City's motion for summary judgment.

10. There may be an issue whether plaintiffs can recover damages under both acts for the same conduct, but that is a separate (and, at this stage, moot) issue from whether the plaintiffs may allege and prove violations of both acts.

F. Vieira may be held liable on the statutory claims asserted against him in his individual capacity even if he has acted only in the course of his employment.

The sixth question presented by the Court in its July 27 order is whether "the individual Defendants [can] be liable individually for the statutory claims asserted in this case if each has acted only in the course of their employment with a government agency?" Because the question is posed in terms of liability and makes no reference to qualified immunity, plaintiffs assume the question is addressed to the liability of the defendants in the first instance for actions taken in the course of their employment (without regard to a potential qualified immunity defense).

Vieira's response is simply that there is no evidence that he acted outside the course of his employment and "[h]ence, he cannot be liable individually." Vieira Mem. at 6. As noted above, the Supreme Court has rejected the proposition that an official cannot be liable in his individual capacity for actions taken in his official capacity. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358 (1991). Moreover, it is well established under general principles of agency law that an employee may be held individually liable to a third party for actions taken in the course of employment where the employee breaches a duty owed to the third party independent of the agency relationship. *See* RESTATEMENT (THIRD) OF AGENCY §§ 7.01[11] and 7.02[12] (2006).

All of the individual defendants, including Vieira, were employees, i.e., agents, of the city of Providence at the time that they committed the acts which give rise to the claims against them in their individual capacities. An agent of a disclosed principal (e.g., a city employee) may be held individually liable to a third party "for acts within the scope of a duty that is otherwise independent of the agency relationship." *Kennett v. Marquis*, 798 A.2d 416, 419 (2002). Thus, in *Forte Brothers, Inc. v. National Amusements, Inc.*, 525 A.2d 1301 (R.I. 1987), Justice Kelleher noted the "well-

---

11. § 7.01 ("Agent's Liability to Third Party") provides in full:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.

12. § 7.02 ("Duty to Principal; Duty to Third Party") provides in full:

> An agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.

settled general principle that holds that a person who acts as an acknowledged agent for a disclosed principal is independently liable for his own acts of negligence, despite the fact that these acts are committed in course and scope of the agency and in furtherance of the disclosed principal's business." 525 A.2d at 1304 (Kelleher, J., concurring); *see also Gray v. Wood*, 75 R.I. 123, 130, 64 A.2d 191, 194 (1949) ("we recognize the right to sue a public officer for a personal act of misfeasance committed peculiarly against another even though it occurred in the discharge of his public functions").

Here, each of the statutes relied upon by plaintiffs establishes a duty that is independent of the agency relationship. *See* RESTATEMENT (THIRD) OF AGENCY § 7.01, comment *c* (2006).[13] That is, the individual defendants owed to plaintiffs a duty ) a statutory duty ) not to wiretap unlawfully their telephone calls and not to invade their privacy. Their duty not to violate those statutes was independent of the defendants' status as employees/agents of the city. This is not a case where the employee's only duties arose out of the employment relationship. *See, e.g.*, *Kennett v. Marquis*, 798 A.2d at 419 (granting summary judgment to agent where no evidence that agent "violated an independent duty by misrepresenting material information"); *Alterio v. Biltmore Constr. Corp.*, 119 R.I. 307, 377 A.2d 237 (1977) (vacating judgment against president of corporation where plaintiff's claim against corporation was for breach of contract).

Accordingly, Vieira and the other individual defendants may be held liable on the statutory claims asserted against them in their individual capacities even if they acted only in the course of their employment with the City.

## CONCLUSION

For the reasons set forth above and in plaintiffs' opening memorandum, Vieira's motion for summary judgment should be denied in its entirety.

---

13. § 7.01 comment *c* ("*Constitutions, statutes, regulations, and ordinances*."), provides in relevant part:

> When an agent's conduct violates a * * * statute * * *, the agent is subject to liability although the agent acted at the principal's direction or to further the principal's interests, unless the imposition of liability is inconsistent with the * * * statute * * *.

By their attorneys,

**MURPHY & FAY, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903
Tel : (401) 490-3200
Fax: (401) 490-3207

/s/ *Mark A. Fay*
Mark A. Fay # 4208
*mark@murphyandfay.com*

## CERTIFICATIONS

On October 23, 2006, I caused a true copy of the foregoing document to be filed electronically; it is available for viewing and downloading from the ECF system. Counsel for all parties to the action, listed below, have been served electronically through the ECF system.

/s/ *Mark A. Fay*

**Michael A. Calise, Esq.**

**Susan M. Carlin, Esq.**

**Thomas J. Cronin, Esq.**

**Stephen R. Famiglietti, Esq.**

**Kevin J. McAllister, Esq.**

**Kevin F. McHugh, Esq.**

**Dean G. Robinson, Esq.**

**George L. Santopietro, Esq.**

**George J. West, Esq.**

**Richard B. Woolley, Esq.**