UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 04-553S |

PLAINTIFFS' OBJECTION TO DEFENDANTS
DEAN ESSERMAN, DAVID CICILLINE, AND THE
CITY OF PROVIDENCE'S MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS

Plaintiffs hereby object to Defendant Dean Esserman, David Cicilline, and the City of Providence's motion for summary judgment or, in the alternative, to dismiss. The bases for this objection are detailed in plaintiffs' statement of material facts in dispute and its memorandum in support of plaintiffs' objection, both of which are filed herewith.

By their attorneys,

**MURPHY & FAY, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903
Tel : (401) 490-3200
Fax: (401) 490-3207

/s/ *Mark A. Fay*
Mark A. Fay # 4208
*mark@murphyandfay.com*

## CERTIFICATIONS

On October 23, 2006, I caused a true copy of the foregoing document to be filed electronically; it is available for viewing and downloading from the ECF system. Counsel for all parties to the action, listed below, have been served electronically through the ECF system.

/s/ *Mark A. Fay*

**Michael A. Calise, Esq.**

**Susan M. Carlin, Esq.**

**Thomas J. Cronin, Esq.**

**Stephen R. Famiglietti, Esq.**

**Kevin J. McAllister, Esq.**

**Kevin F. McHugh, Esq.**

**Dean G. Robinson, Esq.**

**George L. Santopietro, Esq.**

**George J. West, Esq.**

**Richard B. Woolley, Esq.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 04-304S |
| JOHN C. CHMURA, et al.<br>Plaintiffs<br><br>v.<br><br>CITY OF PROVIDENCE, et al.<br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 04-553S |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS DEAN ESSERMAN, DAVID CICILLINE, AND THE CITY OF PROVIDENCE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS

## INTRODUCTION

The defendants Dean Esserman, David Cicilline, and the City of Providence jointly move for summary judgment on all six counts of plaintiffs' complaint[1] or, in the alternative, to dismiss plaintiffs' complaint. The claims against Esserman and Cicilline are against them only in their official capacity, and are therefore claims against the City. Accordingly, Esserman, Cicilline, and the City refer to themselves collectively as the Municipal Defendants and present only one set of arguments applicable to them collectively. In doing so, they might seem to suggest that the City may be liable only if Cicilline and/or Esserman are liable in their individual capacities. The City, however, may be liable on plaintiffs' § 1983 claim not only if Cicilline and/or Esserman are liable in their official capacities, but also if any of the other individual defendants sued in their official capacities (Urbano Prignano, Manuel Vieira, or Mary Lennon) is liable. Further, the City may be liable on plaintiffs' state statutory claims on a *respondeat superior* basis if any of the individual defendants is liable on those claims since all were employees of the City at the time of the actions

1. In this memorandum, plaintiffs' "complaint" refers to the second amended complaint.

that are claimed to render them liable. Therefore, since all claims against individual defendants in their official capacities (not just those against Esserman and Cicilline) are claims against the City, plaintiffs will, for simplicity and clarity, use the phrase "the City" rather than "the Municipal Defendants."

Plaintiffs show below that the City's motions to dismiss and/or for summary judgment should be denied. First, plaintiffs' complaint sufficiently pleads a § 1983 claim against the City because it gives the City fair notice of what the claim is and the grounds upon which it rests. Further, both the allegations of the complaint and the evidence submitted on this motion permit an inference of a policy, custom, or practice of the City to record all calls to or from the Providence Public Safety Complex [PPSC], including personal calls, without notice or consent of the callers. Accordingly, the City is entitled neither to dismissal of nor summary judgment on plaintiffs' § 1983 claim.

Second, the City's is not entitled to summary judgment on plaintiffs' claim under the federal wiretap act because (1) the weight of decisional authority, which this Court ought to follow, rejects the City's argument that a municipality cannot be held liable under the federal wiretap act, and (2) there are genuine issues of material fact concerning the City's reliance on the "law-enforcement" exclusion. There is evidence showing that the system used to record the calls)the Total Recall system)was under the control and operation of the communications department, not the police department. Further, the City advances no "law enforcement" purpose to record non-emergency lines not used for police business, e.g., those in the fire department's areas of the PPSC. And, the City's immediate removal of the Total Recall system once its existence became public is evidence that its use up to that date was not in the "ordinary course."

The Court also ought to reject the City's arguments that plaintiffs cannot simultaneously pursue (1) both their § 1983 claim, asserting violations of the Fourth Amendment, and their federal wiretap claim, and (2) both their federal and state wiretap claims. The one case the City cites for the former proposition does not in fact so hold, and other cases have expressly rejected the City's argument. The one case the City cites for the latter proposition is not persuasive and has never been cited for that proposition by any other court. Further, the First Circuit has implicitly rejected the

proposition by affirming a judgment holding a defendant liable under both the federal wiretap act and Maine's wiretap act.

Finally, plaintiffs show that there is no merit to the City's claims that they are entitled to summary judgment on plaintiffs' state statutory claims.

Accordingly, for these reasons, as elaborated below, the Court should deny in its entirety the City's motion for summary judgment or, in the alternative, to dismiss.

## BACKGROUND AND MATERIAL FACTS

In early February 2003, it became known to certain city of Providence officials that a telephone recording system known as the Total Recall system had been installed in the PPSC when it was constructed the previous year. Both the police and fire departments for the city operate out of the new PPSC. This revelation caused an immediate uproar because the recording system was automatically recording almost every phone call coming in and out of that building, including personal calls. The system was immediately removed, but by that time it had intercepted and recorded approximately 755,000 phone calls over the previous eight months.

On February 10, 2003, Police Chief Esserman ordered Assistant Chief Andrew Rosenzweig to investigate the origins of the telephone recording system, and soon thereafter the State Police took over the investigation. The State Police report and the statements taken by the State Police were subpoenaed by plaintiffs and comprise, along with depositions taken during discovery, the evidentiary basis upon which this Court will rule on the motion now before it. This evidence, viewed in the light most favorable to plaintiffs, the non-moving parties, shows the following.

The Total Recall system was a digital, web-based, call-logging system that recorded telephone conversations. State Police Forensics Report at 1; Appendix [A.] 1.[2] The Total Recall computer server interfaced with the PPSC telephone network. *Id*. The system recorded during its operation approximately 755,000 calls made on approximately 500 different telephone stations.[3]

---

2. Plaintiffs' appendix is attached to their Statement of Material Facts in Dispute.

3. "Stations" is apparently the proper term to describe what might commonly be referred to as telephone lines within the building. Desmarais depo. at 336-37; A. 5-6.

City Ex. F at 8, 17. Manuel Vieira, director of the communications department, instructed Anthony Desmarais, then a radio engineer in the department, to prepare the RFP [request for proposals] for the phone system for the PPSC. Deposition of Anthony Desmarais [Desmarais depo.] at 30-31; A. 2-3. Vieira instructed Desmarais that he wanted everything recorded on the system, and thus the RFP required a recording system with the capability of recording 500 stations, which were essentially all the stations in the PPSC. *Id*. at 31, 36-37, 39; A. 3, 5-6; *see also* City's Exh. B at 25. Moreover, the "Basic Purpose" section of the specifications for the system states: "This specification covers an 8 to 128 channel digital recording module that records *all* in-coming messages onto Digital Audio Tapes (DAT) or DVD. *This shall be the primary role of the recording module*." City's Exh. B at 34 (emphases added). Indeed, the City acknowledges in its statement of undisputed facts that the "Total Recall System was to record all lines coming into and out of the public safety complex." City's Stmt. of Undisputed Facts ¶6. The bid for the communications work that included the 500-station recording system, was approved by the City's Board of Contract and Supply. City's Exh. C. The members of the Board of Contract and Supply include the mayor and the president of the city council. Prov. Ord. No. 107 (City's Exh. A). The Board has the responsibility to make all contracts for the purchase of equipment and services on behalf of the city which exceed $5,000. *Id*.

During the investigation by Assistant Police Chief Rosenzweig, Vieira told Rosenzweig that prior to the construction of the PPSC, while Prignano was the Providence Police Chief, Prignano directed him to "create" "the ongoing practice of recording almost all incoming and outgoing calls in the Public Safety Complex." Rosenzweig depo. Exh. 2 at 1; A. 38; *see also* Rosenzweig depo. at 40-41; A. 31-32. Further, Vieira told Rosenzweig that Prignano had knowledge of and responsibility for the installation of the recording system installed in the PPSC. Rosenzweig depo. at 44; Rosenzweig depo. Exh. 2 at 3; A. 33, 40.

Mary Lennon, the Chief of Operations of the communications department, learned in July 2002 that the Total Recall system was being installed and that non-emergency lines in the communications department's facility on West Exchange Street were being recorded. Lennon depo. at 13, 66-67; A. 12, 17-18. Lennon was issued a password with which she could access calls that the system had recorded. Lennon depo. at 53; A. 15. Also, Lennon directed Greg Haroian, a

technician in the communications department, to add additional telephone lines to the Total Recall system. Haroian State Police statement Q. 43-53; A. 44-45. In November 2002, Lennon received training for the Total Recall system during which she was told that the system recorded calls on non-emergency lines within the PPSC. Lennon depo. at 43, 45, 63; A. 13, 14, 16. Lennon acknowledges that sometime after that training and prior to her resignation in February 2003, she became aware that most phone lines at the PPSC were being recorded, and that she did not notify anyone of the recording and never discussed with the city's law department whether it was appropriate or legal. Lennon depo. at 68-69, 74-76; A. 19-20, 22-24.

Despite having directed that the system be installed to record all calls, Vieira acknowledged after the system was discovered that "[y]ou just don't record lines unless they're emergency lines." Vieira depo. at 85; A. 35. In fact, as soon as the system's existence was made public in February 2003, it was immediately removed at the direction of Chief Esserman. Desmarais depo. at 63-65; A. 8-10. The system has not been replaced. *Id*. at 64-65; A. 9-10.

While the Total Recall system was operating, there was no warning or beeping on the recorded stations to let individuals know their phone calls were being recorded. Lennon depo. at 84; A. 26. At no time did anyone ever indicate to Lennon that they were aware that the phone lines were being recorded by the Total Recall system, and she denied any knowledge whether any employees working at the PPSC knew that phone calls were being recorded. *Id*. at 73, 83-84; A. 21, 25-26. Vieira admitted that he never obtained the verbal or written consent of any of the plaintiffs that their phone conversations be recorded. Vieira Depo. at 115-16; A. 36-37.

## ARGUMENT

A. Plaintiffs' complaint adequately pleads a § 1983 claim against the City.

As stated in the Introduction and as the City observes in its memorandum, the § 1983 claims against the individual defendants sued in their official capacities are really claims against the city. *See Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 885 (1985) ("a judgment against a public servant `in his official capacity' imposes liability on the entity that he represents"); *Nereida-Gonzalez*

*v. Tirado-Delgado*, 990 F.2d 701, 705 (1st Cir. 1993) ("An official capacity suit is, in reality, a suit against the government entity, not against the governmental actor.").

The City may not be held liable under § 1983 solely on the basis of *respondeat superior*. *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978) ("a municipality cannot be held liable *solely* because it employs a tortfeasor").[4] Rather, a municipality bears liability for its employee's acts "when execution of a [municipality]'s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694, 98 S.Ct. at 2037-38. Thus, the plaintiff's injury must result from "either an officially sanctioned policy or from a custom or practice that is `so well-settled and widespread that the policymaking officials * * * can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 65 (1st Cir. 2003).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." That statement need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998 (2002). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define any disputed facts

---

4. The City makes no argument that it cannot be held liable for a violation of the federal wiretap act on the basis of *respondeat superior*. *See Tapley v. Collins*, 41 F.Supp.2d 1366, 1380 (S.D. Ga. 1999) ("simple *respondeat superior* principles can be applied to impose §§ 2510/1511 liability upon a municipality"); *Abbott v. Village of Winthrop Harbor*, 1998 U.S. Dist. LEXIS 11897 at *44 (N.D. Ill. 1998) ("As Miller's relationship with the Village * * * satisfies the agent-principal relationship, * * * the Village is liable for the Section 2520 violations"), *rev'd on other grounds*, 205 F.3d 976 (7th Cir. 2000); *Bodunde v. Parizek*, 1993 U.S. Dist. LEXIS 7365 AT *12 n.4 (N.D. Ill. 1993) ("no legislative history supporting that § 2520(a) liability should not be based on *respondeat superior* theories"). Likewise, the City makes no claim that it cannot be held liable on the state statutory claims on the basis of *respondeat superior*. In *Cruz v. Town of North Providence*, 833 A.2d 1237 (R.I. 2003), the court recognized that an "employer, such as a municipality, can be held liable for an employee's intentional tort committed against a third party * * * if the conduct falls within the scope of employment." 833 A.2d at 1240. The City has not argued or proffered any evidence that any the individual defendants acted outside their scope of employment. It would, in any event, have been futile for the City to so argue since, as shown in plaintiffs' memoranda in response to the supplemental memoranda of the individual defendants, there are genuine issues of material fact whether they acted within the scope of their employment. Thus, at this stage of the proceedings, plaintiffs may rely on *respondeat superior* with respect to all of their claims against the City other than the § 1983 claim.

and issues and to dispose of unmeritorious claims." *Id.* The Supreme Court has specifically rejected a "heightened pleading standard" for § 1983 claims. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69, 113 S.Ct. 1160, 1163 (1993). Moreover, the Court noted in *Swierkiewicz v. Sorema, N.A.*, that in light of the notice pleading standard of Rule 8(a) and Rule 8(f)'s requirement that "[a]ll pleadings shall be so construed as to do substantial justice," a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. 534 U.S. at 514, 122 S.Ct. at 998.

A policy for which municipal liability may attach is a deliberate choice to follow a course of action made from among various alternatives by city policymakers. *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01 (1986) (Brennan, J., plurality). A "policy" need not be written; a pattern or a series of incidents of unconstitutional conduct may be sufficient to show an unwritten municipal policy. *See Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). Further, a single act of a sufficiently high-ranking policy-maker may be sufficient to establish a municipality's policy or custom. *See Pembaur v. Cincinnati*, 475 U.S. at 480-81, 106 S.Ct. at 1298-99. "Alternatively, conduct may be held to constitute a custom or practice, even though it was never officially approved by the municipality, if it `is so widespread as to have the force of law' * * * or it is `so well-settled and widespread that the policy making officials of the municipality can be said to have actual or constructive knowledge of yet did nothing to end the practice.'" *Casey v. Newport School Committee*, 13 F.Supp.2d 242, 245 (D.R.I. 1998) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997), and *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989)).

Here, plaintiffs' complaint alleges the following:

1. The City moved into the new Providence Public Safety Complex [PPSC] in or around September 2002. Compl. ¶ 49.

2. The City maintained the telephone lines at the PPSC. *Id.* ¶ 50.

3. Some time prior to February 13, 2003, the Defendants installed and maintained at the PPSC, and operated, a telephone system called the "Total Recall" system. *Id.* ¶¶ 45 and 46.

4. Prior to February 13, 2003, the Total Recall system taped all extensions at the PPSC except 19 identified extensions. *Id.* ¶ 51.

5. At various times prior to February 13, 2003, plaintiffs made telephone calls to or from, or received telephone calls at, the PPSC, but had no knowledge that their calls were recorded by the Total Recall System and did not consent to having their calls recorded. *Id*. ¶¶ 52-54.

Finally, plaintiffs allege in Count I that the Defendants' actions, including, but not limited to, using, installing, and maintaining the Total Recall system violated plaintiff's Fourth Amendment rights.

These allegations are sufficient to give the City fair notice of what the plaintiff's § 1983 claim is and the grounds upon which it rests. Admittedly, the complaint does not use the words "policy," "custom," or "practice," but that is not fatal because the allegations permit the inference of a policy, custom, or practice. *See Jackson v. Marion Count*, 66 F.3d 151 (7th Cir. 1995) (holding that district court erred in dismissing complaint on ground that there was no explicit allegation of a custom or policy; complaint that "charges the municipality * * * with having engaged in improper conduct directly * * * [which] made the county complicit with the officers" adequately states claim); *Burton v. Sheahan*, 68 F.Supp.2d 974, 982-83 (N.D.Ill. 1999) (holding that plaintiff need not explicitly plead the existence of an official custom or policy; "it is sufficient to allege facts from which th[e] court could reasonably conclude that [plaintiff] is entitled to prove facts which, if true, would establish that someone with final policymaking authority * * * made a decision which in turn caused the complained-of deprivation");[5] *see also Roma Constr. Co. v. aRusso*, 96 F.3d 566, 576 (1st Cir. 1996) (reversing dismissal of § 1983 claim where "plaintiffs could indeed prove a set of facts from which a trier of facts could infer an unconstitutional policy or custom"); *Bair v. City of Atlantic City*, 100 F.Supp.2d 262, 268 (D.N.J. 2000) (denying motion to dismiss and stating that whether supervisors were policymaking officials was a detail that could be developed through discovery).

Here, plaintiffs do not allege a one-time occurrence. Rather, they allege that the Total Recall system taped all but 19 telephone extensions at the PPSC after the City moved into the PPSC until February 13, 2003. Further, they allege that the defendants, including the former and current mayors, the former and current police chiefs, and the communications director, maintained, operated, and used the system. They also allege that the defendants did not obtain their consent to the taping.

5. The court held that the allegation that the defendant was the Sheriff of Cook County was sufficient to conclude that plaintiff was entitled to prove a set of facts that would, if true, establish that defendant was a person with final policymaking authority. 68 F.Supp.2d at 981-82.

Plainly, it can be inferred from these allegations that the taping of plaintiffs' calls without their consent was pursuant to a policy, custom, or practice of the city. On a motion to dismiss, plaintiffs are entitled to all reasonable inferences that may be drawn from the facts alleged. *See Toledo v. Sanchez*, 454 F.3d 24, 30 (1st Cir. 2006) Moreover, the additional facts developed through discovery and supporting plaintiffs' claims, such as that approximately 755,000 calls were recorded over about eight months, that Vieira, as communications director and in response to statements of Prignano, directed a department technician to have all calls recorded, that the RFP that was issued and the bid that was accepted by the City specified a capability of recording 500 stations, and that Vieira and/or Prignano qualify as policymakers, are all facts that are consistent with what is alleged.

Accordingly, plaintiffs' complaint adequately pleads a § 1983 claim against the City. The four cases relied upon by the City to support its claim that plaintiffs' pleading is insufficient are all inapposite. In *Fedor v. Kudrak*, 421 F.Supp.2d 473 (D. Conn. 2006), the court granted the defendant town summary judgment on plaintiff's § 1983 claim. While the plaintiff had alleged "that the town had a policy * * *, he [did] not provide[] th[e] Court with substantial evidence that demonstrates the existence of such a policy." 421 F.Supp.2d at 482. Further, the event out of which the claim arose ) the failure of defendant police officer to act on a complaint by plaintiff against his wife ) was a one-time event. The court, quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), stated: "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." 421 F.Supp.2d at 482. In fact, plaintiff did not even argue that the defendant officer's conduct represented a municipal policy or that he was a policymaker. *Id*. Here, in contrast, plaintiffs complain not about the taping of one call or one individual, but the taping of all calls by anyone calling to or from the PPSC over a period of approximately eight months. Such a wide-ranging and regularly conducted activity permits an inference of policy, custom, or practice. While that plainly distinguishes *Fedor*, the case is in any event wholly inapposite because it involved a failure to submit sufficient evidence on a motion for summary judgment rather than a dismissal for a pleading deficiency.

Similarly, in *Zahra v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995), plaintiff's § 1983 claim was not dismissed on the ground that it was insufficiently pleaded, but on the ground that there was insufficient proof at trial. Moreover, while the court stated in *dicta* that an allegation of a custom or policy is insufficient in the absence of facts tending to support, at least circumstantially, such an inference, it did not hold that an explicit allegation of a custom or policy was required. Here, as discussed above, the plaintiffs did plead sufficient facts to support an inference of custom or policy.

In *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 36 (2d Cir. 1996), the *pro se* plaintiff erroneously named the correctional facility as the defendant rather than the individual correctional officers who had allegedly failed to protect him from other detainees. The court reversed the dismissal of his complaint, remanding so that plaintiff might move to amend to name the individuals. The issue on appeal was not whether plaintiff had adequately pleaded a custom or policy to render the correctional facility liable, since it appears that plaintiff had no intention or grounds to make such an allegation, but was whether he should be allowed to amend his complaint to name as the proper defendants the individual officers allegedly responsible. Thus, *Soto* was not about the proper pleading of a *Monell* claim.

Finally, in *Garrett v. Clarke*, 147 F.3d 745, 747 ((8th Cir. 1998), the court affirmed the dismissal of plaintiff's § 1983 claim against the defendant city because his complaint merely named the city as a defendant without identifying any policy, custom, or practice. The opinion fails to describe the allegations of the complaint or whether there were any facts from which a policy, custom, or practice might have been inferred even if not explicitly pleaded. The opinion does not state that the failure to explicitly allege a policy, custom, or practice is fatal. Moreover, *Garrett*, like *Fedor* above, concerned a one-time event ) an allegedly illegal search ) rather than, as here, a wide-ranging and regularly conducted activity that permits an inference of policy, custom, or practice.

In sum, the allegations of the complaint give the City fair notice of what the plaintiffs' § 1983 claim is and the grounds upon which it rests, and it cannot be said that no relief can be granted under any set of facts that could be proved consistent with the allegations. Accordingly, plaintiffs have

adequately pleaded their § 1983 claim against the City and, thus, the City's motion to dismiss that claim should be denied.

B. There is evidence and authority for concluding that the City have violated the plaintiffs' Fourth Amendment rights.

The City contends that plaintiffs cannot demonstrate an unconstitutional policy, custom, or practice as a predicate to its liability under § 1983. There is evidence, however, as related above, that: (1) Prignano, as Chief of Police, directed Vieira to create the practice of recording almost all incoming and outgoing calls in the PPSC; (2) Vieira, as Director of the communications department instructed Desmarais to prepare an RFP for a system that would record all lines; (3) the RFP for the communication facilities for the PPSC, as amended, included a 500-station recording system; (4) the bid for the communications system, including the recording system, was awarded to Expanets by the City's Board of Contract and Supply; (5) the system was installed and operated at Vieira's direction so as to record essentially all calls to and from the PPSC; (6) during the time the system was operating, Lennon, as Chief of Operations of the communications department, became aware that most phone lines at the PPSC were being recorded but did not notify anyone of that nor discuss with the City's law department whether it was legal; (7) no line contained a warning tone or message alerting callers that the line was being recorded; and (8) neither Vieira nor Lennon ever notified or sought the consent of any of the plaintiffs with regard to the recording of their calls.

That evidence permits an inference of a policy, custom, or practice of the City to record all calls to and from the PPSC, including personal calls, without the consent of the callers. One may infer that was the policy from the fact that the Board of Contract and Supply approved the award of the bid for the communications contract, including the 500-line recording system, to Expanets. Pursuant to ordinance, the Board's members include the mayor and the president of the city council and the Board is given authority to make all contracts for purchases of equipment and supplies on behalf of the City in excess of $5,000. Ord. No. 107, City's Exh. A. Certainly, the Board of Contract and Supply may be considered a final policymaker of the City with regard to the making of this contract. Moreover, the Board is expressly authorized to "reject any or all bids submitted to it for a specific purpose if it considers that the public interest will be best served thereby." *Id*. Likewise,

Prignano, who gave the initial directive to Vieira when he was the chief of police, has been found to be a final policymaker of the City. *See* City's Mem. at 14 (citing *Young v. City of Providence*).

Moreover, the extent of the recording, in terms of the number of lines, the number of calls recorded, and the length of time that the recording persisted, are all sufficient to raise an inference of a custom or practice. As there is evidence that the director of the communications department, the chief of operations of that department, and at least some members of the police department knew of the practice, and since a 500-line recording system would not have been necessary to record only emergency and police-complaint lines, it may be inferred that the policymakers of the City had actual *or constructive* knowledge of the practice. *See Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 65 (1st Cir. 2003) (holding that custom or practice is sufficiently widespread and established if policymaking officials had actual or constructive knowledge of it).

The City asserts that even if there is evidence of a policy, custom, or practice, there is no Fourth Amendment violation. City Mem. at 15. The City's argument for that contention is limited to the argument it advances in Section C of its memorandum with regard to whether there was a violation of the federal wiretap act. *Id*. The only argument made by the City in Section C is that there was no violation of the federal wiretap act because, assertedly, the use of the system was by law enforcement officers in the ordinary course of their duties. This Court should reject that argument for the reasons summarized in the Introduction above and elaborated in Section C below: the Total Recall system was under the control and operation of the communications department, not the police department; there is no accepted "law enforcement" purpose to recording non-emergency lines not used for police business, e.g., those in the fire department's areas of the PPSC; and the City's immediate removal of the Total Recall system once its existence became public shows that its use up to that time was not "ordinary."

The City cannot deny that case law has recognized that unauthorized and secretive recording of telephone conversations may violate the Fourth Amendment. *See, e.g., In re State Police Litigation*, 888 F.Supp. 1235 (D. Conn. 1995). There, the court denied summary judgment with regard to § 1983 claims premised on Fourth Amendment violations by the recording of phone calls at a state police barracks. 888 F.Supp. at 1256. The court found both that there was evidence that

the plaintiffs had a subjective expectation that their telephone calls were private, and that the determination whether that subjective expectation was reasonable depended "on proof of the absence of notice, a question of fact precluding summary judgment." *Id.*; *see also PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808, 825-29 (D.N.J. 1993) (denying summary judgment on § 1983 claims based on constitutional violations, including the Fourth Amendment). The court observed that the "surreptitious recording of unprivileged but private calls * * * involves an invasion of privacy that far outweighs defendants' proffered justifications" for the recordings. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861 (1979)). Here, the City has not proffered any justification for the recording of lines that are not emergency lines or lines used by the police for complaints. Indeed, Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Vieira Depo. at 85; A. 35. Further, it is undisputed that the recording was surreptitious: there was no indication by a beeping tone, initial message, or other means that the call was being recorded. Finally, there is no evidence that (or, at most, there is a genuine issue of material fact whether) plaintiffs had actual notice or knowledge of the recording.

Accordingly, the City has failed to establish factually or legally that there was no Fourth Amendment violation, and thus its motion for summary judgment must be denied.

C. <u>The City's use of the Total Recall System violated 18 U.S.C. § 2511</u>.

The City's only argument that there has been no violation of 18 U.S.C. § 2511 rests on the "law enforcement" exemption set forth in 18 U.S.C. § 2510(5)(a)(ii). *See* City's Mem. at 17. That exemption applies if the device used to intercept the communication was "being used * * * by an investigative or law enforcement officer in the ordinary course of his duties." The City relies almost exclusively on *Amati v. City of Woodstock*, 176 F.3d 952 (6th Cir. 1999).

First, there is a genuine issue of fact whether it was "investigative and law enforcement officer[s]" who were using the Total Recall system to record all calls to and from the PPSC. There is evidence that the Total Recall system was selected, installed, used, and controlled by the communications department, not the police department. The RFP for the system was prepared by the communications department, not the police department. The communications department is

organizationally separate and distinct from the police department; each department reports to the Commissioner of Public Safety. Rosenzweig depo. at 116; A. 33A. The City has submitted no evidence that any official in the police department controlled or had responsibility for the operation of the recording system. Indeed, the City submits no evidence that the use of the system to record all lines was approved by any official in the police department.[6] The City has likewise submitted no evidence that any police department personnel had a password for access to the Total Recall system. Rather, the system appears to have been operated solely and exclusively by the communications department, which controlled all access to the recordings.

Certainly, the City has proffered no evidence that either the communications department or any of its employees come within the statutory definition of "[i]nvestigative or law enforcement officer": "any officer of * * * a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter." 18 U.S.C. § 2510(7). Thus, the Total Recall system, as operated and maintained by the communications department, is not excepted from the definition of an "electronic, mechanical, or other device" under the "law enforcement" exclusion, and so its use to record calls constitutes an "interception" as that term is defined. While *some* of the telephone lines that were recorded may fairly be characterized as police lines and *some* of the calls recorded were ones to which a police officer was a participant, that hardly establishes that the system was being used by law enforcement officers when it recorded calls made to or from telephone stations not fairly characterized as police lines and not involving a police officer. *See Abraham v. County of Greenville*, 237 F.3d 386, 390 (4th Cir. 2001) (holding that the "law enforcement" exception in federal wiretap act does not permit "law enforcement agencies [to] record all of the telephone lines in a building so long as some lines were monitored in the ordinary course of the law enforcement officers' duties," otherwise the exception would swallow the rule). There is simply no undisputed evidence that a law enforcement officer was "using" the Total Recall system when it recorded all calls to and from the entire PPSC.

---

6. As noted in the Fact section of this memorandum, there is evidence that Prignano directed Vieira to create a system that recorded all calls. That evidence is disputed by Prignano, however, and the City has not submitted any evidence on this issue in support of its motion.

Even if the City could establish that the system was being used by investigative or law enforcement officers rather than by the communications department, there would be a genuine issue of material fact whether it was being used in the ordinary course of their duties. "The determination of what is or is not comprehended in the phrase `ordinary course of business' is necessarily fact-specific, involving consideration of all the circumstances of the conduct or transaction at issue." *Accusoft Corp. v. Palo,* 237 F.3d 31, 46 (1st Cir. 2001); *see, e.g., Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) (reviewing grant of summary judgment on claim under federal wiretap act and stating that the court had to determine if there was material issue of fact whether plaintiff was acting within the ordinary course of business). Here, the City has not submitted any *evidence* that the use of the Total Recall system to record virtually all incoming and outgoing calls at the PPSC, including calls placed to or from the fire department's telephone stations, was in the ordinary course of duties of any law enforcement officer.[7] Again, the City has produced no evidence that the use of the system to record all calls was approved by anyone within the police department. Apart from relying on case law, the City' motion is simply devoid of any evidence which would permit this Court to engage in the necessary fact-specific inquiry and conclude that the recording had occurred in the ordinary course of duty of a law enforcement officer.

Rather than any evidence, the City relies almost exclusively on *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999). City Mem. at 17-19. However, the court's opinion was upon an appeal from a jury verdict in favor of the defendants. The court affirmed the judgment entered on the jury's verdict. Given that procedural context, the Court's opinion cannot be construed as a holding that defendants were entitled to judgment as a matter of law on the "law enforcement" exclusion. While the Court stated that it was routine, standard, and ordinary for the police to record all calls to and from the police, that may simply reflect what the evidence in that case showed. To the extent that

7. The City does present an excerpt of the deposition testimony of Joseph Richardson, who was the assistant director of the communications department. He testified that it was his understanding that there was a need to record "emergency calls for service" and complaints from the public to the police (i.e., "when someone called to complain of calls that were not emergency calls for service, you know, citizen complaints such as maybe loud music, dogs barking, whatever"). Richardson Depo. at 32 (attached to City Mem.). That testimony is patently insufficient to establish a law enforcement purpose for the recording of non-emergency and non-complaint calls to the police department or calls to or from the fire department.

it purports to be a statement of law, rather than fact based on evidence in the record, it is plainly *dicta*. Significantly, the district court denied the defendants summary judgment on the "ordinary course of business" exclusion. *Amati v. City of Woodstock*, 1997 U.S. Dist. LEXIS 14281 (N.D. Ill. 1997).

In any event, even if *Amati* did establish as a matter of law that it is within the ordinary course of duty for the police to record all calls to and from a police station, that would not provide any justification for the recording of all calls to and from the fire department's telephone stations within the PPSC, especially when the evidence shows how easily lines could be deleted from the system. Certainly, the recording of calls to and from fire department personnel would not likely "constitute vital evidence or leads to evidence" nor would "monitoring them [be] necessary for evaluating the speed and adequacy of the response of the *police* to tips, complaints, and calls for emergency assistance," the only purposes accepted by the *Amati* court to justify routine recording under the "law enforcement" exception. *See Amati*, 176 F.3d at 954 (emphasis added).

The City' passing reliance on *Jandak v. Village of Brookfield*, 520 F.Supp. 815 (D.C. Ill. 1981), is similarly misplaced. *Jandak*, too, was determined based on the specific evidence in the record regarding the police department's phone lines, the purpose of the recording, the degree of notice provided, and that there was a non-recorded line available for use. Eight of the nine recorded lines had beeping devices to notify the users of those lines of the recording. Only the ninth line, used for investigative purposes, did not have a beeping device. 520 F.Supp. at 818. The court noted that when courts have to determine what types of eavesdropping can be done in the ordinary course of law enforcement duties, the cases "turn narrowly on their facts." *Id*. at 823. The court found that in the case before it the exclusion applied because the evidence showed that use of the equipment was "to improve police emergency and investigative services" and that the police officer who placed the call "should have known that calls on the line he used were monitored." *Id*. at 824-25. The court thus made a narrow, fact-specific holding: "the routine, nonsurreptitious, recording of a police investigative line which results in the recording of a conversation of an officer misusing the line for personal purposes, when the officer should have known that the line was monitored, was in the ordinary course of business." *Id*. at 825. Those facts do not apply to the approximately 755,000 calls

recorded by the Total Recall system. And, as with *Amati*, *Jandak* has no relevance to the recording of the phone stations used by the fire department.

Similarly, the City' reliance on *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001), does not establish their entitlement to summary judgment. First, the court in *Adams* concluded that the "law enforcement" exception did not apply to the case before it. 250 F.3d at 983. Second, the court held that for the "law enforcement" exception to apply there must be notice to the person or persons being monitored. *Id*. at 984. Here, while the City has produced an email allegedly sent by Major Simoneau to the police department and its staff indicating that telephone lines in the PPSC may be taped, there is no evidence that this email reached non-police department personnel, such as fire department personnel, or members of the public. Further, there is a genuine issue whether the alleged email constituted effective notice given the number of police officials who claim not to have known the Total Recall system was recording all calls to and from the PPSC. *See* Clark State Police statement Q. 24; Laorenza State Police statement Q. 6-9; A. 42, 46-47. In fact, Major Simoneau claimed only to have notice of the capability of the Total Recall system, but not to have learned that the system was turned on and actually recording the telephone lines in the PPSC. *See* Simoneau State Police statement Q. 9; A. 49. Accordingly, in all events, there is a genuine issue of material fact regarding whether *all*[8] plaintiffs had notice that all calls to and from the PPSC were being recorded.

When the facts of this case are examined there can be no conclusion as a matter of law that the recording of those 755,000 calls was in the ordinary course of duties of a law enforcement officer. The evidence dispels any notion that it was a routine, ordinary practice of the Providence police department: no such system was in place prior to the Total Recall system and the Total Recall system was immediately ripped out and not replaced once it was discovered. Moreover, Vieira testified that "[y]ou just don't record lines unless they're emergency lines." Vieira Depo. at 85; A. 35. *see also id*. at 156 (testifying that "if the system had been installed and was recording all these

8. The City's motion is directed to the claims of plaintiffs, collectively. The City makes no effort to single out any one plaintiff and show that particular defendant had notice, or gave consent, etc. Plainly, even if the City could prove that one or a few defendants had notice, that would not be a sufficient basis to grant the City summary judgment with respect to all plaintiffs.

lines, it would not be put in and used in the ordinary course of business of the communications department of the City of Providence"); A. 37A. In light of that evidence, the City cannot credibly maintain that the recording of all calls was, as a matter of law, in the ordinary course of duties of a law enforcement officer.

Accordingly, the City is not entitled to summary judgment based on the "law enforcement" exclusion set forth in 18 U.S.C. § 2510(5)(a)(ii).

D. Plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against the City.

The City next makes two arguments: (1) that plaintiffs cannot pursue their § 1983 claim for violation of their constitutional rights, but are limited to pursuing their other statutory claims,[9] and (2) that plaintiffs cannot pursue both their claim under the federal wiretap act and the state wiretap act. Both arguments should be rejected.

1. Plaintiffs may pursue both their § 1983 claim and their other statutory claims.

The City argues that plaintiffs cannot pursue their § 1983 claim and also their other statutory claims. The only authority it cites for this contention is *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001). No other court has cited the opinion in *Adams* for the proposition upon which the City relies. In fact, a closer reading of the *Adams* opinion than the City gives it reveals that the court did not hold that a plaintiff could not simultaneously pursue both a § 1983 claim and a claim under the federal wiretap act.

*Adams* was an appeal by the plaintiff from a grant of summary judgment to defendants on his claims under the federal wiretap act and § 1983. *See* 250 F.3d at 989 (Krupansky, J. dissenting) (relating claims made and district court disposition). The court held that the district court erred in granting summary judgment to defendants under the federal wiretap act and, without addressing the constitutional issues raised by the § 1983 claim, reversed the grant of summary judgment on both claims. The court chose not to resolve the constitutional issues presented by the § 1983 claim since

9. This memorandum follows the Court's practice of using the term "the statutory claims" to refer to plaintiffs' claims under 18 U.S.C. § 2511, R.I. GEN. LAWS § 9-1-28.1(a)(1), R.I. GEN. LAWS § 11-35-21, and R.I. GEN. LAWS § 12-5.1-1.

it had reversed on the wiretap claim and plaintiffs case would go forward regardless of whether it upheld or reversed the grant of summary judgment on the § 1983 (constitutional) claim. Thus, it applied the rule that courts should avoid the unnecessary adjudication of constitutional issues. It therefore concluded: "[W]e do not reach any question of interpretation under the Fourth Amendment. All such constitutional issues are pretermitted."[10] 250 F.3d at 986. If the court had intended to hold that plaintiff was precluded from simultaneously pursuing his wiretap claim and his § 1983 claim, it would not have reversed the grant of summary judgment on the § 1983 claim once it reversed and remanded on the wiretap claim. Accordingly, *Adams* did not hold, and this Court should not hold, that plaintiffs are precluded from pursuing both their § 1983 claims and their statutory claims.[11]

Neither *Adams* nor, apparently, any other case holds that a constitutional claim under § 1983 is precluded by the assertion of a claim under the federal wiretap act. However, at least two courts have expressly stated that a plaintiff may assert both a claim based on the federal wiretap act and a § 1983 claim based on the Fourth Amendment. In *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808 (D.N.J. 1993), the court rejected an argument that the federal wiretap act precluded a claim under § 1983 alleging a constitutional violation:

> The fundamental flaw in defendant's argument is that the doctrine * * * pertains only to claims brought under § 1983 to enforce rights created by congressional statutes. [Citation omitted.] Here, however, plaintiffs' § 1983 claim relates to rights which exist under the Constitution itself. Defendants' argument * * * is simply inapt.

832 F.Supp. at 825. In *Kinoy v. Mitchell*, 331 F.Supp. 379 (S.D.N.Y. 1971), the district court stated: "If defendants have in fact conducted unauthorized or illegal electronic surveillance in violation of plaintiffs' rights under the fourth amendment, a cause of action exists both under 18 U.S.C. § 2520 and under the fourth amendment." 331 F.Supp. at 382. Moreover, there are many cases in which plaintiffs have asserted claims under both the federal wiretap act and § 1983 with no suggestion by the court of any impropriety in doing so. *See, e.g.*, *Wright v. Florida*, 495 F.2d 1086, 1087 (5th Cir.

---

10. "Pretermit" means "to disregard intentionally or allow to pass unnoticed or unmentioned." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

11. Even if this Court were to read *Adams* as the City does, it is offers no authority for precluding plaintiffs from simultaneously pursuing their state law claims and their federal constitutional claim under § 1983.

1974) (holding that "there are two causes of action which plaintiff should have been allowed to prove at a hearing on the merits": a § 1983 claim alleging a violation of the Fourth Amendment and a claim under 18 U.S.C. § 2520).

Accordingly, this Court should reject the City's argument that plaintiffs may not pursue their § 1983 claim alleging a violation of the Fourth Amendment and their statutory claims.

2. Plaintiffs may pursue both their federal and state wiretap claims.

The City's claim that plaintiffs cannot simultaneously pursue both their claims under the federal wiretap act and their claims under the state wiretap act rests on one case: *Whitaker v. Garcetti*, 291 F.Supp.2d 1132 (C.D. Cal. 2003). There, the district court did state that California's wiretap act was applicable rather than the federal act:

> Because the Defendants are local rather than federal officials and municipalities, and because the two wiretapping statutes regulate the same sphere of conduct, the operative directive in our case is the California Wiretapping Statute and not the Federal Wiretapping Statute, unless of course, the federal statute preempts that of the state. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n*, 461 U.S. 190, 212-13, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18, 10 L. Ed. 2d 248 (1963).

291 F.Supp.2d at 1141. *Whitaker* deserves no weight because the court's ruling was not appealed, no other court has cited *Whitaker* for that proposition, there appears to be no other case reaching the same conclusion, and, most importantly, an analysis of the opinion reveals no persuasive logic to its conclusion. Its "logic" seems to be that since the federal wiretap act does not preempt the state wiretap act, the state wiretap act, *and only the state wiretap act*, applies.[12] While the conclusion that

12. Although the court stated that "Defendants were only bound by California's Wiretapping Statute," it explained in a footnote that this did not mean "that Defendants can freely violate the federal statute." 291 F.Supp.2d at 1142 and 1142 n.18. The court attempted to make sense of the apparent contradiction that defendants were not bound by the federal statute and yet were not free to violate it by asserting that "[v]iolations of the California statute would necessarily imply violations of the federal version, due to the latter's less stringent standards." That assertion is patently nonsensical. If the federal act is less stringent than the state act, then a violation of *the federal act* would necessarily imply a violation of *the more stringent state act*. However, a violation of the state act might *not* imply a violation of the less stringent federal act. If the federal act is "less stringent" (or, equivalently, the state statute is "more stringent"), then certain activities prohibited by the state act must be allowed by the federal act. In the case of such an activity, then, the violation of the state statute does not necessarily imply a violation of the federal statute.

the state wiretap act applied and had not been preempted was proper, the conclusion that *only* the state wiretap act applied ) a "reverse preemption" in effect ) has no basis in any accepted legal doctrine and is unsupported by the two cases *Whitaker* cited: *Pacific Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n* and *Florida Lime & Avocado Growers, Inc. v. Paul*.

*Pacific Gas & Electric* concerned federal pre-emption of the field of nuclear safety. The Court did not hold that a state statute applied to the exclusion of a federal statute, only that the state statute at issue was outside the scope of federal pre-emption. Likewise, *Florida Lime & Avocado Growers* concerned whether a California statute regulating the minimum oil content of avocados sold in the state was preempted by a federal marketing order. The court concluded that the state statute was valid under the Supremacy Clause because it was not impossible to comply with both the federal marketing order, which set minimum standards, and the state statute. As in *Pacific Gas & Electric*, the court did not hold that the state statute applied to the exclusion of the federal mandate. Accordingly, there is nothing in either *Pacific Gas & Electric* or *Florida Lime & Avocado Growers* which supports the district court's view in *Whitaker v. Garcetti* that the defendants were bound only by California's wiretapping statute.

Not only is *Whitaker* completely unpersuasive, its conclusion is inconsistent with practice in the First Circuit. In *Williams v. Poulos*, 11 F.3d 271 (1st Cir. 1993), the court affirmed a judgment that the defendants had violated both the federal and Maine anti-wiretap statutes. There was no suggestion in the district court or in the court of appeals that plaintiff was precluded from proceeding under both statutes.[13]

Accordingly, plaintiffs are entitled to simultaneously pursue their § 1983 claim as well as their statutory claims against the City, including their claims under both the federal and state wiretap acts.

E. A municipality may be liable for a violation of the federal wiretap act.

13. There may be an issue whether plaintiffs can recover damages under both acts for the same conduct, but that is a separate (and, at this stage, moot) issue from whether the plaintiffs may allege and prove violations of both acts.

Based on their conclusion that plaintiffs may not pursue a claim under the federal wiretap act, but only the state wiretap act, the City limits their argument under Section E of its memorandum to whether it may be held liable under the state wiretap act.[14] Given plaintiffs' disagreement with that conclusion, plaintiffs argue that a municipality may be held liable under the federal wiretap act.

18 U.S.C. 2520(a) authorizes the recovery of civil damages from a "person or entity" that has intercepted a communication in violation of the act. Neither the First Circuit nor any district court in this circuit has ruled whether a municipality is an "entity" that may be held liable under § 2520(a). The majority of other courts that have considered the issue have concluded that a municipality may be held liable for a violation of the act. *See Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001); *Williams v. City of Tulsa*, 393 F.Supp.2d 1124 (N.D. Okla. 2005); *Connor v. Tate*, 130 F.Supp.2d 1370 (N.D. Ga. 2001); *Tapley v. Collins*, 41 F.Supp.2d 1366 (S.D. Ga. 1999); *Dorris v. Absher*, 959 F.Supp. 813 (M.D. Tenn. 1997), *aff'd in part and rev'd in part on other grounds*, 179 F.3d 420 (6th Cir.) (claims against county settled prior to appeal and therefore not addressed on appeal); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F.Supp. 808 (D.N.J. 1993); *Bodunde v. Parizek*, 1993 U.S. Dist. LEXIS 7365 (N.D. Ill. 1993); *Smith v. City of Hartford*, 2000 Conn. Super. LEXIS 1847 (Conn. Super. Ct. 2000); *Huber v. North Carolina State University*, 594 S.E.2d 402 (N.C. Ct. App. 2004); *cf. Organizacion JD LTDA v. United States Dept. of Justice*, 18 F.3d 91 (2d Cir. 1994) (holding that "entity" includes governmental entities under 18 U.S.C. § 2707(a)). *But see Abbott v. Village of Winthrop Harbor*, 205 F.3d 976 (7th Cir. 2000); *Anderson v. City of*

14. The City's argument that it may not be held liable under the state wiretap act fatally undercuts its argument that plaintiffs may proceed only under the state wiretap act made in Section D of its memorandum and discussed above. That argument was premised upon the assumption that "the two wiretapping statutes regulate the same sphere of conduct." *See* City Mem. at 21 (quoting *Whitaker v. Garcetti*, 291 F.Supp.2d at 1141). However, if the state wiretapping statute does not regulate wiretapping by municipalities (i.e., a municipality cannot violate the state statute), but the federal wiretapping statute does (i.e, a municipality can violate the federal statute), then plainly the two statutes do *not* regulate the same sphere of conduct. Similarly, if the Court were to conclude that a municipality cannot violate the federal wiretapping act, that would fatally undercut the City's argument that plaintiffs may not pursue their § 1983 claim for a constitutional violation. If a municipality is outside the sphere of regulation of the wiretapping act, then the City's premise for this argument ) that the federal wiretap act is no "less protective of privacy rights than the Fourth Amendment" ) is wrong, for surely the Fourth Amendment protects against the invasion of privacy rights by a municipality. *See* City Mem. at 20.

*Columbus*, 374 F.Supp.2d 1240 (M.D. Ga. 2005); *Amati v. City of Woodstock*, 829 F.Supp. 998 (N.D. Ill. 1993).

Commentators regard the majority view as the "better" or "correct" one. 1 CLIFFORD S. FISHMAN & ANNE T. MCKENNA, WIRETAPPING AND EAVESDROPPING § 4:33.4, at 97 (supp.); Andrew Ayers, Note, *The Police Can Do What? Making Local Governmental Entities Pay for Unauthorized Wiretapping*,19 N.Y.L. SCH. J. HUM. RTS. 651, 690-95 (2003); Michelle Schipke Silies, Note, *Freedom of Liberty Takes on the Right to Privacy: An Analysis of Adams v. City of Battle Creek, the Circuit Split, and Possible Consequences of Anti-terrorism Legislation*, 22 ST. LOUIS U. PUB. L. REV. 207, 223-31 (2003).

As originally drafted, § 2520(a) did not impose liability on municipalities and other governmental entities because that section imposed liability only on "persons," and a governmental entity is not within the statutory definition of a person. § 2520(a) was amended in 1986 to authorize civil actions against a person "or entity" violating the act. The majority of courts conclude that the addition of "or entity" must be construed as referring to governmental entities else the addition be superfluous since the term "person" was already defined to include business entities. *See, e.g., Adams v. City of Battle Creek*, 250 F.3d at 985. Further, the amending statute added the same language to the civil liability provision for interception of stored wire and electronic communications under 18 U.S.C. § 2707(a), and the Senate Committee Report summarizing § 2707 specifically stated that the word "entity" includes governmental entities. *Id*. (citing S. Rep. No. 541, 99th Cong., 2d Sess. 43 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3597).

In 2001, subsequent to *Adams*, § 2520(a) was again amended, adding the clause "other than the United States" after "person or entity." *See Williams v. City of Tulsa*, 393 F.Supp.2d at 1132. "Congress' subsequent amendment in 2001 to exclude the United States from entities that could be liable evidences a Congressional understanding that the 1986 amendment created governmental liability." *Id*.

The minority view expressed in *Abbott*, *Anderson*, and *Amati*, is unpersuasive. First, the opinion in *Abbott* relied heavily on the opinion in *Amati*. *Amati*, however, has been criticized as "cursory" and faulted because "it did not deal with the meaning of the word `entity.'" *See Adams v.*

*City of Battle Creek*, 250 F.3d at 985. Moreover, none of *Abbott*, *Anderson*, and *Amati* noted the identical amendment to § 2707(a) and its explicit legislative history that "entity" was intended to encompass governmental entities. Further, while *Amati* was decided prior to 2001, neither *Abbott* nor *Anderson* gave any explanation for why Congress would amend § 2520(a) to expressly exclude the United States from the term "entity" if "entity" did not encompass governmental bodies. Those opinions' conclusion that the statute is not ambiguous, and so no resort to legislative history is necessary, rings hollow when (1) the word "entity" is not defined in the act and (2) if it were limited to business entities that would render its use superfluous since "person" is defined to include business entities. Moreover, the proposition advanced in *Amati* that "or entity" was added to § 2520 to accord with the phrase "person or entity" included in a new section ) § 2511(3)(a) ) added at the same time simply begs the question why "or entity" was used in § 2511(3)(a) and who or what it was intended to include beyond those encompassed by the term "person." *See* 829 F.Supp.2d at 1002.

Accordingly, this Court should join with the majority of courts that have considered this issue and hold that a municipality may be held liable for a violation of the federal wiretap act.

F. The City may be held liable for a violation R.I. GEN. LAWS § 11-35-21.

The City is correct that R.I. GEN. LAWS § 11-35-21 is a criminal statute. It is wrong, however, that it may not be held liable for a violation of that statute. The City's argument ignores R.I. GEN. LAWS § 9-1-2.

"Section 9-1-2 is the `enabling act giving a person injured as a result of a crime or offense a right of action where none existed at common law.'" *Mello v. DaLomba*, 798 A.2d 405, 411 (R.I. 2002) (quoting *Lyons v. Town of Scituate*, 554 A.2d 1034, 1036 (R.I. 1989)). "Pursuant to § 9-1-2, a plaintiff can bring a cause of action even if no criminal complaint for the crime or offense has been filed." *Id.*

Accordingly, the City may be held liable for violation R.I. GEN. LAWS § 11-35-21, even though it is a criminal statute.

G. The City does not establish legally or factually that it is entitled to summary judgment on plaintiffs' claim under R.I. GEN. LAWS § 12.5-1-1, et seq.

The City "assumes" that plaintiffs have alleged a violation of R.I. GEN. LAWS § 12-5.1-10 and then argues that § 12-5.1-10 "deals with the disclosure of intercepted communications not interception of those calls." City Mem. at 28, 29. While the City is correct that § 12-5.1-10 concerns the disclosure and use of intercepted communications, it is wrong that § 12-5.1-10 is the basis of plaintiffs' claim in Count 6 of their amended complaint.

R.I. GEN. LAWS § 12-5.1.13 provides that any person whose wire, electronic, or oral communication is "intercepted, disclosed, *or* used in violation of this chapter" shall have a cause of action against any person "who intercepts, discloses, *or* uses the communications." [Emphases added.] The use of the disjunctive "or" makes clear that interception of a communication in violation of chapter 12-5.1 is a separate and sufficient basis of liability. *See State v. Grayhurst*, 852 A.2d 491, 518 (R.I. 2004) ("disjunctive structure [of R.I. GEN. LAWS § 11-42-4] * * * is used to express a choice between two methods of committing a single crime"); *State v. Berker*, 112 R.I. 624, 626, 314 A.2d 11, 13 (1974) ("where the Legislature, using the disjunctive `or' has forbidden several cognate acts, * * * any one of the acts forbidden[] amounts to but a single offense"); *see also Vincent Co. v. First Nat. Supermarkets, Inc.*, 683 A.2d 361, 363 (R.I. 1996) ("The disjunctive `or' is `used to express an alternative or to give a choice of one among two or more things.'") (quoting BLACK'S LAW DICTIONARY 1095 (6th ed. 1990)). Further, construing § 12-5.1-13 to make unlawful the interception alone of a protected communication is consistent with the federal wiretap act, which served as a model for Rhode Island's act. *Pulawski v. Blais*, 506 A.2d 76, 77 n.1 (R.I. 1996) (noting that Rhode Island's wiretap act "closely parallels" federal act); *State v. Ahmadjian*, 438 A.2d 1070, 1080 n.4 (R.I. 1981) (noting that federal wiretap act "served as a model for this state's legislation"); *State v. Picerno*, 2004 WL 603398 at *14 (R.I. Super. Ct. 2004) ("For guidance, this Court may look to interpretations of the federal law that are not inconsistent with existing principles of Rhode Island's wiretap law.").

An interception which is not made in accordance with the statute is made in violation of the statute. Here, plainly, the recordings were not made in accordance with the statute since there was no application for an order authorizing the interception of the communications. *See* R.I. GEN. LAWS

§ 12-5.1-2 ("Application for orders.").[15] The City does not contend that there is no allegation in plaintiffs' complaint (or no evidence) that plaintiffs' calls were intercepted, only that there is no allegation in the complaint that the contents of the recorded calls were disclosed. Absent some showing by the City that there is no evidence that plaintiffs' calls were recorded, it is not entitled to summary judgment on the ground that there is no genuine issue of material fact with respect to that allegation of the complaint. While plaintiffs cannot rely on allegations in a pleading to establish a genuine issue of material fact, they have no burden to come forward with evidence until the defendants have proffered some evidence showing that there is not a genuine issue of material fact regarding a material allegation in the pleading. Here, the City has not done so, and could not do so, in light of the evidence that essentially all calls to and from the PPSC were recorded, in all approximately 755,000.

Accordingly, the City has not established legally or factually that it did not violate R.I. GEN. LAWS § 12.5-1-1, et seq., and thus is not entitled to summary judgment on plaintiffs' claim under the state wiretap act.

H. The City does not establish legally or factually that it is entitled to summary judgment on plaintiffs' claim under R.I. GEN. LAWS § 12.5-1-1, et seq.

The City asserts, without citation to any evidence or legal authority, that "[t]here is no expectation of privacy of people who call in to the police and fire stations." City Mem. at 32. Further, the City asserts that since their "consistent position has been that the recording was legal[,] * * * the recordings were not done through improper means." *Id*. These one-sentence "arguments" are patently insufficient to entitle the City to summary judgment.

15. The state "law enforcement" exclusion set forth at R.I. GEN. LAWS § 12-5.1-1(7)(i) plainly does not apply. Unlike the federal wiretap act, the state act requires that the intercepting device not only be used "by an investigative or law enforcement officer in the ordinary course of his or her duties" but also that it be "furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of business." The City has proffered no evidence that Expanets, the provider of the Total Recall system, is a "provider of wire or electronic communication service." *See Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740-41 (4th Cir. 1994) (use of voice logger not within business-use exception because voice logger was not sold by telephone company providing service in the ordinary course of its business); *Deal v. Spears*, 980 F.2d 1153, 1157 (8th Cir. 1992) (use of recorder purchased at electronics store rather than from telephone company providing service was not within business-use exception).

First, there is a genuine issue whether the plaintiffs had a reasonable expectation of privacy in the calls that they allege were unlawfully intercepted. It is certainly not unreasonable for an individual calling the PPSC to have an expectation that his or her telephone conversation will be private when (1) the call is placed to a person who is an employee of the fire department or otherwise not connected with the police department, (2) the call is directed to a telephone extension that is not an emergency line or police line for the receipt of complaints from the public, and (3) the telephone line does not have a "beep" or other signal or warning that the call is being recorded. Likewise, it is not unreasonable for an employee to have an expectation that his or her personal calls from the PPSC will be private when (1) the call is placed to a member of the public unconnected with the city in any fashion, (2) the call is made from a telephone extension that is not an emergency line or police line for the receipt of complaints from the public, and (3) the telephone line does not have a "beep" or other signal or warning that the call is being recorded.

Second, that the City's "consistent position has been that the recording was legal" is irrelevant if, in fact, that position is wrong and the recording was unlawful under the state or federal constitutions or the state or federal wiretap acts. Moreover, while that may have been the consistent position of the City in this litigation, a jury would certainly be entitled to conclude that the City knew or should have known that the recording was unlawful. In any event, there is no requirement under § 9-1-28.1(a)(1) that the means of intrusion be known to the violator to have been unlawful; indeed, the statute does not even explicitly require that the intrusion be intentional. *See* § 9-1-28.1(a)(1)(i) (listing three elements that must be established in order to recover for a violation of the right) and § 9-1-28.1(b) (providing that "[e]very person who subjects or causes to be subjected any * * * person * * * to a * * * violation of his or her right of privacy shall be liable"). Even if the statute required that the intrusion be intentional, that would not require knowledge that the intrusion was unlawful. *See State v. Foster*, 22 R.I. 163, 46 A. 833 (1900) ("Ignorance of the law will not excuse its violation * * * . * * * [I]t is enough that the act be knowingly committed. The law makes the act the offense, and does not go further, and require proof that the offenders intended, by the prohibited act, to violate the law.").

Accordingly, the City has not established legally or factually that it is entitled to summary judgment on plaintiffs' claim under R.I. GEN. LAWS § 9-1-28.1.

CONCLUSION

The evidence, viewed in the light most favorable to plaintiffs, shows that the recording of 755,000 calls to and from the PPSC over the course of approximately 6 months was unlawful and that doing so constituted a policy, custom, or practice of the City. In addition, there exist genuine issues of material fact whether the City violated the plaintiffs' constitutional, state statutory, and federal statutory rights. Accordingly, for these reasons, as elaborated above, this Court should deny the City's motion for summary judgment or, in the alternative, to dismiss.

By their attorneys,

**MURPHY & FAY, LLP**
127 Dorrance Street, 2nd Floor
Providence RI 02903
Tel : (401) 490-3200
Fax: (401) 490-3207

/s/ *Mark A. Fay*
Mark A. Fay # 4208
*mark@murphyandfay.com*

## CERTIFICATIONS

On October 23, 2006, I caused a true copy of the foregoing document to be filed electronically; it is available for viewing and downloading from the ECF system. Counsel for all parties to the action, listed below, have been served electronically through the ECF system.

/s/ *Mark A. Fay*

**Michael A. Calise, Esq.**

**Susan M. Carlin, Esq.**

**Thomas J. Cronin, Esq.**

**Stephen R. Famiglietti, Esq.**

**Kevin J. McAllister, Esq.**

**Kevin F. McHugh, Esq.**

**Dean G. Robinson, Esq.**

**George L. Santopietro, Esq.**

**George J. West, Esq.**

**Richard B. Woolley, Esq.**