**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**THOMAS WALDEN, et al.**
**Plaintiffs,**

**v.** **C.A. No. 04-304S**

**CITY OF PROVIDENCE, et al.**
**Defendants.**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PRETRIAL RULING ON DAMAGES**

## I. Introduction.

Plaintiffs in the above captioned matter join Defendants in their motion for a pretrial ruling on the issue of damages. However, Plaintiffs are not in agreement with Defendants' interpretation of the law with respect to damages based on grounds set forth below.

## II. Argument.

### A. An Interpretation of the Wiretap Statute Prohibiting Court Discretion in the Assigning of Damages is Consistent with Congressional Intent.

Defendants in their memorandum argue that recovery under 18 U.S.C. §§ 2510-2520 ("the Wiretap Act") is discretionary and a court may exercise its discretion and decline to award damages. Granted, the federal circuit courts are split as to when § 2520(c)(2) requires a court to assess mandatory liquidated damages against a liable party in an action under § 2520(a); however, the First Circuit has yet to address this controversy.

The Seventh Circuit, the first circuit to address this issue, determined that civil damages

under the Wiretap Act are mandatory. ***Rodgers v. Wood,*** 910 F.2d 444 (7th Cir. 1990). [1]In ***Rodgers***, the Seventh Circuit held that a district court does not have discretion under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. §§ 2510– 2520) to decline awarding damages for interception, disclosure, or intentional use of wire, oral, or electronic communications in violation of the Act. The court reasoned that, even though the Act states that the district court "may" assess damages, "may" is ambiguous and even though Congress increased tenfold the amount assessed as statutory damages and changed "shall" to "may," it would not draw the inference that an award of damages is discretionary with the court. The court stated that there was nothing in the legislative record explaining why Congress made the change from "shall" to "may," and it was hesitant to read a grant of discretion where none had been permitted in the past. In amending the damages section, Congress recognized that the new penalty structure would be too severe for some violations and addressed that concern by creating an exception for the interception of certain private satellite video communications. The fact that Congress chose to address concerns about the severity of the new penalty structure by creating a specific exception for certain actions suggested that it intended to limit the types of violations for which the penalties could be avoided, the court said. Accordingly, the court concluded, this conflicts with and ultimately defeats an inference that Congress intended to grant district courts the discretion to decide the cases in which the more severe penalties should attach.

Since ***Rodgers***, several of the circuit courts have leaned toward allowing discretion to the court. However, these determinations eviscerate the thrust and purpose of the statute on several levels. First, if damages are not mandatory the civil damages portion of the Act will be

[1] In ***Menda Biton v. Menda,*** 812 F. Supp. 283 (D.P.R. 1993), citing ***Rodgers v. Wood,*** 910 F.2d 444 (7th Cir. 1990), the court held the district court has no discretion in imposing statutory damages under the federal wiretapping statute.

insufficient to deter potential defendants from violating the Act because most private parties are left without incentive to bring suit against Wiretap Act violators. Secondly, practical enforcement issues peculiar to the Wiretap Act and the kind of activity the Act seeks to prevent make a mandatory liquidated damages clause particularly appropriate. As it is sometimes difficult, if not impossible, to determine actual damages caused by wiretapping, the valuation of damages becomes more and more difficult. Furthermore, the legislative history behind the 1986 Amendment indicates that the construction of §2520(c) (2) that would not award mandatory damages to aggrieved plaintiffs would be contrary to congressional intent.

At least one commentator makes a compelling argument that circuit courts that have not yet ruled on the construction of § 2520 should engage in a rigorous and thorough form of statutory construction that would lead to a determination that damages are mandatory, not discretionary under the act. *See* Ian K. Peterson, ***When "May" means "Shall": the Case for Mandatory Liquidated Damages under the Federal Wiretap Act*** 35 Stetson L. Rev. 1051, 1054 (2006) [hereinafter ***Mandatory Liquidated Damages***].

**1. The Use of "May" is not Invariably Permissive, particularly when a Permissive Interpretation is Contrary to Legislative Intent.**

In 1986 the Electronic Communications Privacy Act ("ECPA") amended the original Wiretap Act to include all electronic communications. Significantly, it changed the mandatory language of "shall" in the pre-1986 Act to "may" in § 2520(c)(2), increased the amount of damages under the Act, and created an exception to the damages rule for the interception of unencrypted satellite communication under § 2520(c)(1).

Some of the circuit courts that have addressed the change from "shall" to "may" have stopped at the plain language of the statute. However, courts will not apply the "plain meaning"

rule when it creates a result contrary to the intent of Congress or if it leads to an absurd result. *See* ***Mandatory Liquidated Damages*** at 1070-71. Arguably, "may" creates an ambiguity in the Wiretap Act, leading to an absurd result in some circumstances.

As a threshold issue the use of the word "may" is neither conclusive nor invariable. The United States Supreme court has held that "the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." ***Cortez Byrd Chips, Inc. v. Bill Harbert Construction,*** 529 U.S. 193, 198 (2000); *see also* Theodore Sedgwick***, A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law,*** 376 (2d ed. 1980) (stating that "where a statute directs the doing of a thing for the sake of justice, or the public good, the word 'may' is the same as the word 'shall.'"). Moreover, it was the intent of the 1986 amendment to strengthen the Act, not to weaken it, and to provide an incentive for private parties to come forward with suits against violators. In promulgating the statute, it was the intent of Congress to encourage those who wished to use new communication technologies and to deter those who wished to use these technologies without authorization. *Id.* at n.165.

At the same time, the ECPA 1986 amendment increased the minimum penalty from $1000 to $10,000. Some courts have reasoned that this increase in the minimum penalty would necessitate a provision whereby a court could exercise discretion in awarding damages. *See* ***Mandatory Liquidated Damages*** at 1072. However, the creation of § 2520 (c)(1) as an exception to § 2520 (c)(2) is relevant to the legislative intent and to this discussion. The original version of the 1986 amendment did not have a separate penalty provision for the viewing of unscrambled, unencrypted satellite video communication that is provided in § 2520 (c)(1) until Congress became concerned that the unintentional interception of satellite transmissions should

not be penalized as harshly as other types of wiretaps. This concern led to a two-tiered penalty structure:

> (c) Computation of Damages. -
>
> (1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:
>
> (A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.
>
> (B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.
>
> (2) In any other action under this section, the court may assess as damages whichever is the greater of -
>
> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
>
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

A comparison of the "two tiers" clearly sets forth why the mandate of §2520(c)(2) cannot be deemed to be discretionary. The clear mandatory language in § 2520 (c)(1) and the language Defendants argue is permissive in § 2520 (c)(2) sets forth an absurd result when read together:

> The less severe, but mandatory, penalties of § 2520 (c)(1) apply only to first or second-time violators. It is conceivable that a third-time violator could go unpunished by a particularly sympathetic district court that exercises discretion under § 2520 (c)(2) while a

> first-time violator suffers the mandatory penalties provided for in § 2520 (c)(1) over which the judge has no discretion.

***Mandatory Liquidated Damages*** at 1075.

This absurd result highlights the danger of a policy that grants broad discretion to district courts to award damages under the Wiretap Act or to award no damages at all. Instead, the creation of the more lenient penalty of § 2520 (c)(1) affirms congressional intent to punish harshly those who commit more serious violations under § 2520 (c)(2) with mandatory statutory damages. *Id.* at 1074.

**2. If Congress had Contemplated Judicial Discretion in Assigning Damages Congress would have Created Criteria to Guide that Discretion.**

Even in the jurisdictions in which a circuit court has determined trial courts may use discretion when awarding damages, district courts are left without criteria by which to guide that discretion. "Some of these troubled jurisdiction create their own criteria, piecing together the limited authority that is available from lower courts in other jurisdictions." *Id.* at 1054. For instance, in ***Goodspeed v. Harman***, 39 F.Supp. 2d 787 (N.D. Tex. 1999) the court specifically declined to adopt as a criterion the violator's ability to pay, while other courts determined that ability to pay is a factor that should guide courts in exercising discretion. ***Shaver v. Shaver,*** 799 F. Supp. 576 (E.D.N.C. 1992). Clearly the fact the legislature provided no criteria to guide the lower courts in exercising the discretion militates against the argument Congress intended damages to be discretionary rather than mandatory.

**3. The Mandatory Liquidated Damages Provision Lends itself to the Practical Enforcement of the Statute.**

The kind of activity the Act attempts to prevent lends itself to mandatory liquidated damages. While the assignment of damages for interception of satellite cable signals or for the

conversion of goods or services is rather simple, actual damages for use of a wiretap to eavesdrop, such as in the case at hand, are difficult to determine and make enforcement impractical, at best. Specifically, the difficulty of assessing damages in privacy suits makes the ability to recover substantial and mandatory damages for wiretapping an essential aspect of the Act. Congress recognized that often the loss is not an economic loss that can be proven, but however, a real loss that must be compensated. Consequently, "minimum statutory damages are necessary as a consistent, predictable surrogate for otherwise uncertain actual damages." ***Mandatory Liquidated Damages*** at 1082.

A discretionary interpretation of the damages provisions of the Act undermines a significant purpose of the damages provision, that is, the deterrence of private misconduct with the threat of strict enforcement. Therefore, for all the foregoing reasons, this Court must construe § 2520 (c)(2) as providing for mandatory liquidated damages.

**B. The Election of Recovery from either State or Federal Law Must be Made Post-Trial to Insure Plaintiffs Recover Fully under all Applicable Law.**

Plaintiffs do not dispute the general proposition that they may not recovery duplicative damages in this action. Defendants suggest much more, however. Defendants assert that Plaintiffs must now elect under which statute Plaintiffs may recover. This is not supported by any of the cases cited. Moreover, a close reading of the cases makes clear that any election that must be made should be made, and was in fact made in those cases, after the award of damages to Plaintiffs, not prior to trial.

Here, while some of the damages may be duplicative, others are not. While Plaintiffs assert that the more reasoned rule is to find that damages are mandatory under the federal Wiretap Act, should this court decide otherwise, Plaintiffs' election of state versus federal

damages would not be clear until after the court rules with respect to its exercise of discretion. The language in the state Wiretap Act is mandatory, whereas the federal Act is disputed. Thus, until it is determined whether and how much Plaintiffs would be entitled to under each of their claims, an election is premature.

In fact, the case cited by Defendants is instructive. In ***Freeman v. Package Machinery Co.*,** 865 F.2d 1331, 1345 (1st Cir. 1988) the First Circuit conceded that an employee who brought an action against his former employer under the ADEA and a Massachusetts antidiscrimination statute was not disqualified from receiving prejudgment interest on the common portion of the jury's award, although damages held to be recoverable under the state statute largely replicated those recoverable under the ADEA. The First Circuit upheld the district court's award of prejudgment interest on a state law claim despite the fact that such an award would not have been appropriate on the federal claims. "Where, as here, a state claim is decided by the court and a federal claim by the jury, an award of prejudgment interest on the former is not barred so long as state law allows it." *Id.* The court goes on to note that this is consistent with another First Circuit decision. The First Circuit in ***Schroeder v. Lotito*,** 747 F.2d 801, 802 (1st Cir. 1984) a copyright action brought under both state and federal law, the district court awarded an accounting of profits solely under Rhode Island law as the plaintiff had not given the notice of registration required under federal law for such an award. The court affirmed the district court award of "lost profits under Rhode Island law though unavailable under federal law and attorney's fees and costs under federal law though probably unavailable under state law." *Id.* Importantly, the court notes that "there is no basis for allowing the losing party to pick which of the overlapped awards it prefers to pay." *Id. See also* ***Doty v. Sewall,*** 908 F.2d 1053 (lst. Cir. 1990) ("Nor does the fact that the damages held to be recoverable under the state

law largely replicated those recoverable under the federal law disqualify plaintiff from receipt of prejudgment interest on the common portion of the award.); and ***Bradshaw v. School Board,*** 486 F.3d 1205 (11th Cir. 2007) (holding both federal and state statutes had to be applied to the extent possible so that no portion of the employee's injury would go unremedied due to a cap on damages under Title VII.).

In fact, in a Title VII claim the District Court for the District of Puerto Rico applied the Second Circuit holding that "where only a single award of damages, not segregated into separate components, is made, the preferable rule, we think, is that the successful plaintiff be paid under the theory of liability that provides the most complete recovery." ***Torres v. Caribbean Forms Manufacturer*****,** 286 F.Supp.2d 209 (D.PR 2003) *quoting* ***Magee v. United States Lines, Inc.*****,** 976 F.2d 821, 822 (2d Cir. 1992). Clearly, if the election is made now, this could not occur.

A plaintiff who prevails on both federal and state civil rights claims, is entitled to the "undiminished fruits of his state-law victory." ***Foley v. Lowell,*** 948 F.2d 10 (1st Cir. 1991). Therefore, Plaintiffs, if they prevail on both statutes, should be able to be awarded prejudgment interest provided by R. I. G. L. § 9-21-10. Moreover, any election of recovery should be made post-trial in order to insure Plaintiffs recover the most they are entitled to under all applicable laws.

Notably, the most compelling reason to refrain from choosing recovery from either the state or federal wiretap statutes at this time lies in the underlying dispute and divergent policy concerns of whether federal damages under § 2520(c)(2) are to be construed as either mandatory or discretionary. Assuming, *arguendo*, Defendants prevail in their argument that federal damages are purely discretionary, to the extent where the court could decide not to award <u>any</u> damages to Plaintiffs, Plaintiffs would have to rely upon R.I.G.L. § 12-5.1-13 or be denied

recovery. The Rhode Island statute uses mandatory language with respect to damages stating: "(a) Any person whose . . . communication is intercepted, . . . shall have a civil cause of action . . . and ***shall*** be entitled to recover from that person: . . . one hundred dollars ($100) per day for each day of violation, or one thousand dollars ($1000), whichever is higher." (*Emphasis added.*) Even Defendants in their memorandum concede that the state result is "unclear."

In sum, Plaintiffs cannot recover the same damages twice for the same injury. However, Plaintiffs can use parallel state and federal statutes to recover on different theories, such as utilizing the state statute to recover prejudgment interest. Furthermore, in this particular case, the mandatory language of the state statute provides a "safe harbor" for Plaintiffs as damages are clearly mandatory under the state statute. Therefore, this Court must refrain from ordering Plaintiffs to make this statute choice at this juncture of the proceedings.

**C. The Number of Days is Relevant to the Calculation of Damages.**

Plaintiffs do not dispute that it is the number of days and not the number of calls upon which a calculation of damages is based pursuant to both the state and federal Wiretap Acts. *See* ***Desilets v. Wal-Mart Stores, Inc.***, 171 F.3d 711 (1st Cir. 1999). And, while the number of calls intercepted may not be relevant for the purpose of damages, they would certainly be relevant for other purposes.

**D. In Addition to Nominal Damages, Plaintiffs may also Recover Attorneys' Fees and Punitive Damages pursuant to § 1983 against the Individual Defendants and against all Defendants pursuant to the Wiretap Act.**

Plaintiffs concede that they have not alleged an actual injury and thus would not be entitled to compensatory damages pursuant to § 1983. This, however, would not preclude an

award of punitive damages as it relates to the individual Defendants.[2] "In contrast, punitive damages may be awarded in a civil rights action for violations of a plaintiff's civil rights, without regard to actual or nominal damages." ***Bailey v. Albright*,** 2006 U.S. Dist. LEXIS 43452 (U.S.D. W.D. Pa.) *quoting* ***Alexander v. Riga***, 208 F.3d 419, 430 (3d Cir. 2000) ("Beyond a doubt, punitive damages can be awarded in a civil rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages."). *See also* ***King v. Macri*,** 993 F.2d 294, 298 (2d Cir. 1993); and ***Robinson v. Cattaraugus County*,** 147 F.3d 153, 161 (2d Cir. 1998) (holding that in cases brought under §1983, punitive damages are available regardless whether other damages have been awarded).

Nor, would this preclude an award of attorney's fees pursuant to § 1988. *See* ***Farrar v. Hobby*,** 506 U.S. 103 (1992) (holding that a civil rights plaintiff receiving nominal damages is a prevailing party eligible for attorney's fee award under 42 USCS 1988, but Federal Court of Appeals' reversal of fee award affirmed under the facts in that case).[3]

Defendants have cited no authority that would absolve them from paying attorneys' fees and punitive damages pursuant to the Wiretap Act. The plain and unambiguous language makes clear that both are available to Plaintiffs upon proof of the violations. Indeed, this Court ruled with respect to the motion for summary judgment that the City was an "entity" subject to the provisions of the Wiretap Act. Thus, in addition to nominal damages, Plaintiffs may recover attorneys' fees and punitive damages against the individual Defendants and as against the

[2] Plaintiffs do not dispute that punitive damages are not recoverable as against the non-individual defendants.
[3] In *Farrar*, the Plaintiff sought and failed to prove the existence of compensatory damages. Here, by stark contrast, the Plaintiffs have readily acknowledged that they seek only nominal damages and thus any award of attorney's fees would be justified as they were incurred pursuing a claim for nominal damages.

municipal Defendants, attorneys' fees pursuant to § 1988 and attorneys' fees and punitive damages pursuant to the Wiretap Act.[4]

Plaintiffs
By their attorneys,

/s/ Mark A. Fay
Mark A. Fay, #4208
Murphy & Fay, LLP
127 Dorrance St., 2nd Floor
Providence, RI 02903
401-490-3200
401-490-3207 (Fax)

/s/ Carolyn A. Mannis
Carolyn A. Mannis, #4275
170 Westminster Street, Suite 800
Providence, RI 02903
401-454-4466
401-351-3914 (Fax)

[4] The municipal Defendants claim without proper evidence or proof that Plaintiffs have not proven the elements necessary to entitle them to punitive damages, even if available. As this is an issue not properly raised here, it will not be addressed.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September, 2007, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document was served by electronic mail upon:

Dean G. Robinson, Esquire
670 Willett Avenue
East Providence, RI 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esquire
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
gsantopi@coilepore.com

Kevin F. McHugh, Esquire
Michael A. Calise, Esquire
City of Providence Department of Law
275 Westminster Street
Providence, RI 02903
kevin_mc1950@hotmail.com

Susan Marcotte Carlin, Esquire
Famiglietti & Carlin, Ltd.
The Lincoln Center, Suite 205
132 Old River Road
Lincoln, RI 02865
famcarltd@aol.com

/s/ Mark A. Fay
Mark A. Fay