**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, et al.

v. C.A. NO. 04-304A

CITY OF PROVIDENCE, et al.

**MUNICIPAL DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Now come the Defendants in the above-entitled matter, David N. Cicilline, Dean Esserman and the City of Providence, by and though its Treasurer, Stephen T. Napolitano ("Municipal Defendants"), and hereby move to quash the attached subpoena, which commands Defendant Dean Esserman to testify at trial, or in the alternative, for a Protective Order, pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure.

In support thereof, the Municipal Defendants rely on the accompanying memorandum of law.

Municipal Defendants,

By their Attorneys:
Joseph M. Fernandez, City Solicitor

/s/ Kevin F. McHugh
Kevin F. McHugh (#3927)
Senior Assistant City Solicitor

/s/ Michael A. Calise
Michael A. Calise (#6715)
Assistant City Solicitor

City of Providence Department of Law
275 Westminster Street, Suite 200
Providence, Rhode Island 02903
(401) 421-7740 ext. 333
(401) 351-7596 (fax)
kevin_mc1950@hotmail.com
mcalise@providenceri.com

Certificate of Service

I hereby certify that on this 29th day of February 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document was served by electronic mail upon:

Susan M. Carlin, Esq.
Stephen R. Famiglietti, Esq.
Famiglietti & Carlin, Ltd.
The Lincoln Center
132 Old River Road, Suite 205
Lincoln, Rhode Island 02865
famcarltd@aol.com

Mark A. Fay, Esq.
Murphy & Fay, LLP
127 Dorrance Street, 2nd floor
Providence, Rhode Island 02903
mark@murphyandfay.com

Carolyn A. Mannis, Esq.
170 Westminster Street, Suite 800
Providence, Rhode Island 02903
carolynmannis@hotmail.com

Dean G. Robinson, Esq.
670 Willett Avenue
East Providence, Rhode Island 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esq.
Peter J. Comerford, Esq.
Coia & Lepore, Ltd.
226 South Main Street
Providence, Rhode Island 02903
gsantopi@coilepore.com
pcomerfo@coialepore.com

/s/ Kevin F. McHugh
Kevin F. McHugh

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, et al.

v. C.A. NO. 04-304A

CITY OF PROVIDENCE, et al.

**MUNICIPAL DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

The Municipal Defendants move, pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure, to quash the attached subpoena, which commands Dean M. Esserman to testify at trial, or in the alternative, to issue a protective order.

**Argument**

Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure requires that courts quash or modify a subpoena which "subjects a person to undue burden" or which "requires disclosure of privileged or other protected matter, if no exception or waiver applies." This Court has previously ruled that all post-incident evidence is inadmissible at trial. See the attached Order, dated January 23, 2008 ("the Order"). The rulings contained in the Order now constitute the law of the case. Furthermore, "Esserman's order to shut down the system and the implementation of a 'new' recording system is not evidence of the City's policy during the period at issue in this case or the extent of involvement of the individual Defendants." Id. at 3. Therefore, the subpoena serves to require the disclosure of a matter protected by an order of this Court, and should therefore be quashed. Furthermore, this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense…." Fed.Rule Civ.Proc. Rule 26 (c). "Whether a subpoena subjects a witness to undue burden generally raises a question of the subpoena's reasonableness, which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 377 (5thCir.2004), quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463 (2d ed.1995) ("[T]his balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source."). Whether the witness has personal knowledge of the relevant facts is a consideration courts should consider in situations like the present one:

> The specific example that the committee cites of a protective order that the court can consider under clause (iv) of paragraph (3)(A) is one that insulates even an adverse party from having to attend the trial as a witness, as where that party has no personal knowledge of the facts. That can happen, for example, when the person who is formally the "party" is a decedent's personal representative with no personal knowledge of the matters in dispute, or an assignee with a like disability, etc.

> *Practice Commentaries* to Rule 45, C45-22, David D. Siegel.

Defendant Esserman has been sued solely in his official capacity as Chief of the Providence Police Department. As such, it has never been alleged or in any way evidenced that his conduct gave rise to any of the unlawful conduct alleged by Plaintiffs. Plaintiffs failed to depose Defendant Esserman at the appropriate time and, now, at this late date, have decided to probe what Defendant Esserman knew of the Total Recall System. This amounts to an attempt to conduct discovery at trial.

Defendant Mary Lennon testified that Defendant Esserman spoke with her regarding the Total Recall System on February 10, 2003, and that Defendant Cicilline

fired her later that day. See Deposition of Defendant Mary Lennon, attached, pages 29-30. Joseph Richardson testified that he met with Defendant Esserman on the same date and was asked for his resignation by Defendant Cicilline eight days later. See Deposition of Defendant Joseph Richardson, attached, pages 17; 53-54. There is no evidence in the record to support the assertion that either Defendant Cicilline or Defendant Esserman had any involvement in the issues giving rise to the allegations contained in Plaintiffs' complaint, or any involvement whatsoever in any relevant events predating February 10, 2003. This noninvolvement extends to but is not limited to the procurement, operation, and use of the Total Recall System. This Court has noted that "[i]t is undisputed that Police Chief Esserman ordered the system shut down when he learned of its existence." Order at 2; see also Walden v. City of Providence, 495 F.Supp. 2d 245, 250 (D.R.I. 2007) ("The last call was recorded and archived on February 10, 2003, when Police Chief Dean Esserman learned about Total Recall's existence and ordered it shut down….").

Additionally, an undue burden would be placed on the City and its Chief of Police, Defendant Esserman, if he were required to testify at trial. Defendant Esserman played no role in any relevant decision relating the claims of this suit.

The Chief of Police of a large municipality, when sued in his official capacity, cannot be expected to retain knowledge concerning the specifics of a system he did not procure or authorize. Plaintiffs would require that the Chief's limited resources in his capacity the City's Chief Law Enforcement Officer be tied up inquiring into unfamiliar details concerning an incident in which his only role has already been deemed both not relevant and unduly prejudicial. See the Order.

There is no legitimate purpose in requiring Chief Esserman to testify except to harass, annoy and cause an undue burden. An appearance at trial as a witness is time-consuming, burdensome, and disruptive. Of particular note in this case is that the Plaintiffs never served Defendant Esserman with interrogatories or deposed him. The Plaintiffs are attempting to conduct their discovery in the courtroom, in the middle of the trial.

## **Conclusion**

This Court has ruled that post-incident evidence is inadmissible at trial. Id. Furthermore, there is no basis for which the testimony of Defendants Cicilline or Esserman may be offered into evidence to prove any other allegation of Plaintiffs' complaint; therefore, the Municipal Defendants' Motion to Quash should be granted.

WHEREFORE, the Municipal Defendants pray that their Motion to Quash be granted, or, in the alternative, that their Motion for a Protective Order be granted.

Municipal Defendants,

By their Attorneys:
Joseph M. Fernandez, City Solicitor

/s/ Kevin F. McHugh
Kevin F. McHugh (#3927)
Senior Assistant City Solicitor

/s/ Michael A. Calise
Michael A. Calise (#6715)
Assistant City Solicitor

City of Providence Department of Law
275 Westminster Street, Suite 200
Providence, Rhode Island 02903
(401) 421-7740 ext. 333
(401) 351-7596 (fax)
kevin_mc1950@hotmail.com
mcalise@providenceri.com

Certificate of Service

I hereby certify that on this 29th day of February 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document was served by electronic mail upon:

Susan M. Carlin, Esq.
Stephen R. Famiglietti, Esq.
Famiglietti & Carlin, Ltd.
The Lincoln Center
132 Old River Road, Suite 205
Lincoln, Rhode Island 02865
famcarltd@aol.com

Mark A. Fay, Esq.
Murphy & Fay, LLP
127 Dorrance Street, 2nd floor
Providence, Rhode Island 02903
mark@murphyandfay.com

Carolyn A. Mannis, Esq.
170 Westminster Street, Suite 800
Providence, Rhode Island 02903
carolynmannis@hotmail.com

Dean G. Robinson, Esq.
670 Willett Avenue
East Providence, Rhode Island 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esq.
Peter J. Comerford, Esq.
Coia & Lepore, Ltd.
226 South Main Street
Providence, Rhode Island 02903
gsantopi@coilepore.com
pcomerfo@coialepore.com

/s/ Kevin F. McHugh
Kevin F. McHugh

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

Thomas Walden et al.

V.

City of Providence et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 04-304

TO: Dean Esserman

Providence, RI 02906

✓ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| U.S. District Court for the District of Rhode Island<br>One Exchange Terrace<br>Providence, RI 02903 | 4 (2nd Floor) |
| | DATE AND TIME<br>3/5/2008 9:00 am |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] (attorneys for Plaintiffs) | 2/26/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Mark A. Fay, Esq., 127 Dorrance St., 2nd Floor, Providence, RI 02903 (401) 490-3200
Carolyn Mannis, Esq., 128 Dorrance St., Prov., RI 02903 (401) 272-2002

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Attachment "A"

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________ DATE

______________________ SIGNATURE OF SERVER

______________________ ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al. | : | |
| | : | |
| v. | : | C.A. No. 04-304A |
| | : | |
| CITY OF PROVIDENCE, et al. | : | |

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion in Limine to Exclude All Evidence Relating to Incidents After the Discovery of the Total Recall System (Document Nos. 217, 218, 219 and 221 in C.A. No. 04-304; and Document Nos. 60, 61, 62 and 64/65 in C.A. No. 04-553). Plaintiffs object. (Document No. 242 in C.A. No. 04-304; and Document No. 84 in C.A. No. 04-553). A hearing was held on January 22, 2008.

**Discussion**

Defendants seek to exclude "post incident evidence," i.e., evidence not in existence when the Total Recall System was shut down on February 10, 2003. Defendants assert that such "post-incident evidence" includes Police Chief Esserman's Orders, City and State Police investigations, press coverage, implementation of the City's "new" recording system, and the City's termination of the employment of Defendants Lennon and Vieira and former Defendant Richardson. They argue that such "post incident evidence" is not relevant to any issues raised in this case (Fed. R. Evid. 401) and, if at all relevant, its probative value is substantially outweighed by the danger of unfair prejudice (Fed. R. Evid. 403). As to the "new" recording system implemented after the Total Recall System was shut down, Defendants further argue that it is not admissible under Fed. R. Evid. 407 as a subsequent remedial measure. Plaintiffs counter that Defendants' Motion is premature and that

Attachment "B"

the Court should not "exclude probative evidence in toto outside the context of trial without consideration for what purposes the evidence would be proffered." (Document No. 84-2 at 1).

Defendants rely primarily on Foley v. City of Lowell, 948 F.2d 10, 14 (1st Cir. 1991). In Foley, the First Circuit held that "post-event evidence" is not automatically admissible in a Section 1983 "custom or policy" case. It further concluded that such evidence is admissible "if, and to the extent that, [it] provide[s] reliable insight into the policy in force at the time of the incident." Id. (citing Bordanaro v. McLeod, 871 F.2d 1151, 1167 (1st Cir. 1989)). In response, Plaintiffs rely on Gentile v. County of Suffolk, 129 F.R.D. 435 (E.D.N.Y. 1990). In Gentile, the District Court allowed the introduction into evidence of a "State Investigative Commission" ["SIC"] report in a Section 1983 malicious prosecution case. Although the SIC report was created and issued after the incident at issue in the trial, the incident itself was not the subject of the SIC report. Rather, the SIC report was the result of a three-year investigation into allegations of a long-standing failure to address instances of police misconduct. Thus, the Court held that the SIC report was relevant to the plaintiff's allegations of a County custom or policy of failing to properly investigate and address instances of police misconduct, and that its probative value far outweighed any unfair prejudice. Id. at 445, 462. The holdings in both Foley and Gentile support Defendants' position.

The fundamental issue in this case is the propriety of procuring, installing and utilizing a telephone call recording system which was operational for approximately nine months. It is undisputed that Police Chief Esserman ordered the system shut down when he learned of its existence. (Document No. 191 at 5). Defendants' Motion seeks to exclude evidence of Chief Esserman's order and the "fallout" from that order. The "fallout" includes the various investigations, press coverage and reports, personnel actions and the implementation of a new

system. This Court agrees with Defendants that this "post incident evidence" does not generally provide insight into the City's policy during the period of recording or the individual Defendants' roles, if any, in the procurement, installation and/or operation of the recording system. For instance, Chief Esserman's order to shut down the system and the implementation of a "new" recording system is not evidence of the City's policy during the period at issue in this case or the extent of involvement of the individual Defendants.[1] Similarly, the post incident investigations are not probative of the issues raised in this litigation.

Even if such "post incident evidence" were relevant within the meaning of Fed. R. Evid. 401, this Court concludes that any limited probative value would be substantially outweighed by the danger of unfair prejudice to Defendants. See Fed. R. Evid. 403. As discussed above, the evidence at issue in this Motion in Limine is the "fallout" from the discovery and discontinuance of the recording system. This "fallout" is of highly questionable relevance and is universally and highly adverse to the City and the remaining individual Defendants as it involves employee disciplinary actions, criminal investigations, an abrupt system change and other critical commentary. Given the nature and breadth of such "post incident evidence," this Court concludes that a limiting instruction would not be effective in sufficiently reducing the danger of unfair prejudice to preclude exclusion under Fed. R. Evid. 403.

**Conclusion**

For the reasons discussed above, Defendants' Motions in Limine (Document Nos. 217, 218, 219 and 221 in C.A. No. 04-304; and Document Nos. 60, 61, 62 and 64/65 in C.A. No. 04-553) are

[1] This particular evidence is also inadmissible under Fed. R. Evid. 407 as a subsequent remedial measure. Rule 407 furthers the policy of encouraging individuals to take remedial measures by assurance that such measures cannot be used as evidence of past "culpable conduct."

GRANTED. However, in the event any such "post incident evidence" becomes relevant or admissible during the course of trial or is offered for a narrower purpose than generally establishing culpable conduct, Plaintiffs may seek the admission of such evidence and it will be considered by the Court on a case-by-case basis in the context of trial.

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 23, 2008

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, ET AL., Plaintiffs, | ) | |
| VS. | ) | C.A. NO. 04-304S |
| CITY OF PROVIDENCE, ET AL., Defendants. | ) | |
| JOHN C. CHMURA, ET AL., Plaintiffs, | ) | |
| VS. | ) | C.A. NO. 04-553S |
| CITY OF PROVIDENCE, ET AL., Defendant. | ) | |

DEPOSITION OF MARY FRANCES LENNON, taken on behalf of the Plaintiffs, in the above-entitled causes, pursuant to notice, before Nancy L. Simoes, R.P.R., a Notary Public in and for the State of Rhode Island, at the Law Offices of City of Providence Law Department, 275 Westminster Street, Providence, Rhode Island, on February 24, 2006, scheduled at 2:30 P.M.

[redacted]

Attachment "C"

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920

Q. All right. Where did that meeting take place?
A. At the Communications Department.
Q. Who else was present other than yourself and Chief Esserman?
A. No other parties present.
Q. Again, this meeting took place prior to the meeting with Mayor Cicilline; correct?
A. Correct.
Q. What was the conversation you had with Dean Esserman at that point?
A. The conversation was just an overview of my job responsibilities, an overview of the operations of the Communications Center.
Q. If I have got it right, he just asked you for the overview, and you told him what your job responsibilities were and all of that?
A. Uh-huh, uh-huh.
Q. After that, after you told him that, was there any more conversation after that?
A. No.
Q. Did you ever receive any documentation from Dean Esserman in regard to this resignation/termination -- strike that -- Chief Esserman?
A. No.
Q. Other than Chief Esserman, did you meet with anyone

that was pretty much.

Did you tell Mr. Richardson at that time you didn't think that was fair?

A. I don't recall.

Did he indicate to you at that time that he also had been given the same ultimatum, for lack of a better phrase?

MR. MCHUGH: Objection, form.

MR. ROBINSON: Objection.

A. I don't recall.

Q. Did you ever have any conversations with Chief Esserman about this problem with the management of the Communications?

MR. WEST: Objection.

MR. MCHUGH: Objection.

MR. ROBINSON: Objection to form.

A. Prior?

Q. Prior to termination?

A. Yes.

Q. How many times did you speak with Chief Esserman about this prior to your termination?

A. I believe once.

Q. Do you remember when that -- was it a meeting, was it over the phone?

A. It was a meeting.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS WALDEN, et als.
vs. C.A. No. 2004-304S
URBANO PRIGNANO, JR., et als.

THOMAS C. CHMURA, et als.
vs. C.A. No. 2004-553S
URBANO PRIGNANO, JR., et als.

DEPOSITION OF JOSEPH P. RICHARDSON, JR., a Defendant in the above-entitled case, taken on behalf of the Plaintiffs, before Linda L. Guglielmo, RPR-RMR, a Notary Public in and for the State of Rhode Island, at the offices of the Providence City Solicitor, 275 Westminster Street, Providence, Rhode Island on February 27, 2006 at 2:00 P.M.

Attachment "D"

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, RHODE ISLAND 02920
(401) 946-5500

answered.
MR. McALLISTER: Objection. Asked and answered.
Ms. MANNIS: Not answered. It was asked.
MR. McALLISTER: You might not like the answer, but he answered.
MS. MANNIS: I don't believe he answered the question. Yes or no, he either was or wasn't.
MR. CRONIN: He said no. You can look at the record, he said no.
Q. Yes or no?
A. No.
MR. WEST: Objection.
MR. ROBINSON: Objection.
MR. WEST: Move to strike.
MS. MANNIS: There is no one here to strike it.
MR. WEST: I'm making a note for the record. It's perfectly appropriate deposition procedure.
Q. What was your title after September 2001 for the City of Providence?
A. I don't know that we had titles.



Q. Was your computer seized by the police after the Total Recall system was disclosed to the public?
MR. WEST: Objection as to form.
MR. McALLISTER: Objection to form.
A. I'm not sure what you're asking.
Q. Was your computer ever seized by the police?
MR. WEST: Objection to form.
MR. McALLISTER: Objection to form.
A. I was told that computers were seized, and I think I recall Detective Killian telling me.
Q. Do you know what happened to them?
A. No.
Q. When did you leave the employment of the city?
A. It was some time in February of 2003.
Q. Do you remember when in February 2003?
A. I don't remember the date exactly.
Q. Was it after September 10, 2003?
A. I'm just not sure of the date.
Q. What were the circumstances under which you no longer were employed by the City of Providence?
A. I was asked to resign by the Mayor.
Q. Did he tell you the reasons why he wanted you to resign?
A. He said he had some difficulties with the management in communications, and he was making a



complete change.
Q. Do you recall if this was before or after the Total Recall system became published in the Providence Journal?
A. I think it was after.
Q. Did you tender your resignation?
A. Yes, I did.
Q. Was it effective immediately; did you leave two weeks later?
A. It was effective immediately. I was actually giving a statement to the State Police in my home when Mayor Cicciline called me.
Q. If I show you a copy of a statement, would this refresh your recollection as to the date?
MR. WEST: Date of what?
MS. MANNIS: The date he resigned.
MR. McHUGH: Is that his statement, the witness statement?
MS. MANNIS: Yes.
MR. SANTOPIETRO: Is that 2-18-03?
MR. McALLISTER: It appears to be.
Q. Is that the statement you were referring to?
A. Yes, correct.
Q. So provided that that is dated correctly, would that indicate the date that you resigned?



MR. McHUGH: Objection as to form.
A. It may have been. The day I was giving this statement in my home to Detective Killian, was the date that I received a phone call and was asked to resign and a police officer was sent to my home and he gave me a copy of a resignation letter that I signed.
Q. Do you know what the letter said?
A. I don't remember the wording. I recall it to be brief.
Q. Prior to your being transferred to the task force, what were the policies and procedures for recording calls that came in to either the fire department or the police department?
MR. SANTOPIETRO: Objection to form.
MR. WEST: Objection.
MR. McHUGH: Objection. Form.
MR. McALLISTER: Objection to form. You can answer.
THE WITNESS: Can you repeat the question for me, please?
Q. Take them one at a time, because the objection is probably that it's compound. Prior to your being sent to this task force in September of 2001 --
A. Public security task force.

was referring to.
Q. Do you recall saying to the police there's no way Sullivan or Simmoneau is going to tell you they wanted, you know, bathroom lines done and, you know, why would they want their own phone lines recorded?
MR. SANTOPIETRO: Objection.
MR. McHUGH: Objection.
MR. McALLISTER: Objection. Form. Context.
A. I'm not sure what the question is.
Q. I'm asking you if you recall saying that to the police?
THE WITNESS: Saying what again, please?
MR. WEST: Objection to form.
Q. "There is no way Sullivan and Simmoneau are going to tell you that they wanted, you know, bathroom lines done and, you know, why would they want their own phone lines recorded."
MR. SANTOPIETRO: Objection.
MR. WEST: Objection to form.
MR. McHUGH: Objection.
MR. McALLISTER: Objection.
A. I believe I had a discussion and when I gave



my statement to Detective Killian, which was characterizing my conversation with Director Viera, and I was asking about those specific emergency calls for service, and I think that's how I characterized it, saying, for example, that, you know, we wouldn't be recording bathroom lines, you know, or their private lines, their personal lines. I think that's the nature. If you're saying did I say that to the State Police, yes, I did. That's how I was characterizing it --
Q. Then did you tell the police that Manuel Viera said that's the way they wanted it?
MR. SANTOPIETRO: Objection.
A. I do recall him saying that.
Q. Who saying that?
A. Director Viera.
Q. So do you recall having a conversation with Mr. Viera whereby you indicated that there's no way that Sullivan or Simmoneau are going to tell you that they wanted, you know, bathroom lines down and, you know, why would they want their own phone lines recorded and he said that's just the way they wanted it?
MR. SANTOPIETRO: Objection.
MR. ROBINSON: Objection.



MR. McHUGH: Objection.
MR. WEST: Objection.
MR. McALLISTER: Objection.
A. Yes, I did have that conversation.
Q. When did you have that conversation with Manuel Viera?
A. Once again, in that period of time. I don't recall the exact date and time. It was around the time that we were inquiring about those lines with Chief Dutra, Chief Lanzi and Chief Rattigan.
Q. Do you recall telling the police that Colonel Prignano wanted it?
THE WITNESS: Did I say that?
MR. McHUGH: Objection.
MS. CARLIN: Objection.
A. No.
Q. You don't recall saying that to the police, that Manuel Viera said that to you?
A. That's not what you asked me.
MR. McHUGH: Objection.
MR. McALLISTER: Objection.
MS. CARLIN: Objection.
MR. ROBINSON: Objection.
THE WITNESS: Can you ask the question again please?



Q. Do you recall telling the police that Colonel Prignano -- that Manuel Viera told you that Colonel Prignano wanted all those calls recorded?
MR. WEST: Objection.
MS. SANTOPIETRO: Objection.
MR. McHUGH: Objection.
MS. CARLIN: Objection to form.
A. I recall saying that to Detective Killian.
Q. Do you recall Manuel Viera saying that to you?
MR. WEST: Objection.
MR. SANTOPIETRO: Objection.
MR. ROBINSON: Objection to form.
A. Yes.
Q. Did you have a password to the Total Recall system?
A. No.
Q. Did you ever direct a technician to remove a line from being recorded?
MR. McALLISTER: Objection to form.
A. No.
Q. Did you attend a meeting with Andy Rosenswag (phonetic) on February 10, 2003?
A. I'm not sure of the date, but I was at a meeting with Esserman and Rosenswag and people from communications, if that's the meeting you're

referring to.
Q. Was Major Sullivan and Laurenza (phonetic) there?
A. I believe so.
Q. Lieutenant Keith Tucker from IA?
A. Yes, I believe so.
Q. Manny Viera was there?
A. Yes.
Q. Is it your recollection that Dean Esserman was there?
A. If it's the meeting I'm thinking of.
Q. Was the Mayor there?
A. No.
Q. This memo refers to you as Deputy Director Joe Richardson, do you believe that to be yourself?
MR. WEST: Objection to form.
MR. ROBINSON: What memo?
A. My name is Joe Richardson.
MR. WEST: What memo?
Q. Since you left the employment of the city, have you had any conversations with Manuel Viera?
A. No.
Q. Have you had any conversations since you left the employment of the city with Mary Lennon?
A. Yes.
Q. When was the last time you spoke with her?



A. Approximately three years ago.
Q. Was it shortly after you left the city's employment?
A. Yes.
Q. What was the nature of that conversation?
A. She asked me if I would give her a job recommendation.
Q. And did you?
A. Yes.
Q. Since the institution of the lawsuit in question here, you know which lawsuit I'm referring to?
A. I think so.
Q. Have you had any conversations with Mary Lennon?
A. No.
Q. Have you had any conversations with any of the other defendants in this lawsuit since the inception of the lawsuit?
THE WITNESS: Can you tell me just so I'm sure who you're referring to?
Q. Urbano Prignano, Jr.?
A. No.
Q. David Cicciline?
A. No.
Q. Dean Esserman?
A. No.



Q. Vincent Cianci?
A. No.
Q. Manuel Viera?
A. No.
Q. We already discussed Mary Lennon, and you're Joseph Richardson. Steven Napolitano?
A. No.
Q. Do you know any of the plaintiffs in the lawsuit?
A. Yes.
Q. Have you had any discussions with any of the plaintiffs regarding this lawsuit?
A. Yes.
Q. Which plaintiffs?
A. James Rock.
Q. Who is James Rock?
A. Firefighter.
Q. When was the last time you spoke with him regarding this lawsuit?
A. It was shortly after I was noticed -- notified of the lawsuit. He teaches my sons, my children piano. He's a piano teacher in addition to being a firefighter.
Q. And what was the substance of the conversation that you had with James Rock?
A. I approached him when I was served notice of



the lawsuit and thought about it for a while and discussed it with my wife, and I came to a decision and I told him that I hoped that this lawsuit wasn't going to impact his relationship with my children teaching them piano.
Q. Did you discuss the substance of the lawsuit?
A. He said, "What lawsuit?" I said, "You're suing me." He said, "Well, that's just something to do with the city." I said, "Well, you're suing me personally, and me and my wife have decided that I just didn't want it to affect my kids." That's the last time I discussed it with him.
Q. Did you continue to use his services to teach your children piano?
A. He still teaches my youngest son piano, yes, he does.
Q. Have you had any conversations with any other plaintiffs regarding this lawsuit?
A. I don't think so.
Q. Are you aware that Major Simmoneau sent out an E-mail communication regarding the taping of telephone calls at the new Public Safety Complex?
MR. WEST: Objection as to form.
A. I was made aware of that.
Q. When were you first made aware of it?