UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al. | : | |
| v. | : | C.A. No. 04-304A |
| CITY OF PROVIDENCE, et al. | : | |

| | | |
|---|---|---|
| JOHN CHMURA, et al. | : | |
| v. | : | C.A. No. 04-553A |
| CITY OF PROVIDENCE, et al. | : | |

**MEMORANDUM AND ORDER**

These consolidated cases were tried from February 13, 2008 to March 24, 2008. The jury commenced deliberations on March 25, 2008 and returned its verdicts on March 26, 2008. The jury returned verdicts in favor of Plaintiffs on most of their claims. At the time of the verdicts, there remained 135 Plaintiffs consisting of City of Providence police officers, civilian police employees, firefighters and firefighters' family/friends; and effectively three Defendants – Manuel Vieira and Mary Lennon, in their individual capacities; and the City of Providence, by and through Mayor David Cicilline and Colonel Dean Esserman in their official capacities.

The jury found in favor of Plaintiffs on their constitutional claims (Counts I and II) and awarded nominal damages. The jury also found in favor of Plaintiffs on their invasion of privacy claim (Count V) and awarded nominal damages. Finally, the jury found in favor of Plaintiffs and against Defendants Vieira and City of Providence on their state and federal wiretap claims (Counts IV and VI). The jury also identified the specific number of days of violation which resulted in a

statutory damages award on Count VI pursuant to R.I. Gen. Laws § 12-5.1-13. The jury only found days of violation as to 64 of the 135 Plaintiffs, and thus only those Plaintiffs were awarded statutory damages. Judgment was entered on the verdicts on March 27, 2008 and amended on April 3, 2008. (Document Nos. 315 and 316).

There are presently several pending post-trial motions which are resolved herein.

**1. Plaintiffs' Motion to Correct Judgment**
**(Document No. 324)**

Pursuant to Fed. R. Civ. P. 59(e) and 60(a), Plaintiffs seek to correct the statutory damages awarded to five Plaintiffs. The Amended Judgment awards $100.00 to Patrick Leonard, $200.00 to Bonnie Benson, $300.00 to Gerald Carvalho, $100.00 to E. Christopher Petit and $500.00 to Robert Cataldo. Plaintiffs correctly point out, however, that R.I. Gen. Laws § 12-5.1-13 provides for "liquidated damages, computed at the rate of one hundred dollars ($100) per day for each day of violation, or one thousand dollars ($1,000), whichever is higher...." (emphasis added). Thus, the statute provides for a minimum award of $1,000.00, and the Amended Judgment should be corrected to reflect the minimum award of $1,000.00 each to these Plaintiffs on Count VI. Although otherwise preserving their objections to the verdicts, Defendants do not contest this Motion. See Document No. 337. Thus, Plaintiffs' Motion (Document No. 324) is GRANTED.

**2. Plaintiffs' Motion to Correct Judgment**
**(Document No. 325)**

Pursuant to Fed. R. Civ. P. 59(e) and 60(a), Plaintiffs move to correct an alleged "scrivener's error" as to the days of violation awarded under Count VI to Plaintiff John Chmura. Alternatively, Plaintiffs request a new trial under Fed. R. Civ. P. 59(a) solely on the issue of the amount of statutory damages awarded to Plaintiff Chmura.

The jury's verdict found only ten days of violation as to Plaintiff John Chmura. See Document No. 312 at 6. There is no ambiguity in the verdict form. The verdict form was received in open court and published by the Deputy Clerk; no request was made to poll the jurors as to any of their verdicts. Plaintiffs posit that the jury must have meant to award "102" days to Plaintiff Chmura and not just "10" days – in other words, Plaintiff Chmura's statutory damage award for Count VI should have been $10,200.00, not $1,000.00.

Plaintiffs have not shown an error correctable under Fed. R. Civ. P. 59 or 60 or the existence of grounds for a new trial. Plaintiffs rely solely on Plaintiffs' Exhibit 11 which includes a stipulation that Plaintiff John Chmura worked 102 days during the period in question. It is not a stipulation as to statutory liability. One of the factual issues presented to the jury was to determine "on how many particular days, if any, between May 23, 2002 and February 10, 2003 has each Plaintiff established by a preponderance of the evidence that he or she made or received telephone calls to and/or from the Providence Public Safety Complex which were intercepted?" The jury's answer as to Plaintiff Chmura was "10."

Plaintiffs' request that this Court significantly alter the verdict would impermissibly invade the fact-finding province of the jury. Plaintiff Chmura was not similarly situated with the other Plaintiffs. He was the only Plaintiff employed as a Police Patrol Officer during the relevant period. Plaintiff Chmura testified that he spent a substantial amount of his working time on the street in his patrol car. Plaintiff Chmura was cross-examined extensively, and he testified that on "most days" he was on the street in his patrol car and not working in the Public Safety Complex ("PSC"). He also testified thatMay 15, 2008 he did not have an office or cubicle assigned to him in the PSC. Finally, he testified that he did not have a cell phone at the time, and, thus, he could not call into the

telephone system at the PSC from his police cruiser. The jury could reasonably infer from Plaintiff Chmura's testimony that he spent "most days" on the street in his cruiser and primarily utilized the police radio in his cruiser to communicate. Based on the evidence presented at trial, it is reasonable that the jury found that Plaintiff Chmura did not meet his evidentiary burden of establishing that a phone call was made to and/or from the PSC on every day he worked. It is apparent from the verdict on Counts IV and VI that the jury found that Plaintiff Chmura did not meet that burden as to most days, and Plaintiffs have shown no grounds for disregarding the jury's clear verdict. Thus, Plaintiffs' Motion (Document No. 325) is DENIED.

**3. Plaintiffs' Motion to Correct (Document No. 327)**

Pursuant to Fed. R. Civ. P. 59(e) and 60(a), Plaintiffs seek to revise the judgment to reflect that the statutory damages assessed under Count VI are awarded separately against Defendants Vieira and City of Providence. Alternatively, Plaintiffs move for a new trial under Fed. R. Civ. P. 59(a) on this damages issue.

Basically, Plaintiffs seek double recovery. They want a full award of statutory damages assessed against the City of Providence and a full award assessed against Defendant Vieira individually. Plaintiffs' request is unsupported. First, in their Complaints, Plaintiffs lumped Defendants together and alleged as to Count VI that "[t]he actions of the Defendants as alleged, including, but not limited to installing, using, and maintaining the 'Total Recall' system violates R.I. Gen. Laws § 12-5.1-1, et seq." Plaintiffs did not seek individual damages, but rather demanded judgment against Defendants which included "not less than liquidated damages, computed at a rate of one hundred dollars ($100) per day for each day of violation, or one thousand dollars ($1,000), whichever is higher." That is what the jury awarded to Plaintiffs. Second, the verdict form did not

require the jury to separately find a number of days of violation as to each Defendant. That portion of the verdict form was combined, and Plaintiffs did not specifically raise this issue in their objections to the jury charge and verdict forms. Finally, only Defendants Vieira and City of Providence were found liable on Count VI. This is not a situation where Defendants Vieira and City of Providence independently intercepted and recorded telephone calls in violation of R.I. Gen. Laws § 12-5.1-1, et seq. The jury found Defendant Vieira liable in his individual capacity and found Defendant City of Providence liable for the acts of its agents, including Defendant Vieira.

There is nothing in R.I. Gen. Laws § 12-5.1-13(a)(1) to suggest that the General Assembly intended double recovery for the same "day of violation." Further, there is nothing in the jury's verdict to suggest that it intended double recovery. In fact, the jury's questions to the Court during deliberations suggest that they did not intend to award double recovery. Thus, Plaintiffs' Motion (Document No. 327) is DENIED.

**4. Plaintiffs' Motion for Prejudgment Interest (Document No. 328)**

Pursuant to Fed. R. Civ. P. 59(e) and 60(a), Plaintiffs move to alter the judgment to include prejudgment interest on the jury's award under Count VI. Rule 59(e) is the "proper procedural vehicle" for seeking prejudgment interest. Crowe v. Bolduc, 365 F.3d 86, 92 (1st Cir. 2004).

Plaintiffs seek prejudgment interest on the statutory damages awarded under Count VI (the state wiretap claim). The Rhode Island wiretap statute (R.I. Gen. Laws § 12-5.1-13) is silent on the issue of prejudgment interest. Thus, Plaintiffs look to R.I. Gen. Laws 9-21-10(a) which provides that:

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%)

> per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein.

While Plaintiffs concede that Defendant City of Providence is exempt from an award of prejudgment interest, they contend that prejudgment interest should be awarded against Defendant Vieira. This Court disagrees.

The Rhode Island Supreme Court has held that the prejudgment interest statute "serves two purposes: it promotes early settlements, and more importantly, it compensates persons for the loss of use of money that was rightfully theirs." Murphy v. United Steelworkers of Am. Local No. 5705, 507 A.2d 1342, 1346 (R.I. 1986) (emphasis added). In this case, Plaintiffs waived any claims for personal injury or actual damages, and sought only nominal, statutory and punitive damages. Plaintiffs concede that prejudgment interest is not available on awards for nominal or punitive damages. Thus, the issue is whether prejudgment interest is available on awards of "liquidated" or statutory damages under R.I. Gen. Laws § 12-5.1-13(a)(1).

In Murphy, 507 A.2d at 1346, the Supreme Court held that the term "pecuniary damages" in the prejudgment interest statute is a "synonym" for compensatory damages. It distinguished such damages from punitive damages designed to punish and nominal damages "awarded where it is clear that the plaintiff has sustained a loss but has failed to present evidence upon which a factfinder could ascertain the damages sustained by the plaintiff." Id. Under the particular circumstances of this case, the "liquidated" damages awarded under Count VI are more akin to nominal rather than compensatory damages.

Plaintiffs elected not to pursue actual damages under Count VI. Plaintiffs were awarded liquidated damages under R.I. Gen. Laws § 12-5.1-13(a)(1) which were set by the General Assembly in a per-day amount. Since liquidated damages are an alternative to proving actual damages, the

amount set by the General Assembly is necessarily an arbitrary amount which it believed sufficient to compensate an aggrieved person. It is beyond speculation to suggest that this per-day amount is intended to equate to the actual damages suffered by a prevailing plaintiff. The "liquidated" damages available under R.I. Gen. Laws § 12-5.1-13 are comparable to a civil penalty.

Since the "liquidated" damages awarded under Count VI are not compensatory in nature, an award of prejudgment interest is not required by R.I. Gen. Laws § 9-21-10(a). A number of other courts have declined to award prejudgment interest on analogous statutory damage awards. For instance, in Marshall v. Sec. State Bank, 970 F.2d 383, 385 (7th Cir. 1992), the Seventh Circuit held that prejudgment interest should not be awarded on a statutory damages award under the federal Truth in Lending Act. It reasoned that "[t]he statutory damages under TILA, if viewed as liquidated damages, represent no more than a rough guess on the actual damages...[and] [t]here is no reason to think that adding prejudgment interest improves upon the accuracy of this rough guess." Id. at 385-386; see also Joe Hand Promotions, Inc. v. Marius, No. 05 Civ. 8472, 2007 WL 2351065 at *5 (S.D.N.Y. July 3, 2007) (declining to award prejudgment interest under federal Communications Act "because Plaintiff is recovering statutory damages, not its actual damages, an award of prejudgment interest would result in a windfall, since Plaintiff was not deprived of the use of funds equivalent to the statutory damages being awarded); and Granville v. Suckafree Records, Inc., No. Civ.A. H-03-3002, 2006 WL 2520909 at *6 (S.D. Tex. June 28, 2006) (declining to award prejudgment interest under federal Copyright Act on recovery of statutory damages where "[t]here was no evidence of Plaintiff having suffered any actual damages or of Defendants having received any profits from Plaintiff's work, which are the circumstances where prejudgment interest is customarily awarded."). Accordingly, Plaintiffs' Motion (Document No. 328) is DENIED.

**5. Plaintiffs' Motion for New Trial (Document No. 329)**

Pursuant to Fed. R. Civ. P. 59(a), Plaintiffs move for a new trial against Defendant Mary Lennon on Counts IV and VI and on Count VI regarding the jury's failure to find any days of violation as to certain Plaintiffs.

As to Defendant Lennon, Plaintiffs contend that the jury's verdict in her favor on Counts IV and VI (the state and federal wiretap claims) is against the weight of the evidence. In particular, Plaintiffs argue that the jury's verdict that Defendant Lennon was not liable on the wiretap counts is inconsistent with the remainder of its verdict finding her liable for violating Plaintiffs' constitutional rights and for invasion of privacy. Further, Plaintiffs contend that the Court's response to a jury question was erroneous and prejudiced the jury as to the issue of liability and punitive damages on Counts IV and VI.

The jury was instructed on the different law applicable to each of Plaintiff's distinct claims. Further, the jury was instructed as to the applicable burden of proof and that "Plaintiffs must prove each element of their claims, by a preponderance of the evidence, against each Defendant before you can find liability as to that Defendant." Given the differences in the evidence as to the authority and involvement of Defendants Lennon and Vieira, it is not surprising that the jury could, and did, find Defendant Vieira, and not Defendant Lennon, liable on Counts IV and VI. Further, given the differences in the applicable law, it is not surprising that the jury found that Plaintiffs met their burden of proof as to some, but not all, claims made against Defendant Lennon. That is the province of the jury, and Plaintiffs have not established sufficient grounds for the Court to disregard the jury's findings.

As to the Court's response to the jury's question, Plaintiffs' argument as to the prejudicial impact of that response is speculative and unsupported. The jury asked several questions during deliberations including one about Question 6 on the verdict form, i.e., "why are we putting in the number of days worked?" Over objection from Plaintiffs' counsel, the Court provided the following written response to the jury:

> Question 6 does not ask for the "number of days worked." It asks on how many particular days, if any, between May 23, 2002 and February 10, 2003 has each Plaintiff established by a preponderance of the evidence that he or she made or received telephone calls to and/or from the Providence Public Safety Complex which were intercepted. The reason for Question 6 is that the state wiretap statute (R.I. Gen. Laws § 12-5.1-13) provides that "any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of this chapter...shall be entitled to recover from that person...liquidated damages, computed at the rate of $100.00 per day for each day of violation...."

Plaintiffs contend that this response "was law, which if appropriate, should have been included in the jury instructions by the Court." Document No. 329-2 at 3. However, neither Plaintiffs nor Defendants requested an instruction as to statutory damages or objected to the failure to include such an instruction in the jury charge. Plaintiffs argue that the absence of such an instruction precluded Plaintiffs' counsel from addressing the issue of liquidated damages in his closing argument. Plaintiffs' counsel contends that "the jury could have perceived Plaintiffs' counsel lack of addressing liquidating [sic] damages as an attempt to hide that fact from the jury members." Id. Again, Plaintiffs neither requested an instruction on "liquidated" or statutory damages nor permission to address the issue during their closing.

Frankly, it is apparent that Plaintiffs' counsel's strategy was to hide the availability of statutory damages from the jury and thus increase the likelihood of an award of punitive damages.

However, that strategy came with the risk that the jury would either speculate that a finding on the number of days was related to an award of damages or ask the question. The jurors asked the question, and they were given a direct and truthful response by the Court. After sacrificing two months of their time to serve as jurors, they were entitled to no less. The alternatives of refusing to answer the question or providing an incomplete or inaccurate response were simply not acceptable options. Plaintiffs have not established any grounds warranting a new trial as to Counts IV and VI.

Plaintiffs' remaining argument for a new trial is without merit. The jury found no days of violation as to those Plaintiffs who were the family/friends of Plaintiff firefighters. Thus, they received no statutory damages under Count VI. Plaintiffs contend that this was the jury's attempt to "control" the amount of damages awarded to Plaintiffs and that the finding is contrary to the "overwhelming evidence." Document No. 329-2 at 4.

There is another more plausible explanation. The jury concluded that Plaintiffs did not prove that the firefighters' "private" phone line was recorded. Although Plaintiff firefighters testified as to use of both the "private" line and the Fire Department's business lines, the family/friend Plaintiffs testified that they utilized only the "private" line. If the jury found that Plaintiffs failed to prove that the "private" line was intercepted and recorded, then it makes perfect sense that they would find no days of violation as to the family/friends. Plaintiffs' only evidence as to the recording of the "private" line came from their expert, Mr. Odom. Mr. Odom did not specifically discuss the recording of the "private" line in his expert report dated September 24, 2007. In his deposition on December 18, 2007, Mr. Odom identified two recorded extensions (2090 and 6090) which he equated to the "private" line. Mr. Odom reached his conclusion based on a multi-step process of elimination. Defendants unsuccessfully moved in limine to preclude Mr. Odom from offering his

opinion on the "private" line. See Document No. 245. However, Defendants' counsel thoroughly cross-examined Mr. Odom as to both the timing of and speculative basis for this portion of his opinion. Based on the evidence, it is quite plausible that the jury exercised its prerogative to disregard Mr. Odom's opinion on the recording of the "private" line. If so, it makes perfect sense that the jury would find no days of violation as to those Plaintiffs whose claims were based solely on interception of the "private" line. Accordingly, Plaintiffs have shown no basis for ordering a new trial on the issue of damages for these particular Plaintiffs.

For the foregoing reasons, Plaintiffs' Motion (Document No. 329) is DENIED.

**6. Defendants' Motions to Correct Judgment (Document Nos. 317 and 319)**

Pursuant to Fed. R. Civ. P. 60(a), Defendants Lennon and Vieira move to correct the judgment to eliminate an award of damages on Count II. Count II contains Plaintiffs' state constitutional claim. Count I contains their federal constitutional claim. Without objection from the parties and to simplify the issues for the jury, these claims were consolidated both in the Court's jury instructions and in the verdict form.

The jury returned a consolidated verdict on Counts I and II. Plaintiffs did not seek actual damages, and thus the verdict form directed an award of "$1.00 to each Plaintiff as nominal damages" as to Counts I and II. Plaintiffs also awarded punitive damages against both Defendants Lennon and Vieira on Counts I and II in the amount of "$1.00 for each Plaintiff." Based on the structure of the verdict form, the jury's intent was plainly to award a single recovery under Counts I and II. Thus, Defendants' Motions (Document Nos. 317 and 319) are GRANTED.

**7. Defendants' Motions for a Stay of Enforcement Action Pending Appeal (Document Nos. 318 and 333)**

Pursuant to Fed. R. Civ. P. 62(d), Defendants seek an order staying any enforcement action pending appeal without being required to post a supersedeas bond. Rule 62(d) provides that execution of a money judgment is automatically stayed upon the posting of a supersedeas bond. The bond requirement may be waived if "(1) the defendant's ability to pay is so plain that the posting of a bond would be a waste of money; or (2) the bond would put the defendant's other creditors in undue jeopardy." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st Cir. 2002).

Defendants rely on the first ground for waiver and contend that "Plaintiffs face no risk if a bond is not posted, and the expense would be a waste of money." Document No. 318 at 6. Defendants further argue that if the money is distributed now and their appeal is successful, there is no guarantee they could recover the money from all of the Plaintiffs who were awarded statutory damages. Id. Finally, they represent that "[a]ny ultimate recovery is backed by the full faith and credit of the City of Providence." Id. at 5.

Defendants have made a sufficient showing to obtain a waiver of the bond requirement. See Dillon v. City of Chicago, 866 F.2d 902 (7th Cir. 1988) (supersedeas bond waived pending appeal of judgment entered against city in employment discrimination action); Hurley v. Atlantic City Police Dep't, 944 F. Supp. 371 (D.N.J. 1996) (same); and Smith v. Village of Maywood, No. 84 2269, 1991 WL 277629 (N.D. Ill. Dec. 20, 1991) (supersedeas bond waived pending appeal of judgment entered against municipality in civil rights action). Thus, Defendants' Motions (Document Nos. 318 and 333) are GRANTED.

**8. Defendants' Oral Motions for Judgment as Matter of Law**

At the close of Plaintiffs' case, all Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50. The Court granted the Motion only as to Defendant Urbano

Prignano, Jr. and exercised its discretion to reserve ruling as to the other Defendants. Defendants renewed their Motions at the close of evidence and again after the jury's verdict was returned. Defendants have not supplemented their Oral Motions with any post-trial briefs and presumably rely on the arguments made in open court.

Under Fed. R. Civ. P. 50, the Court is tasked to determine if the jury's verdict is supported by sufficient evidence. The Court should not set aside the jury's verdict "unless the evidence was so strongly and overwhelmingly inconsistent with the verdicts that no reasonable jury could have returned them." Walton v. Nalco Chem. Co., 272 F.3d 13, 23 (1st Cir. 2001). In other words, after viewing the evidence and all reasonable inferences therefrom in the prevailing party's favor, relief from a verdict under Rule 50 is appropriate only if the sole conclusion reachable is that "there is a total failure of evidence to prove plaintiff's case." Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 29 (1st Cir. 2004). Defendants have not met this high burden and, although reasonable minds could differ as to the outcome of the various claims made in this case, there is no basis for this Court to disregard and set aside all or part of the jury's verdict. Viewed in Plaintiffs' favor, the evidence presented at trial and the reasonable inferences drawn from such evidence are sufficient to support the jury's verdicts as to liability and damages. Thus, for the reasons set forth below, Defendants' Oral Rule 50 Motions are DENIED.

### A. Non-testifying Plaintiffs

First, Defendant Lennon (joined by the other Defendants) moved to dismiss the claims of eleven Plaintiffs who did not testify at trial. In particular, these Plaintiffs are Brandon Reilly, Jordan Reilly, Kerrin Swann, Anthony Cataldo, Christina Cataldo, Joseph Cataldo, Peter McMichael, III,

Leanne Bretanha, Michaela Brodeur, Joseph Vingi, III and Sophia Vingi. These Plaintiffs are the minor children of Plaintiff firefighters. Although they did not personally testify, their fathers (all Plaintiff firefighters) testified as to their practice of speaking to their children utilizing the City's telephone system and the general (and in some cases specific) contents of those conversations. This testimony was corroborated in certain cases by the non-testifying child's mother or sibling. Although the eleven Plaintiffs in question were part of the "collective" verdict on Counts I, II and V, the jury did not find any days of violation as to any of these eleven Plaintiffs on Counts IV or VI. Thus, these Plaintiffs were not awarded any statutory damages under Count VI.

Defendants have offered no legal authority to support their argument that the failure to testify under these circumstances constitutes a failure of proof. These Plaintiffs' claims were supported by first-hand testimony from their parent(s) (and in some cases siblings) who participated in or witnessed the telephone conversations in issue. Defendants have not established any legally supported basis for setting aside the jury's verdicts and dismissing the claims of these eleven Plaintiffs. Thus, Defendants' Rule 50 Motion to Dismiss the claims of these Plaintiffs is DENIED.

**B. Final Policymaker**

With respect to Plaintiffs' constitutional claims (Counts I and II), the City of Providence and Defendant Vieira took particular exception to my legal determination that Defendant Vieira was a final policymaker for purposes of Monell liability. The jury was instructed that, "as a matter of law, Manuel Vieira possessed final authority to establish municipal policy with respect to the design, procurement, installation and operation of all communications equipment within the Providence Department of Public Safety." In its Motion for Summary Judgment, the City of Providence argued that Plaintiffs' constitutional claims should be dismissed because "no final policymaker for the

City...made 'a conscious choice among alternatives to tape all calls going into and out of the public safety complex.'" Document No. 191 at 24. Judge Smith denied the City's Motion because he determined that former Police Chief Prignano was a final policymaker (citing Young v. City of Providence, 396 F. Supp. 2d 125, 137-138 (D.R.I. 2005)) and that summary judgment was precluded due to the existence of factual issues as to Defendant Prignano's role in procuring the Total Recall System. Id. at 25.

At the close of Plaintiffs' case, this Court granted Defendant Prignano's Rule 50 Motion and dismissed him from the case. The City of Providence contends that this ruling should also have resulted in the dismissal of Counts I and II as to the Municipal Defendants because Monell liability had to be predicated on the actions of a final policymaker and the only final policymaker in the case, Prignano, was dismissed. This Court disagreed and held that Defendant Vieira, the City's Communications Director, was also a final policymaker for matters within his jurisdiction.

The City of Providence suggested that this ruling came out of thin air and conflicted with the law of the case as set forth in Judge Smith's Opinion and Order (Document No. 191) that "only" Prignano was a final policymaker. The City is wrong in both respects.

First, the issue of Defendant Vieira's status as a final policymaker was not presented to Judge Smith and not necessary for his Rule 56 determination. See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case."). Second, the Court did not pull this ruling out of thin air. In their Pretrial Memorandum, Plaintiffs asserted that both Defendant Prignano and Defendant Vieira were final policymakers. Document No. 258. Based on this argument, the Court analyzed the legal issue in the context of the relevant case law, the City's

Charter and the trial testimony including that of Defendant Vieira. Based on this analysis, the Court decided that it was appropriate to instruct the jury as to Defendant Vieira's status as a final policymaker.

In Young, 396 F. Supp. 2d at 143, Judge Smith recognized that "[f]inal policymakers come in more than one legal shape and size." He applied the First Circuit's "final authority" approach and found that the City of Providence Police Chief possessed final policymaking authority on training issues. Id. at 145. In making his decision, Judge Smith also considered the provisions of the City Charter governing the Department of Public Safety and found the Chief to be a "final policymaker" despite the fact that the Chief was subordinate to the Mayor and Public Safety Commissioner under the Charter. Id. at 144-146.

Defendant Vieira was employed by the City of Providence as its Director of Communications. Under its Home Rule Charter (§ 1001), the City has a Department of Public Safety consisting of three sub-departments: a Police Department, a Fire Department and a Department of Communications. The Department of Public Safety is headed by a Commissioner of Public Safety. However, each sub-Department has its own "chief executive officer." The Police and Fire Departments each have a Chief. The Department of Communications has a Director of Communications. The Department of Communications has "jurisdiction over all design, procurement, installation and operation of all municipal radio, television, teletype and other associated equipment." Providence Home Rule Charter, § 1001(c).

The evidence presented at trial showed that Defendant Vieira oversaw the preparation of a Request For Proposal regarding the telephone system at the City's new police and fire headquarters. The evidence also showed that Defendant Vieira reviewed the responsive bids in consultation with

one of his technicians and recommended that the City award the telephone contract to Expanets. See Plaintiffs' Ex. 1.4. There was no evidence that Defendant Vieira's decision to recommend Expanets as the "lowest qualified bidder" was subject to review or approval by the Commissioner of Public Safety or by the Mayor. Defendant Vieira forwarded his recommendation to Mr. Alan Sepe, the City's acting Director of Public Property, who in turn forwarded it to the City's Board of Contract and Supply. See Plaintiffs' Ex. 1.4a. The Board, not Defendant Vieira, ultimately awarded the contract to Expanets. See Plaintiffs' Ex. 1.218. However, neither the City nor Defendant Vieira offered any evidence that either Mr. Sepe or the Board did any independent review of the bids. Further, Mr. Sepe testified that he recommended the Expanets bid to the Board based on Defendant Vieira's recommendation to him. Mr. Sepe also testified that he had considered bids recommended by Defendant Vieira "many times" over the years and had never rejected any of his recommendations.

The evidence presented at trial and the City's Home Rule Charter both support the legal conclusion that Defendant Vieira was a final policymaker in the context of the claims presented by Plaintiffs. Similarly, in Young, 396 F. Supp. 2d at 145-146, Judge Smith concluded that the City's Police Chief possessed final policymaking authority over police training issues. Construing the same provision of the City's Home Rule Charter (§ 1001), Judge Smith concluded that the Police Chief "at least shared [the Public Safety Commissioner's] authority and was also delegated such authority by him." Id. at 145. The same rationale applies to Defendant Vieira's authority regarding the telephone system at the City's new police and fire headquarters. The authority to procure and implement the Total Recall System was possessed by Defendant Vieira by virtue of his position as Director of Communications, or at a minimum, such authority was delegated to him.

### C. Qualified Immunity

Defendants Lennon and Vieira also renewed their arguments that they are entitled to qualified immunity. Judge Smith rejected Defendants' qualified immunity assertions when he denied their Motions for Summary Judgment. Document No. 191 at 45-52. Although Defendants are not precluded from again raising the defense of qualified immunity in a Rule 50 motion, the Court must assess such defense in the context of the jury's verdicts and evaluate any disputed evidence in the light most favorable to the jury verdicts. Jennings v. Jones, 499 F.3d 2, 7 (1st Cir. 2007).

Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. Harlow v. Fitzgerald, 457 U.S. 800, 817-818 (1982). The First Circuit applies a three-part test which considers:

> (1) whether the claimant has alleged the deprivation of an actual constitutional right, (2) whether the right was clearly established at the time of the alleged action or inaction, and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.

Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir. 2001). Here, the jury found that Defendants Lennon and Vieira violated Plaintiffs' clearly established constitutional right to be free from unreasonable searches and seizures. The jury's verdicts in this regard are supported by sufficient evidence and are accepted by the Court in satisfaction of the first two prongs of the qualified immunity analysis. The final prong asks whether the public officials were "reasonably mistaken" as to the legality of their actions. Jennings, 499 F.3d at 18.

The evidence and the jury's verdicts as to punitive damages on Counts I and II, show that Defendants Lennon and Vieira were not reasonably mistaken. First, the jury awarded punitive

damages against both Defendants Lennon and Vieira on Counts I and II. Although the amount of punitive damages awarded was minimal, the jury was explicitly instructed that a finding of malice or reckless disregard of Plaintiffs' rights was required to award any punitive damages. Further, the evidence showed that the dispatchers working in the City's Communications Center were notified from the start of employment that their telephone calls were recorded. However, there was no evidence that the Department of Communications provided any similar notice to City employees subject to the Total Recall System. Further, there was no recorded announcement, beep or other notice provided in the telephone system to advise users that their calls would be recorded. The only notice provided was an email from a Police Administrator (Major Dennis Simoneau) sent out to certain employees under his command. Defendants' Ex. E. Major Simoneau did not work in the Department of Communications. Finally, there was no evidence presented that the Department of Communications sought legal advice from the City Solicitor's Office as to the legality of the Total Recall System or the need for notice.

This Court concurs with Judge Smith's earlier conclusion (Document No. 191 at 51-52) that "no reasonable official could have concluded that the alleged conduct of tapping and recording all lines into and out of the PPSC was permissible" and that neither Defendant Vieira (the Communications Director) nor Defendant Lennon (his Chief of Operations) are entitled to qualified immunity on Plaintiffs' constitutional or statutory claims. Thus, Defendants' Oral Rule 50 Motions are DENIED.

SO ORDERED.

/s/ Lincoln D. Almond

LINCOLN D. ALMOND
United States Magistrate Judge
May 15, 2008