UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS WALDEN, et al. | : | |
| | : | |
| v. | : | C.A. No. 04-304A |
| | : | |
| CITY OF PROVIDENCE, et al. | : | |

| | | |
|---|---|---|
| JOHN CHMURA, et al. | : | |
| | : | |
| v. | : | C.A. No. 04-553A |
| | : | |
| CITY OF PROVIDENCE, et al. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion and Supplemental Motion for Attorneys' Fees (Documents No. 330 and 431). Plaintiffs seek their attorneys' fees pursuant to 42 U.S.C. § 1988, R.I. Gen. Laws §§ 12-5.1-13 and 9-1-28.1(b), Fed. R. Civ. P. 54(d) and LR Cv 54.1. Additionally, Plaintiffs filed a Bill of Costs. (Document No. 323). The total amount of attorneys' fees and costs sought is $725,351.11. Defendants Object to Plaintiffs' Motions on various grounds and request a substantial reduction in fees and costs.[1] (Document No. 397). Following thorough briefing, a hearing was held on September 17, 2008. The Court has considered the fees and costs requested and has determined that Plaintiffs are entitled to recover $539,452.37 as their reasonable fees and costs in this litigation.

---

[1] Although the Municipal Defendants filed the Objection, Counsel for Mary Lennon and Manuel Vieira joined in the Objection at the hearing on the matter. Accordingly, the Court deems all Defendants to have objected to Plaintiffs' Motions and rejects Plaintiffs' waiver argument.

## I.    Background

These consolidated cases were brought by more than 100 Plaintiffs under 42 U.S.C. §

1983 and 18 U.S.C. § 2511 and various state-law statutes, alleging that their statutory and

constitutional rights were violated when a telephone recording system was installed at the

Providence Public Safety Complex. The cases were tried from February 13, 2008 to March 24,

2008. The jury commenced deliberations on March 25, 2008 and returned its verdicts on March

26, 2008. The jury returned verdicts in favor of Plaintiffs on most of their claims. At the time

of the verdicts, there remained 135 Plaintiffs consisting of City of Providence police officers,

civilian police employees, firefighters and firefighters' family/friends; and effectively three

Defendants – Manuel Vieira and Mary Lennon, in their individual capacities; and the City of

Providence, by and through Mayor David Cicilline and Colonel Dean Esserman in their official

capacities.[2]

The jury found in favor of Plaintiffs on their constitutional claims (Counts I and II) and

awarded nominal damages. The jury also found in favor of Plaintiffs on their invasion of privacy

claim (Count V) and awarded nominal damages.  Finally, the jury found in favor of Plaintiffs

and against Defendants Vieira and City of Providence on their state and federal wiretap claims

(Counts IV and VI).  The jury also identified the specific number of days of violation which

resulted in a statutory damages award totaling $526,700.00 on Count VI pursuant to R.I. Gen.

---

[2] The Complaint originally named as Defendants Joseph Richardson, the former Deputy Director for the Department of Communications for the City of Providence, and Vincent A. Cianci, Jr., the former Mayor of the City of Providence. By stipulation, on April 3, 2006 and April 19, 2006, respectively, Richardson and Cianci were dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(ii).  Additionally, former Providence Chief of Police Urbano Prignano, Jr was named as a Defendant in the original Complaint, but all claims against him were dismissed by the Court pursuant to Fed. R. Civ. P. 50 at the close of Plaintiffs' case.

Laws § 12-5.1-13.  The jury only found days of violation as to 64 of the 135 Plaintiffs, and thus only those Plaintiffs were awarded statutory damages.  Judgment was entered on the verdicts on March 27, 2008, and later amended on April 3, 2008 and May 15, 2008.  (Document Nos. 315, 316 and 370).

## II.    Legal Standards

### A.    The Award of Attorneys' Fees

A "prevailing party" is ordinarily granted its reasonable attorneys' fees under 42 U.S.C. § 1988(b) unless "special circumstances would render such an award unjust."  O'Rourke v. City of Providence, 77 F. Supp. 2d 258, 262 (D.R.I. 1999).  The Court's first task, therefore, is to determine whether Plaintiffs seeking a fee award can be considered prevailing parties.  This Court has noted that a plaintiff "need not achieve total victory in order to be deemed a 'prevailing' party."  Pontarelli v. Stone, 781 F. Supp. 114, 119 (D.R.I. 1992).  Instead, "[t]o prevail, a party must 'succeed on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit.'"  Boston's Children First v. City of Boston, 395 F.3d 10, 14 (1st Cir. 2005) citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The First Circuit Court of Appeals has noted that a plaintiff who is awarded nominal damages is a prevailing party.  See Boston's Children First, 395 F.3d at 14-15.

Even after the Court has analyzed whether the fee-seeking Plaintiffs are prevailing parties, the Court maintains broad discretion in determining a "reasonable" fee amount.  Id. Plaintiffs are required to submit sufficient documentation to support the hours and rates claimed in their fee request.  See O'Rourke, 77 F.Supp. 2d at 263.  If plaintiffs submit insufficient

documentation or do not otherwise present evidence that the fee they seek is reasonable, the Court may reduce the attorneys' fees awarded. Id.

In determining what constitutes a reasonable fee, the Court starts by calculating a lodestar. See Lipsett v. Blanco, 975 F.2d 934, (1st Cir. 1992). A lodestar is "the base amount of the fee to which the prevailing party is entitled...." Id. A lodestar is calculated by "multiplying the number of hours productively expended by counsel times a reasonable hourly rate." Id. In determining the lodestar, the first step requires ascertaining the number of hours spent by each attorney and then subtracting time that was "duplicative, unproductive, excessive, or otherwise unnecessary." Id. citing Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). Then, the Court must determine a reasonable hourly rate by "taking into account the 'prevailing rates in the community for comparably qualified attorneys.'" Id. citation omitted. Finally, once the hours and the rate are determined, the fee is considered "reasonable" but can be subject to an upward or downward adjustment in certain circumstances. Id.

## B.    The Award of Costs

Federal Rule of Civil Procedure 54(d) provides the basis for awarding costs of litigation. That rule states that, "costs...should be allowed to the prevailing party," "unless a federal statute, these rules or a court order provides otherwise." The expenses allowed as costs are set forth in 28 U.S.C. § 1920. In addition, 28 U.S.C. § 1924 and LR Cv 54 require the party seeking costs to document their requests with an affidavit and a memorandum of law specifying that the costs were actually performed and necessary to the litigation. Finally, LR Cv 54(e) provides that if

the parties are unable to resolve objections to the bill of costs, "the Court will make a final determination with respect to the taxation of costs."

### III.    Calculating the Award of Attorneys' Fees

In support of Plaintiffs' Application, Affidavits were filed by their counsel, Mark Fay, Carolyn Mannis, Steven Crawford, Lauren Jones and Maurene Souza.  Plaintiffs also submitted the LR Cv 54.1 Affidavit of V. Edward Formisano, a disinterested local attorney who stated that the rates charged by Plaintiffs' counsel are at or below market rate.  <u>See</u> Document No. 330-8. The Affidavits submitted by Plaintiffs' counsel describe each attorney's educational and professional background and detail the services provided during the litigation, as well as the hourly rate requested.  The total amount of fees requested was $235,300.00 for Mark Fay (941.2 hours at $250.00 per hour), $247,575.00 for Carolyn Mannis (990.3 hours at $250.00 per hour), $16,200.00 for Steven Crawford (108 hours at $150.00 per hour), $2,950.00 for Lauren Jones (11.8 hours at $250.00 per hour), $37,300.00 for Maurene Souza (149.2 hours at $250.00 per hour),  $39,420.00 for Attorney David Krech (197.1 hours at $200.00 per hour), $640.00 for Attorney Mark LaBollita (3.2 hours at $200.00 per hour), and $15,300.00 for Attorney Robert Thurston (76.5 hours at $200.00 per hour).  Additionally, Plaintiffs seek reimbursement of $28,368.00 for paralegal Kendra Lima (315.2 hours at $90.00 per hour) and $13,725.00 for paralegal Debra Mannis (152.5 hours at $90.00 per hour).

Plaintiffs allege that the hourly rates requested and time expended are reasonable and request a total attorneys' fee award of $644,278.00. Defendants assert that the attorneys' fees requested are unreasonable and request that the Court reduce the fee award for several reasons.

First, Defendants claim that Plaintiffs were not the prevailing party as to Defendants Cianci, Richardson and Prignano; second, Defendants claim that Plaintiffs' counsel performed duplicative work; third, Defendants assert that Attorneys Fay and Mannis failed to produce accurate contemporaneous time sheets; and fourth, Defendants assert that the Plaintiffs awarded nominal damages should not be considered prevailing parties.  In its analysis, the Court will consider each of these arguments, as well as several other issues relevant to the final calculation of the fee award.

### A.    Prevailing Party Status

The first issue is whether the Plaintiffs are "prevailing parties" entitled to fees under the Act.  Plaintiffs point to their recovery of statutory and nominal damages and argue that they are prevailing parties.  Defendants claim that the <u>de minimus</u> nature of the nominal damages awarded should factor into the Court's analysis, and in any event, that Plaintiffs should not be allowed to recover their attorneys' fees against former Defendants Cianci, Richardson and Prignano because they did not "prevail" against those three Defendants.

In this case, the Plaintiffs sought only statutory and nominal damages, they did not seek recovery of actual or compensatory damages.  The jury awarded some Plaintiffs only nominal damages, but this fact does not dissuade the Court from concluding that Plaintiffs were "prevailing parties" as they succeeded in whole or in part on all counts.  Accordingly, Plaintiffs are entitled to recover their reasonable attorneys' fees under the Act.

It is undisputed, however, that Plaintiffs did not prevail in their claims against former Defendants Cianci, Richardson or Prignano.  Cianci and Richardson were voluntarily dismissed

from the case, while Prignano was dismissed by the Court pursuant to Fed. R. Civ. P. 50. Accordingly, it is not reasonable to require the Municipal Defendants and Defendants Vieira and Lennon to pay the fees associated with Plaintiffs' unsuccessful case against these Defendants. The time charges allocated to work concerning only these Defendants total $50,306.50. In calculating the final attorneys' fee award, therefore, the Court will reduce the total award by $50,306.50.

**B.     Hourly Rates Charged**

As previously noted, the proposed rate for Attorneys Fay, Mannis, Jones and Souza is $250.00 per hour. The proposed rate for Attorneys Krech, LaBollita and Thurston is $200.00 per hour. The proposed rate for Attorney Crawford is $150.00 per hour. The proposed rate for paralegals Mannis and Lima is $90.00 per hour. Defendants request that all of the attorneys' rates be reduced with the exception of Steven Crawford. This Court has carefully considered the skill and experience of these attorneys, as well as the Affidavit submitted in accordance with LR Cv 54.1, and the Court rejects the Defendants' proposed reductions in counsels' hourly rates. Attorneys Fay and Mannis acted as co-counsel in this case, and a rate of $250.00 per hour is reasonable for their services as co-lead trial counsel. The Court also finds that the hourly rates requested by Lauren Jones ($250.00 per hour), David Krech ($200.00 per hour), Mark LaBollita ($200.00 per hour) and Robert Thurston ($200.00 per hour) are reasonable as requested. Finally, the Court finds that a reasonable hourly rate for Maurene Souza is $200.00 per hour. Ms. Souza is a skilled attorney, but has far less experience (six years as a practicing lawyer) than Attorneys Fay, Mannis and Jones – the other attorneys in this litigation that charged a rate of $250.00 per

-7-

hour.  Also, reviewing the work performed, it appears Ms. Souza primarily performed behind-the-scenes legal research and writing.  Accordingly, a reduction to $200.00 per hour in her requested rate is appropriate.  Finally, the Court finds that the rate of $90.00 per hour for the two paralegals is within market range.

### C.    Amount of Time Requested

Defendants raise two issues with the amount of hours requested.  First, they claim the total amount of time should be reduced because of duplication; and second, they request that the amount of time be reduced because Attorneys Fay and Mannis failed to maintain contemporaneous time records.

In support of their claim that Plaintiffs' attorneys performed duplicative work, Defendants argue that Plaintiffs should not be permitted to recover fees for non-courtroom work performed by more than one attorney, citing counsels' time charges for meetings between attorneys and multiple attorneys reviewing the same document.  This Court has reviewed the time entries and does not find that they are unreasonably or excessively duplicative.  As stated, 135 Plaintiffs remained at the close of the case, and Plaintiffs had two lead attorneys. With a case of this size, counsel is necessarily required to collaborate and communicate with co-counsel.  Moreover, Plaintiffs cannot be faulted for having two attorneys at trial, when for most of the case, Defendants had five attorneys that collaborated on strategy and shared responsibilities.  Accordingly, the Court is not persuaded that Plaintiffs' fee request should be reduced for duplicative work.

However, the Court is troubled by Attorney Fay's and Attorney Mannis' failure to maintain contemporaneous time records.  In 1984, the First Circuit Court of Appeals stated that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." Grendel's Den, 749 F.2d at 952 (emphasis added).  Although the record does not suggest that Attorneys Fay or Mannis submitted time charges for work not completed, the absence of contemporaneous time records creates significant uncertainty as to the exactness of the records. Attorneys Fay and Mannis concede as much.  In fact, at the hearing on September 17, 2008, Attorney Mannis stated, "Were our contemporaneous time records exact?  No.  We did the best we could..."  Attorney Mannis noted that because they did not have contemporaneous time records for all of their time, both Attorney Fay and Attorney Mannis used "backup" to create their entries.  She explained that Attorney Fay documented his time, "according to other peoples' contemporaneous time sheets, the court docket, and the file itself."  Document No. 429-2. Attorney Mannis also failed to maintain complete contemporaneous records, although she did maintain some contemporaneous records.  Attorney Mannis noted that when she completed her time records, she gave priority to matters which she needed to timely bill to other clients, and therefore did not always have complete records as to this case.

Both Mr. Fay and Ms. Mannis emphasized to the Court that their failure to capture their time contemporaneously resulted in their billing less than the hours actually worked.  While Attorneys Fay and Mannis may well have been diligent in creating their time records and conservative in billing their time, this does not persuade the Court to allow Attorneys Fay and

-9-

Mannis to recover the entire fee they have applied for. The First Circuit decisively and plainly stated in <u>Grendel's Den</u> that contemporaneous time records are required for a full fee award and failure to do so calls for a "substantial reduction" and potentially "disallowance." This Court, following this clear First Circuit precedent, will substantially reduce the total hours requested by 20% for Attorney Fay and 15% for Attorney Mannis.

### D.    Fees for Expert Witnesses

Next, Defendants contend that the fees for Plaintiffs' three expert witnesses, William Odom, Alex Lefferts and Edward Baker should not be recoverable as a part of the Plaintiffs' attorneys' fees. Plaintiff originally sought to recover the expert fees as a portion of its Bill of Costs, but have alternatively requested that it be included as a fee or cost under the state wiretap statute. Defendants object to any recovery of Plaintiffs' expert witness fees. The Court finds that Plaintiffs are entitled to recover a reasonable fee for expert witness testimony.

In order to prevail, Plaintiffs were required to prove that the telephone calls into and out of the Providence Public Safety Complex were recorded. Defendants did not stipulate as to the capability of the Total Recall System, its operation or whether it did in fact record phone calls. Thus, Plaintiffs were required to retain an expert to conduct a forensic analysis of the computer server. Plaintiffs were not relieved of their burden of proof when certain witnesses currently or formerly employed by the City testified as to the capability of the system, since those witnesses did not have actual personal knowledge as to the operation of the Total Recall System. The Rhode Island State Wiretap act states that a prevailing party is entitled to an award of "[r]easonable attorneys' fees and other litigation disbursements reasonably incurred." R.I. Gen.

Laws § 12-5.1-13(a)(3). The Court will award the Plaintiff its expert witness fees under this statute as the introduction of expert testimony was "reasonably incurred."

The Court's next task is considering the reasonableness of the expenses sought. Although expert testimony was necessary to Plaintiffs' case, Plaintiffs have failed to demonstrate that all of the expert fees incurred were reasonable. Plaintiffs, therefore, are not entitled to recover the entire fee requested.

First, the Court does not find it reasonable that the Plaintiffs seek to collect fees for three experts. Plaintiffs are entitled to collect fees for their testifying expert, Mr. William Odom, but not for Mr. Alex Lefferts or Mr. Edward Baker, the two other retained experts who did not testify. Plaintiffs have not adequately demonstrated why they needed three expert witnesses, and the documentation supporting the role that Mr. Baker and Mr. Lefferts played in this litigation is lacking. Plaintiffs seek reimbursement of $4,033.97 for Mr. Baker and $1,625.00 for Mr. Lefferts. These requests are disallowed.

Next, the Court considers the fees charged by Mr. Odom and the expenses he incurred traveling to Providence, Rhode Island from Houston, Texas throughout the course of the litigation. During the course of this litigation, Mr. Odom apparently was employed by Acquisition Data, Inc., and then by Integrity Partners and finally by StoneTurn Group LLP. Also during the course of the litigation, his hourly rate increased from $250.00 per hour to $325.00 per hour. By comparison, Plaintiff's initial expert, Mr. Baker, charged an hourly rate of $100.00 per hour. An hourly rate of $325.00 per hour is not reasonable in this case, given that the initial

-11-

rate was $250.00 per hour and that Mr. Baker, an apparently comparable expert[3], charged a rate of $100.00 per hour. Accordingly, Mr. Odom will be compensated at his initial rate of $250.00 per hour. According to the bills provided by Plaintiffs, Mr. Odom spent a total of 101.75 hours completing work on this matter. Accordingly, he is entitled to a fee of $25,437.50.

Next, the Court considers whether the expenses incurred by Mr. Odom were reasonable. Again, Plaintiffs' supporting documentation is inadequate. Plaintiff provides no receipts for Mr. Odom's hotel expenses, meals or transportation. The Court has reviewed the bills provided, and is left with many concerns about the charges on the bills. For example, Plaintiffs seek fees for Mr. Odom's dinner on December 3, 2007 for $90.63, and on December 19, 2007 for $93.00. Moreover, Plaintiffs seek fees for two separate car rentals in the amounts of $590.38 and $556.12. There is no indication of the length of rental, the type of car rented or the need for the rental. Additionally, for three nights between December 17 and December 19, 2007, Plaintiff seeks fees for hotel stays totaling $1,128.79. According to the reimbursable expenses sheet submitted, Mr. Odom incurred hotel expenses in both Boston and Providence on December 17, 2007. This is unexplained. Also, Plaintiffs seek fees for a hotel stay the evening of December 4, 2007 for $557.32. The list of unexplained, facially unreasonable expenses is long. Without any documentation or explanation as to the charges incurred, the Court concludes that they are unreasonable. In total, Mr. Odom's subsistence request totals $7,160.09. Given the lack of documentation and the Court's finding that the expenses documented are not reasonable, the

---

[3] The Court has not weighed the qualifications of Mr. Baker, however, the Plaintiffs represent that the sole reason that he failed to testify is that he was called into active duty in Iraq. As such, the Court assumes the Plaintiffs viewed Mr. Baker as equally qualified as Mr. Odom.

Court will reduce the total allowed by 50%.  Plaintiffs are entitled to collect $3,580.05 for Mr. Odom's travel and food expenses during the course of the litigation.

### IV.    Calculating the Award of Costs

The Court has reviewed the costs sought by Plaintiffs and has concluded that Plaintiffs may recover $15,619.57.  A detailed memorandum concerning Plaintiffs' taxable costs was prepared by Court ADR Administrator Berry Mitchell and is attached to this Memorandum and Order.  The Court accepts and adopts Mr. Mitchell's conclusions in their entirety and incorporates them herein by reference.

### V.    Conclusion

Plaintiffs' final award of fees and costs totals $539,452.37 and includes $15,619.57 in costs, $494,815.25 in attorneys' fees, and $29,017.55 in expert witness fees.

SO ORDERED.

   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 15, 2008

-13-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

THOMAS WALDEN, ET AL
        **Plaintiffs**        )

      v.                )        C.A. 04-304A

                          )

CITY OF PROVIDENCE        )

        **Defendants**      )

## INTERNAL MEMO
## ON PLAINTIFF'S MOTION
## FOR BILL OF COSTS

On March 27, 2008, Judgment entered in favor of the Plaintiffs on Counts I-VI. As prevailing parties and pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54, the Plaintiffs filed their Bill of Costs on April 10, 2008 (Document No. 323). The Bill of Cost sought a total award in the amount of $81,073.11. The costs sought are broken down as follows:

| | |
|---|---|
| Fees of the Clerk: | $0 |
| Fees for service of summons and subpoena | $1,453.03 |
| Fees of the court reporter | $9,405.35 |
| Fees and disbursements for printing | $8,587.56 |
| Fees for witnesses (itemize on page two) | $60,540.22 |
| Fees for exemplification and copies of papers | $0 |
| Docket fees under 28 U.S.C. 1923 | $300.00 |
| Costs as shown on Mandate of Court of Appeals | $0 |
| Compensation of court-appointed experts | $0 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 | $0 |
| Other costs | $788.95 |
| **TOTAL** | **$81,073.11** |

On June 12, 2008, the clerk taxed costs, denying Plaintiffs request to tax fees for expert witnesses in the amount of $60,540.22 and "other costs" totaling $786.95. The clerked entered a final award of costs in the amount of $19, 745.94 (Document No. 386). The final award is set forth below:

| | |
|---|---|
| Fees of the Clerk: | $0 |
| Fees for service of summons and subpoena | $1,453.03 |
| Fees of the court reporter | $9,405.35 |
| Fees and disbursements for printing | $8,587.56 |
| Fees for witnesses (itemize on page two) | $0 |
| Fees for exemplification and copies of papers | $0 |
| Docket fees under 28 U.S.C. 1923 | $300.00 |
| Costs as shown on Mandate of Court of Appeals | $0 |
| Compensation of court-appointed experts | $0 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 | $0 |
| Other costs | $0 |
| **TOTAL** | **$19,745.94** |

What follows is an evaluation of Plaintiff's objections to the clerks taxation of costs entered on June 12, 2008. I have also addressed herein, objections raised by the Defendants to costs awarded to the Plaintiffs by the clerk. The Municipal Defendants were joined by Defendants Mary Lennon and Mauel Vieira, both of whom adopted by reference the Memorandum of Law filed by counsel on behalf of the Municipal Defendants.

## DISCUSSION

The power of a district court to deny recovery of costs that are allowed under Rule 54(d) "operates in the long shadow of a background presumption favoring cost recovery for prevailing parties." In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956, 962 (1st Cir.1993). When denying costs, "there is also fairly general agreement that a district court may not exercise its discretion to disallow a prevailing party's costs in whole or in part without articulating reasons." Id at 963. While there is a presumption favoring an award of costs to the prevailing party, "...Rule 54(d) confers no discretion on federal courts independent of the statute to tax various types of expenses as costs..."Id.

Rule 54(d) entitles the prevailing party to costs "as of course ... unless the court otherwise directs." Riofrio Anda v. Ralston Purina Co., 772 F. Supp. 46, 54 (D. Puerto Rico 1991), citing Farmer v. Arabian American Oil Co., 379 U.S. 227 (1964). The language "unless the court otherwise directs" is a discretionary grant of power that the Supreme Court has indicated should be exercised "sparingly" when considering whether to allow costs not expressly provided for by statute. Id at 235.

The costs which may be recovered by the prevailing party are set forth at 28 U.S.C.A. § 1920. A judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 U.S.C.A. § 1828].

## EXPERT WITNESS FEES

### I.   PLAINTIFFS FIRST ARGUMENT

**A.   Expert Assistance was Necessary, Essential and Crucial to the Resolution of the Case Giving Rise to Exceptional Circumstances Requiring the Court to Exercise its Equitable Discretionary Authority to Tax as Cost the Fees of its Experts in Excess of the Statutory Allowances Established in 28 U.S.C. § 1821.**

The Plaintiffs have objected to the clerk's denial of expert witness fees in the amount of $60,540.22. In support of their claim for these fees, the Plaintiffs argue that "expert assistance was necessary, essential and crucial to the resolution of the case".[1] Indeed, in Plaintiff's view, due to "exceptional circumstances" the Court must exercise its equitable discretionary authority and tax as cost the fees of its experts in excess of the statutory allowances established in 28 U.S.C. § 1821.[2]

---

[1] See: Plaintiff's Memorandum In Support of Plaintiff's Objection To the Clerk's Denial of Claims Related to Witness Fees and Reply to Defendants Objection to Cost Awarded To Plaintiff at p 2.

[2] Id at p 4.

Page 3

28 U.S.C.A. § 1821 provides as follows:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

(2) As used in this section, the term "court of the United States" includes, in addition to the courts listed in section 451 of this title, any court created by Act of Congress in a territory which is invested with any jurisdiction of a district court of the United States.

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle. Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services.

(3) Toll charges for toll roads, bridges, tunnels, and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt), shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

(3) A subsistence allowance for a witness attending in an area designated by the Administrator of General Services as a high-cost area shall be paid in an amount not to exceed the maximum actual subsistence allowance prescribed by the Administrator, pursuant to section 5702(c)(B) of title 5, for official travel in such area by employees of the Federal Government.

(4) When a witness is detained pursuant to section 3144 of title 18 for want of security for his appearance, he shall be entitled for each day of detention when not in attendance at court, in addition to his subsistence, to the daily attendance fee provided by subsection (b) of this section.

(e) An alien who has been paroled into the United States for prosecution, pursuant to section 212(d)(5) of the Immigration and Nationality Act (8 U.S.C. 1182(d)(5)), or an alien who either has admitted belonging to a class of aliens who are deportable or has been determined pursuant to section 240 of such Act (8 U.S.C. 1252(b) [FN1]) to be deportable, shall be ineligible to receive the fees or allowances provided by this section.

(f) Any witness who is incarcerated at the time that his or her testimony is given (except for a witness to whom the provisions of section 3144 of title 18 apply) may not receive fees or allowances under this section, regardless of whether such a witness is incarcerated at the time he or she makes a claim for fees or allowances under this section.

The usual rule followed by federal courts and acknowledged by the Plaintiffs as such, is that expert witness fees cannot be recovered as costs beyond the statutory allowances for attendance, mileage and subsistence provided in 28 U.S.C. § 1821.[3]   Indeed, "three U.S. Supreme Court decisions since 1987 have specifically held that a party's expert witnesses are only entitled to the regular statutory witness fees allowed by § 1821. See Crawford Fitting Co. v. J.T. Gibbons, Inc. 482 U.S. 437, 442 (1987); West Virginia University Hospitals, Inc. v. Robert Casey, 499 U.S. 83, 86 (1991) and Arlington Central School Board of Education v. Murphy, 548 U.S. 291, 301 (2006). Relying upon what the court referred to as "clear Supreme Court precedent" citing Crawford, 482 U.S. 437, 107 S.Ct. 2494, Casey, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68, and Arlington, --- U.S. ----, 126 S.Ct. 2455, 165 L.Ed.2d 526, the Sixth Circuit Court of Appeals more recently held that "expert witness fees may not be taxed as costs at a court's discretion under Rule 54(d) because § 1920 does not provide for them." L & W Supply Corp. v. Acuity, 475 F.3d 737, 741 (6th Cir.2007).

---

[3] Id at p 2.

The First Circuit has declined to allow the fees of expert witnesses in excess of the witness fees provided in 28 U.S.C.§ 1821. See Commerce Oil Refining Corp. v. Miner, 198 F.Supp 895, 897-898 (D.C. R.I., 1961); Bosse v Litton Unit Handling Systems, Div. of Litton Systems, Inc., 646 F2d 689 (1st Cit. 1981); Pizarro-de-Ramirez v Grecomar Shipping Agency, 82 FRD 327, 328 (DC Puerto Rico, 1976); Templeman v. Chris Craft Corp., 770 F.2d 245, 249-250(1st Cir.1985); Johnson v. State of R.I., Department of Corrections, 2000 WL 303305, 17 (D.R.I. 2000); and U.S. v. Davis, 87 F. Supp. 2d 82, 88 (D.R.I. 2000).

While acknowledging the rule traditionally followed by federal courts, that expert witness fees cannot be recovered as costs beyond the statutory allowances for attendance, mileage and subsistence provided in 28 U.S.C. § 1821,[4] Plaintiffs argue that this Court should allow an exception to the traditional rule, based upon what Plaintiffs argue are "exceptional circumstances".[5] In support of their argument, Plaintiffs cite numerous cases that have permitted an award of such fees (see n 6). None of the cases cited by Plaintiffs are Supreme Court cases, nor do they emanate from the First Circuit. More important, the First Circuit has not adopted the view of these circuits, that being, if a prevailing party can show that witness testimony is crucial, indispensable, or helpful to the court or played an important role in resolving issues in the case the prevailing party may recover expert witness fees in excess of the statutory maximum established in § 1821.[6]

---

[4] Id at p 2.

[5] Id. at p 4.  In this case, Plaintiffs engaged two experts to assist at trial. The first, Edward A. Baker.  Mr. Baker acted as a consulting expert assisting Plaintiff's counsel in understanding how the Total Recall System ("TRS") operated. Mr. Baker did not testify at trial. He was deployed on special duty in Iraq prior to trial. In his place, Plaintiffs retained William F. Odom III, a computer forensics expert and former FBI agent.  The Plaintiffs assert that they were prohibited from accessing the actual recordings of the TRS, and  as such, Plaintiffs argue Mr. Odom's testimony was "indispensable to establishing each and every count of Plaintiffs' case in chief."  Indeed, argues the Plaintiffs, without the involvement of Plaintiffs experts "there literally would have been no case" because of restraints placed upon Plaintiffs access to the data from the TRS. Therefore argues Plaintiff, because the witnesses were crucial and indispensable, this Court should follow those circuits that have permitted an award of costs for expert witnesses beyond the statutory limits imposed by § 1821.

[6] See Coleman v. Omaha, 714 F.2d 804,809 (8th Cir.1983)(full expert witness fees must be awarded, even without prior court approval, if testimony crucial to issues; remanding for factual determination court finding that the testimony of the witnesses was crucial to issues; remanding for factual determination); Paschall v. Kansas City Star Co., 695 F.2d 322, 338-39 & n. 20 (8th Cir.1982) (expert witness fees may be awarded, even without prior court approval, if expert's testimony was crucial or indispensable); Thornberry v. Delta Air Lines,Inc., 676 F.2d 1240, 1245 (9th Cir.1982) (concluding that awards of consulting and expert witness fees "are largely a matter of the reasonable needs of the party in the context of the litigation"); Berry v. McLemore, 670 F.2d 30 (5th Cir.1982) (reversing district court in civil rights case for abuse of discretion in failing to award expert witness fee); Roberts v. S.S. Kyriakoula D. Lemos, 651 F.2d 201, 205-06 (3d Cir.1981) (holding that district court has "equitable discretion to award expert fees when the expert's testimony is indispensable to determination of the case" and remanding for exercise of discretion); Dekro v. Stern Brothers,, 571 F.Supp. 97, 107 (W.D.Mo.1983) (expert witness fees recoverable when testimony crucial to resolution of case); Coble v. Texas Dept. of Corrections, 568 F.Supp. 410, 415 (S.D.Tex.1983)(expert fees can be awarded if testimony helpful); Feher v. Dept. of Labor & Industrial Relations, 561 F.Supp. 757, 768 (D.Hawaii 1983) (allowing expert witness fees because expert was helpful to court

Page 6

In the absence of a United States Supreme Court decision to the contrary, a decision of the Court of Appeals for one circuit is binding on the district courts in that circuit. Litman v. Massachusetts Mut. Life Ins. Co., 825 F.2d 1506 (11th Cir. 1987); Zuniga v. United Can Co., 812 F.2d 443 (9th Cir. 1987).   The governing law in the First Circuit is well settled, expert witness fees cannot be recovered as costs beyond the statutory allowances for attendance, mileage and subsistence provided in 28 U.S.C. § 1821, and no matter how persuasive the governing law of another circuit may be, this Court is not bound to follow it. While in many cases there is disparity between the economic reality of the costs of retaining experts  and the statutory limits imposed by § 1821, this recognition does not overcome the Supreme Court's strict adherence to the limitations set forth in § 1821 (b) nor this Circuits approval of the same.

## II   PLAINTIFF'S SECOND & THIRD ARGUMENTS

### A.   Expert Witness Fees are Recoverable by Prevailing Plaintiffs in Civil Rights Litigation to Allow Recovery for the Cost of Vindicating their Rights (Second Argument)

Plaintiffs argue that "where the testimony and assistance of expert witnesses was necessary or helpful to the presentation of a plaintiff's civil rights action, federal courts have held that expert witness fees are recoverable by prevailing plaintiffs. In support of their argument, the Plaintiffs cite this Court to Freeman v. Package Machinery Co., 865 F. 2d 1331 (1st Cir. 1988). In Freeman, an employee brought a successful age discrimination action against his former employer under parallel state and federal statutes and recovered expert witness fees in excess of the ceiling establish by federal law, where state law permitted such award. Plaintiffs argue that the instant matter is similar to Freeman in that the plaintiffs brought and recovered on parallel federal and state claims.

The court in Freeman, takes the view that, if citizens are to avail themselves of their rights under state law (in Freeman Massachusetts), they must be able to recover costs expended to vindicate their rights in court. To quote the court, "To leave prevailing plaintiffs unreimbursed for such expenditures might well make the game not worth the candle, surely deserving the ends of a cost-shifting rule." Id at 1348. But see,  Denny v. Westfield State College, 880 F. 2d 1465 (1989) where Judge Selya writing for the court explained:

---

and played an important role in resolving issues); McMurray v. Phelps, 533F.Supp. 742, 774 (W.D.La.1982) (indicating that expert witness fees would be recoverable by prevailing plaintiff challenging panoply of prison conditions); Welsch v. Likins, 68 F.R.D. 589,597 (D.Minn.), aff'd per curiam, 525 F.2d 987 (8th Cir.1975) (allowing expert witness fees in excess of § 1821 amounts because the witnesses were "indispensable part of this trial").

"...Crawford cannot be dismissed lightly. It sets forth broadly-applicable standards for determining whether any particular enactment authorizes the shifting of witness fees in amounts greater than those listed in 28 U.S.C. § 1821. Those standards command our respect. It is our task to apply the Court's analysis in the virgin precincts patrolled by a given statute's fee-shifting mechanism to see if the statute passes Crawford muster. There is no principled way for courts of appeals to devise a fresh approach or bypass this type of examination; Crawford cuts too wide a swath. Its sweep does not permit experts' expenses to be awarded without reference to the statutory duarchy (28 U.S.C. §§ 1821, 1920) simply because a plaintiff prevails under a law which contains a general fee-shifting provision. See Glenn v. General Motors Corp., 841 F.2d 1567, 1575 (11th Cir.), cert. denied, 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988); Leroy v. City of Houston, 831 F.2d 576, 584 (5th Cir.1987), cert. denied, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988); Central Delaware Branch, NAACP v. City of Dover, 123 F.R.D. 85, 94 (D.Del.1988); see generally Freeman, 865 F.2d at 1346 (suggesting that particular statutes, if sufficiently explicit, may withstand Crawford scrutiny and supersede section 1821)." Denny at 1468.

Thus, in accord with Denny, in order to recover expert witness cost beyond the limitations imposed by § 1821, Plaintiffs must establish explicit (emphasis added) statutory authority for the allowance of such fees. The Supreme Court has indicated clearly that § 1920, along with the provisions affecting witness fees in § 1821, "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." West Virginia University Hospitals, Inc. Supra., at 86.

**B**     **Plaintiff's Recovery is Based on a State Law Claim making the Restrictions of § 1821 Inapplicable (Third Argument)**

Here, aware of the Supreme Court mandate that Plaintiffs demonstrate explicit statutory authority for the allowance of such fees, Plaintiffs attempt an end run around § 1821, arguing that recovery of expert witness fees is an integral part of the substantive state-law remedy of §12-5.1-13, (state wiretap statute) and that the provisions of the state statute should override the restrictions imposed under §1821. The Plaintiffs brought claims arising under the Fourth Amendment to the U.S. Constitution, Article I, § 6 of the Rhode Island Constitution, the federal wiretapping statute (18 U.S.C. §§ 2510 et. seq.)(Title III Claims) and various state laws, including the state right to privacy law (R.I. Gen. Laws § 9-1-28) and the state wiretap statute (R.I. Gen.Laws § 12-5.1-1 et seq.).

Page 8

There is no explicit statutory authority for the recovery of expert witness fees under the governing law advanced by Plaintiffs at trial and the First Circuit has noted, "There is no inherent authority "to shift litigation costs absent express statutory authority." West Virginia University Hospitals, supra at 86.

The Plaintiffs characterize the expert witness fees as a "litigation disbursement" under R.I. Gen. Laws §12-5.1-13. While it is true that the Rhode Island Wiretap Statute does provide for recovery of "Reasonable attorneys' fees and other litigation disbursements reasonably incurred", it does not define what is meant by "litigation disbursements". Given the lack of definition presented by the statute, far from explicit, the witness were in my opinion properly disallowed.

For the reasons set forth above, the **Court should affirm the clerk's denial of Plaintiffs request for Expert witness fees**. The Plaintiffs also objected to the clerks denial of "Other Costs" including: investigative services undertaken by an adjuster employed by Vincent Pellegrino Insurance, Federal Express and Postage charges and cost associated with supplies obtained from Staples. I have addressed these items in my discussion of the Municipal Defendants objections below.

### MUNICIPAL DEFENDANTS' OBJECTION TO THE JUNE 12, 2008 TAXATION OF COSTS

Separate and apart from the Plaintiffs' objections to the clerks denial of some the costs they sought in their Bill of Costs, on June 17, 2008, the "Municipal Defendants", filed pursuant to Local Rule 54(d) and Rule 54(d)(1) of the Federal Rules of Civil Procedure, objections to ceratin costs that were taxed by the Clerk on June 12, 2008 (Document 386) in favor of the Plaintiffs as prevailing parties. As noted earlier herein, the Municipal Defendants were joined by Defendants Mary Lennon and Mauel Vieira, both of whom adopted by reference the Memorandum of Law filed by counsel on behalf of the Municipal Defendants.

## I.    DEFENDANT'S ARGUMENTS

### A.    The Court Has Wide Discretion in Awarding Plaintiffs Costs.

The Defendants first argument is not an argument at all, it merely discusses the discretionary power that the Court retains under Rule 54(d)(1) of the Federal Rules of Civil Procedure to allow or deny cost to a prevailing party. See Johnson v. State of R.I., Department of Corrections, citing In re: Fidelity/Micron Securities Litigation, 167 F.3d 735, 736 (1st Cir.1999); In re Thirteen Appeals-San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 309 (1st Cir.1995). Johnson at 2000 WL 303305, 13 (D.R.I. 2000).

**B.**   **Any Costs Relating to Plaintiffs' Litigation of Claims Against Defendants Vincent A. Cianci, Jr., Urbano Prignano, or Joseph Richardson Should Not Be Bourne by Defendants.**

The Defendants second argument avers, that since Defendants Vincent A. Cianci, Jr., Urbano Prignano, and Joseph Richardson were dismissed from the action before the case reached the jury, Plaintiffs should not be allowed. to recover expenses against these Defendants. The Defendants further argue that since the Plaintiffs who prevailed at trial did so against only six named Defendants in the action, all costs taxed against these remaining Defendants should be diminished proportionally. The Plaintiffs counter, that all Defendants were 'inextricably intertwined' and as such the costs associated with the dismissed Defendants need not be prorated" citing Freeman, 865 F.2d 1331,1350 (*costs associated with claims that are inextricably intertwined need not be prorated*).

Here, even assuming that the Plaintiff is correct, that the Defendants are 'inextricably intertwined', does not change the all important fact that the Plaintiffs are not prevailing parties as to Defendants Cianai, Urbano and Prignano. A defendant who is voluntarily dismissed from a lawsuit by the plaintiff will generally be considered a prevailing party entitled to recover costs under Fed. R. Civ. P. 54(d). See, e.g., Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207(9th Cir. 1997). This is so whether the defendant is dismissed with or without prejudice. A dismissal with prejudice is tantamount to a judgment on the merits. Schwarz v. Folloder, 767 F.2d 125, 130 (5th Cir.1985).

In this case, Defendant Richardson, was dismissed out on an Amended Stipulation of Dismissal With Prejudice . The stipulation was executed by counsel for both the Plaintiffs and Defendants and entered by the Court on April 3, 2006. The stipulation indicates that Richardson was dismissed out, both in his individual capacity and in his (former) official capacity as an employee of the City of Providence, with no award of interest, costs, or sanctions in both of the consolidated cases. The same is true of Defendant Cianci. The Stipulation of Dismissal was signed by Judge Smith on April 19, 2006. As to Defendant Prignano, he was dismissed out of the case as a result of a Rule 50 motion hearing held before the Court. The Court entered a finding of no evidence to support Plaintiff's claims against Defendant Prignano. This makes Prignano a prevailing party.

| Date | Service | Amount | Document/Page |
|---|---|---|---|
| 9/23/04 | Service to Joseph Richardson, Jr. | $40.00 | 323-3, Pg. 7 of 68 |
| | Corrected Address | $10.00 | 323-3, Pg. 7 of 68 |
| 10/19/04 | Service to Urbano Prignano, Jr. | $40.00 | 323-3, Pg. 7 of 68 |
| 11/2/04 | Attempted Summons & Complaint upon Vincent Cianci, Jr. | $75.00 | 323-3, Ph. 7 of 68 |
| | Subpoena Service fee | $40.00 | 323-3, Pg. 7of 68 |

**Page 10**

| 3/2/06 | Deposition Transcript of Urbano Prignano | $178.00 | 323-3, Pg. 8 of 68 |
| 3/8/06 | Deposition Transcript of Joseph Richardson, Jr. | $300.45 | 323, Pg. 8 of 68 |
| **COSTS DISALLOWED: $ 694.05** | | | |

The Plaintiff included these cost under the category of "Other". The clerk denied the above costs. For the reasons set forth above, in my opinion the **clerks action should be affirmed and with no costs allowed to the Plaintiffs relating to Defendants Richardson, Cianci and Prignano**.

## C.    Some Costs Are Not Adequately Documented or Were Unnecessary

### Fee of the Court Reporter

The clerk allowed fees of the court reporter in the amount of $9,405.35. The Defendants have objected to a portion of these fees in the amount of $2,973.05. The fees relate to transcripts that Plaintiffs ordered, (See Document 323-3, Page 34 of 68). The Defendants take the position that the Plaintiffs have failed to describe how and why these costs were "necessarily incurred in the case." As such, Defendants argue these costs should not have been taxed against the Defendants.

A review of the charges indicates that the transcription was provided by Debra D. Lajoie, a court reporter employed by this Court. Invoices attached to Plaintiffs' Bill of Costs indicate that the transcripts relate to the testimony of Defendants Mary Lennon, Anthony Desmarals and Manuel Vieira. The transcription was 613 pages long and was produced on an "Expedited" basis at the 7 day rate of $4.85 cents per page. The deposition transcripts were ordered by counsel to "memorialize the testimony of adverse witnesses for impeachment purposes later in the trial". Plaintiff's Objections to Clerk's Denial of Costs, at p. 9.

While Plaintiffs have explained why they ordered the transcripts, they have provided no explanation why the expedited copies were necessary. The cost of trial transcript is not allowed if procured primarily for the convenience of counsel. Kenyon v. Automatic Instrument Co., 10 F.R.D. 248 (W.D.Mich.1950) aff'd 186 F.2d 752 (6th Cir. 1951). If the transcript is furnished at the Court's request, it normally is taxable. In my opinion the **fees of the court reporter awarded by the clerk should be reduced in the amount of $2,973.05**.

### Printing Costs

Plaintiffs were awarded costs associated with printing in the amount of $8,587.56(See Document 323-3, Page 3 of 68). The Defendants have objected to the following costs:

**Page 11**

| DATE | VENDOR | AMOUNT | DOC/PG/DESCRIPTION |
|---|---|---|---|
| 6/1/06 | WarRoom. Document Solutions of RI | $353.60 | 323-3Page 38 of 68/Medium Litigation |
| 2/28/07 | WarRoom Document Solutions of RI | $799.72 | 323-3 Page 39 of 68/Medium Litigation; tabs; custom tabs |
| **TOTAL COSTS $1,153.32** | | | |

The Defendants argue that Plaintiffs have failed to describe how these costs were necessarily incurred in the case. Therefore, they argue, these costs should not have been taxed against the Defendants. In support of their claim for allowance of the above fees, Plaintiffs' cite as an illustration, copies reproduced by "WarRoom Document Solutions" to copy the firemen's logs so Plaintiff could review them during the litigation. The copies of the logs they argue, ultimately determined the calculation of damages.

The cost of copies of papers may be taxed under § 1920(4) if "necessarily obtained for use in the case." Davis, supra., at p 88 (D.R.I. 2000). See also Johnson at p 14. "It is incumbent upon the party seeking costs to describe the nature of the expenses adequately or to explain why they should be awarded. Davis at p 87, citing Donnelly v. Rhode Island Board of Governors for Higher Education, 946 F.Supp. 147, 152 (D.R.I.1996). The invoices from WarRoom Solutions in the amount of $378.35 and $799.72 respectively, do not show any evidence of necessity. Copying the logs may have proved convenient to counsel during the trial and they may have also aided in the calculation of damages, but the documentation and explanation of these costs is by no means clear as to their necessity. As such, theses **costs should be disallowed in the aggregate amount of $1,178.07.**

### "Other Costs."

### Investigatory Services

The clerk disallowed in their entirety, "Other Costs" in the amount of $786.95. Plaintiffs employed Vincent Pellegrino Insurance to provide investigatory services in order to discover addresses of Defendants for the purpose of serving summons. Investigation fees are not included as compensable items in the costs statute (28 U.S.C. § 1920) and as such the clerk's disallowance should be affirmed.

### Postage Charges

In so far as  postage is concerned, This item of cost is properly disallowed. It is not recoverable as costs under § 1920. Johnson at p 14 (D.R.I. 2000). See also Cooke v. D'Amore, 2006 WL 1119163, at p 2 (D. Hawaii 2006). The denial of postage charges by the clerk should be affirmed.

### Federal Express Charges

Federal Express charges are not costs  are not 'costs' as that term is used in 28 U.S.C. § 1920, but are in fact out-of-pocket expenses Westenfelder v. Ferguson, 2000 WL 303301, at p 12 (D.R.I. 2000)(holding that "...Federal Express and local delivery service, office expenses, miscellaneous and postage expenses must ... be denied. the costs requested for these items." Id. See also: Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc., 952 F.Supp. 415, 418 (N.D.Tex.1997) (holding "Telecopy expenses, express delivery charges, and telephone expenses, like postal expenses, are not listed in the statute and represent "overhead" costs, not litigation costs.") Id.; and Hollenbeck v. Falstaff Brewing Corp., 605 F.Supp. 421, 439 (E.D.Mo.1984) (holding that long distance telephone calls, Federal Express and local delivery service, office expenses, miscellaneous and postage expenses are not compensable under § 1920). The **clerks denial of Federal Express charges should be affirmed**.

### Office Supplies
### Staples Charges

Finally, the Plaintiff seeks to recover charges incurred for supplies in the amount $334.16 from Staples. The Plaintiffs argue that these charges are compensable since they would not regularly be absorbed by the overhead of the firm. Plaintiffs' further assert that these expenses were specific to the needs of the litigation and are legitimate "litigation disbursements" in accordance with the R.I. Gen. Law §12-5.1-13. As earlier noted, the civil remedy under the Rhode Island Wiretap statute does provide for recovery of "Reasonable attorneys' fees and other litigation disbursements reasonably incurred", it does not however, define what is meant by such disbursements. Plaintiffs recovery of these costs may best be had as part of their application for attorneys fees and not as part of their Bill of Costs, since such cost are not specified in § 1920. **They should therefore be disallowed** as a part of their Bill of Costs.

## Conclusion

For the foregoing reasons, the Clerk's taxing of costs should be amended as follows:

| | |
|---|---|
| Fees of the Clerk: | $0 |
| Fees for service of summons and subpoena | $1,453.03 |
| Fees of the court reporter | $6,432.30[7] |
| Fees and disbursements for printing | $7,434.24[8] |
| Fees for witnesses (itemize on page two) | $0[9] |
| Fees for exemplification and copies of papers | $0 |
| Docket fees under 28 U.S.C. 1923 | $300.00 |
| Costs as shown on Mandate of Court of Appeals | $0 |
| Compensation of court-appointed experts | $0 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 | $0 |
| Other costs | $0 |
| **TOTAL** | **$15,619.57** |

Respectfully submitted this the 29th Day of August, 2008.

_Berry B. Mitchell_

Berry B. Mitchell, ADR Administrator/Deputy Clerk

---

[7] See p 11 (Original costs award of $9,405.35, reduced by $2,973.05. Recommended award $6,432.30.

[8] See p 12 (Original cost award of $8,587.56, reduced by $1,178.07. Recommended award $7,434.24.

[9] See pp 3-9 of this Internal Memo.

Page 14